UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| HEMLOCK SEMICONDUCTOR CORPORATION, | Case No. 15-CV-11236-TLL |
| *Plaintiff*, | Hon. Thomas L. Ludington |
| v. | |
| KYOCERA CORPORATION, | |
| *Defendant*. | |
| KYOCERA CORPORATION, | |
| Counterclaimant, | |
| v. | |
| HEMLOCK SEMICONDUCTOR CORPORATION, | |
| Counterdefendant. | |

**PLAINTIFF HEMLOCK SEMICONDUCTOR
CORPORATION'S REPLY MEMORANDUM
IN FURTHER SUPPORT OF ITS MOTION TO DISMISS
<u>DEFENDANT KYOCERA CORPORATION'S COUNTERCLAIMS</u>**

Hemlock respectfully submits this reply in further support of its motion to dismiss Kyocera's counterclaims.[1]

## I. KYOCERA FUNDAMENTALLY MISAPPREHENDS THE LAW OF IMPRACTICABILITY AND FRUSTRATION OF PURPOSE

Kyocera argues for pages that it should be excused from its performance obligations because "'a marked increase in cost' which is 'well beyond the normal range' [has made] performance of a contract impracticable." OB at 12 (quoting Restatement (Second) of Contracts § 261 (1981), cmt d). But the undisputed fact here is that Kyocera does not and cannot allege that its performance under the Supply Agreements has seen <u>any</u> increase in cost at all, much less a "marked increase in cost." Kyocera pays fixed prices under the Supply Agreements. Its cost of performance in 2015 is the same today as when it negotiated and executed the Supply Agreements and the Amendments.

Rather than support Kyocera's argument, the cases it cites illustrate why the doctrines of impracticability and frustration of purpose <u>do not</u> apply. In <u>Moyer v. Little Falls</u>, a party contracted to transfer garbage from one site to another. See 510 N.Y.S.2d 813, 814 – 15 (N.Y. Sup. Ct., Herkimer Cnty., Dec. 29, 1986); OB at 13. Due to events beyond its control, the cost <u>of transferring the garbage</u> increased substantially, making performance of that party's transfer obligation, <u>under the</u>

---

[1] Kyocera's Opposition to Hemlock's Motion to Dismiss Counterclaims is herein referred to as "OB." Kyocera's Counterclaims are herein referred to as "CC."

1

contract at issue, impracticable. See id. In Mineral Park Land Co. v. Howard, a party contracted to dig and haul gravel from another party's land. See 156 P. 458, 458 – 59 (Cal. 1916); OB at 12. The promisor later discovered that because much of the gravel was below water level, performance of its promise would require the use of a stream dredger, rendering the cost of performance substantially higher than anticipated. See id. In Chang v. Pacificorp, a party contracted to pay for electricity at prices that were tied to, but fluctuated with, a market index. See 157 P.3d 243, 255 – 256 (Or. 2006); OB at 16. Due to market manipulation by third-parties that was beyond the contemplation of the parties, the market index increased 600 percent, making the cost of performance, i.e., paying the price of electricity under the contract at issue, unexpectedly higher. See id.

But here, Kyocera's cost of performing its sole obligation under the Supply Agreements—to pay fixed prices—is exactly what it has always been. The only changed circumstance alleged is that, due to precipitous price declines in the global solar markets, Kyocera can no longer turn a profit on solar panels it manufactures using polysilicon it agreed to buy from Hemlock. Because nothing has changed Kyocera's cost of performance, its counterclaims fail.

Kyocera also does not have any real answer to the fact that the government interference it alleges was known and ongoing at the time the parties reiterated and ratified the cost of polysilicon for 2015, by way of the Amendments. Kyocera's

own pleading thus bars it from making the required showing that the offending occurrence was unforeseen. Kyocera cites Archambo v. Lawyers Title Ins. Corp., for the unremarkable proposition that contract amendments containing integration clauses fully displace prior agreements. See OB at 17. Archambo did not address "foreseeability" at the time of amendment, and does not relate to any issue in this litigation. See 466 Mich. 402, 466 (2002). The case does nothing to support Kyocera's tortured argument that parties who amend a contract in recognition of ongoing market realities, can, at the same time, somehow be deemed unaware of those very events, depending on which contract clause was changed. See OB at 17; 466 Mich. at 176 – 77.

Kyocera's attempt to distinguish Exelon also fails. See OB at 17. Exelon expressly addresses foreseeability in the context of amendments and holds that when parties make amendments in contemplation of certain events, they are deemed to be aware of them. See 559 F. Supp. 2d 892, 904 (N.D. Ill. 2008).

## II.  KYOCERA IS FLAT WRONG ON "MUTUAL MISTAKE"

That Kyocera's own pleading alleges that the Chinese interference began as early as 2008 and was ongoing by 2011 also precludes it from ever showing that a "basic assumption" of the Supply Agreements was that the market for polysilicon "would operate free of [the] illegal actions of a state actor." CC ¶ 118. The parties

3

could not have shared that assumption when the operative Amendments were signed long after 2008, and the mutual mistake claim fails for that reason alone.

Yet even assuming arguendo Kyocera's argument that foreseeability may only be assessed as of the time of initial execution (Exelon shows it is not), its mutual mistake claim still fails because it has not alleged the mistake of a <u>fact in existence</u> at the time of execution. Kyocera's conjured theory whereby predictions about future events can also be read as facts in existence is simply wrong, and none of Kyocera's cases actually support it. <u>Denton</u>, <u>Solo</u>, and <u>Lenawee</u> all involve fact patterns whereby the mistake at issue was as to a fact then in existence. In <u>Denton</u>, the plaintiff had already suffered the latent bodily injury at the time the release was signed. In <u>Lenawee</u>, both parties were mistaken about the property's habitability <u>at the time of contracting</u>. In <u>Solo</u>, as in <u>Denton</u>, the parties were mistaken about the bodily injuries at the time of release.

Because Kyocera's counterclaim rests on the allegation that the parties "assumed" that <u>in the future</u> the solar market would behave in a particular way, its "mutual mistake" claim, in actuality, is merely a repackaging of its flawed frustration of purpose theory. See 7-28 Corbin on Contracts § 28.27 ("The doctrine of mistake does not apply to mistaken beliefs about future events.

4

Mistaken beliefs about future events must be tested under the more stringent criteria for relief under the doctrine of frustration.").[2]

### III. KYOCERA'S FORCE MAJEURE ARGUMENT MISREADS THE CONTRACT, AND FAILS AS A MATTER LAW IN ANY EVENT

Arguing that the force majeure provision in Supply Agreement III is bilateral, Kyocera isolates the portion of Section 19 that explains how the parties should conduct themselves <u>after</u> performance has been halted "as the result" of a force majeure event. OB at 19. Kyocera omits the operative paragraph that defines force majeure: "HSC [Hemlock] shall not be liable for delays or failures in performance of an order or default in delivery arising out of or resulting from causes beyond its control." The provision on its face protects only Hemlock.

Indeed, the force majeure events identified in the clause include "acts of Buyer." That is, acts of Kyocera can constitute force majeure. If this clause were bilateral, Kyocera could excuse its own performance by committing its own acts—an absurd result.

But even if the force majeure provision did run in favor of Kyocera, its claim would be barred by Michigan law, wherein the Saginaw Circuit Court dismissed Kyocera's identical force majeure claim under Supply Agreement IV. Kyocera's

---

[2]  Essentially conceding that its mutual mistake claim fails, Kyocera suggests that it could be saved by amendment, to allege that the Chinese government was "planning" its interference before execution of the Supply Agreements. But planning is not doing, and no such amendment would save this baseless claim and none should be permitted.

5

expression of hope for reversal on appeal all but concedes that its force majeure counterclaim here is barred by controlling authority.

## IV. KYOCERA DOES NOTHING TO SAVE ITS ANTITRUST CLAIM

Kyocera's Japanese antitrust counterclaim suffers from the same fatal flaws as its Japanese antitrust defense. See Doc. #21, p. 22 – 25; Doc. #22; and Doc #36. Because Kyocera cannot meet its pleading burden under Deutsche Solar, Kelly, Kaiser Steel, and National Souvenir, it argues that those cases apply only to antitrust defenses, not antitrust counterclaims. See OB at 27. But Hemlock's motion shows that U.S. courts refuse to enforce affirmative claims under foreign antitrust laws on considerations of international comity. See Doc #21, p. 26 – 28. Kyocera does not take on this argument at all, conceding defeat.

## V. UNJUST ENRICHMENT CANNOT SURVIVE THIS MOTION

Kyocera now adds that the agreements might also be voidable for mutual mistake, as additional contingent grounds (along with Japanese antitrust) for its unjust enrichment claim. See OB at 28 – 29; CC ¶¶ 123 – 28. Because both counts fail to state a claim, the unjust enrichment claim fails with them.

## VI. NOTHING IN THE CONTRACTS CALLED FOR HEMLOCK TO MAINTAIN ITS EXPANDED MANUFACTURING FACILITIES

A basic reading of the contracts shows how utterly baseless Kyocera's "breach of contract" claim is. In Section 9, Kyocera acknowledged that Hemlock would be expanding its manufacturing facilities, and with that understanding

Kyocera agreed to limit Hemlock's liability if delays in completion beyond June 30, 2010 caused a failure by Hemlock to supply polysilicon. Of course, no such failure occurred and none is alleged, and the clause is long since moot.

Instead, Kyocera cites to <u>Schippers Excavating v. Crystal Creek Enters,</u> purportedly in support of its argument that Kyocera's acknowledgement constituted a promise by Hemlock to maintain those expanded facilities indefinitely. <u>See</u> OB at 31 – 32. The plain language of the contracts does nothing of the sort, and <u>Schippers</u> illustrates why Kyocera is wrong. <u>Schippers</u> found this to be an actionable promise: "The Bank…will provide the necessary financing for the updated costs." No. 295754, 2011 Mich. App. LEXIS 1136 at *3 (App. Ct. Mich., June 23, 2011). <u>That</u> is a promise to act. Kyocera's acknowledgement of Hemlock's construction plans in clauses that were mooted years ago is not.

Dated: September 14, 2015          By: <u>s/Craig W. Horn</u>

ORRICK, HERRINGTON & SUTCLIFFE LLP
  J. Peter Coll, Jr.
  John Ansbro
  Alvin Lee
  Thomas N. Kidera
  51 West 52nd Street
  New York, New York 10019
  (212) 506-5000
  alee@orrick.com

BRAUN KENDRICK FINKBEINER, PLC
  Craig W. Horn (P34281)
  4301 Fashion Square Boulevard
  Saginaw, Michigan 48603
  (989) 498-2100
  crahor@BraunKendrick.com

*Attorneys for Plaintiff*
*Hemlock Semiconductor Corporation*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| HEMLOCK SEMICONDUCTOR CORPORATION,<br><br>　　　　Plaintiff,<br><br>v.<br><br>KYOCERA CORPORATION,<br><br>　　　　Defendant. | Case No. 15-CV-11236 (TLL)<br><br>Hon. Thomas L. Ludington |
| KYOCERA CORPORATION,<br><br>　　　　Counterclaimant,<br><br>v.<br><br>HEMLOCK SEMICONDUCTOR CORPORATION,<br><br>　　　　Counterdefendant. | |

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2015, I electronically filed the foregoing Plaintiff Hemlock Semiconductor Corporation's Reply Memorandum in Further Support of Its Motion to Dismiss Defendant Kyocera Corporation's Counterclaims with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

　　　　　　　　　　　　　　　　By: <u>s/Teresa M. Mielke</u>
　　　　　　　　　　　　　　　　　　　Braun Kendrick Finkbeiner P.L.C.
　　　　　　　　　　　　　　　　　　　Legal Secretary
　　　　　　　　　　　　　　　　　　　4301 Fashion Square Boulevard
　　　　　　　　　　　　　　　　　　　Saginaw, Michigan 48603
　　　　　　　　　　　　　　　　　　　989-498-2100
　　　　　　　　　　　　　　　　　　　termie@bkf-law.com

{S1267170.DOCX.1}