# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

| | |
|---|---|
| HEMLOCK SEMICONDUCTOR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>KYOCERA CORPORATION,<br><br>Defendant. | Case No. 15-CV-11236 (TLL) (PTM)<br><br>Honorable Thomas L. Ludington<br>Mag. Judge Patricia T. Morris<br><br><br>**JURY TRIAL DEMANDED** |
| KYOCERA CORPORATION<br><br>Counterclaimant,<br><br>v.<br><br>HEMLOCK SEMICONDUCTOR CORPORATION,<br><br>Counterdefendant. | |

## KYOCERA CORPORATION'S
## REQUEST FOR PRODUCTION OF DOCUMENTS
## TO HEMLOCK SEMICONDUCTOR CORPORATION, SET ONE

PROPOUNDING PARTY: Defendant and Counterclaimant KYOCERA

CORPORATION

RESPONDING PARTY: Plaintiff and Counterdefendant HEMLOCK

SEMICONDUCTOR, CORPORATION

SET NO.:    One

Pursuant to Rules 34 and 26 of the Federal Rules of Civil Procedure, Local

Rule 26.1, and the Practice Guidelines for Judge Thomas L. Ludington, Defendant

and Counterclaimant Kyocera Corporation hereby requests that Plaintiff and

Counterdefendant Hemlock Semiconductor Corporation produce the following

documents and tangible things at the offices of Brooks Wilkins Sharkey & Turco,

PLLC 401 S. Old Woodward, Suite 400 within thirty days of service of these

requests.

## DEFINITIONS

As used herein, the following terms are intended to have the meanings

indicated:

1.      The terms  "YOU", "YOUR", "PLAINTIFF" or "HEMLOCK" shall

mean Hemlock Semiconductor Corporation and/or Hemlock Semiconductor, LLC

and (i) all of its agents, representatives, employees, officers, members,

accountants, investigators, consultants, attorneys, and predecessors or successors in

interest; (ii) any other person or entity acting on its behalf or on whose behalf it

acted; and/or (iii) any other person or entity otherwise subject to its control or

which controls it, or with which it is under common control.

2.      The term "DEFENDANT" or "KYOCERA" refers to Defendant and

Counterclaimant Kyocera Corporation and its officers, agents, employees,

representatives and predecessors in interest.

3.      The term "COMMUNICATION" refers to any exchange or transfer of

information between two or more persons or entities, whether written, oral,

electronic, or in any other form.

2

4.     The term "COMPLAINT" shall mean the Complaint and any amended Complaints filed by YOU in this action.

5.     The terms "CONCERNING," "CONCERN" or "REGARDING" include referring to, alluding to, responding to, evidencing, relating to, connected with, commenting upon, in respect of, about, regarding, discussing, showing, describing, reflecting, analyzing, touching upon, constituting, or being.

6.     The term "DATE" shall mean the exact day, month and year, if ascertainable, or, if not, the best available approximation, including relationship to other events.

7.     The term "DISCLOSE" means to identify, describe, explain, reveal, demonstrate, show, display, exhibit, illustrate, exemplify, refer to, or relate to.

8.     The term "DOCUMENT" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a). A draft or non-identical copy is a separate document within the meaning of this term. The term "DOCUMENT" or "DOCUMENTS" shall further mean anything discoverable under Federal Rule of Civil Procedure 34(a), including but not limited to any tangible thing upon which any expression, communication or representation has been recorded by any means including, but not limited to, handwriting, typewriting, printing, photostatting, photographing, magnetic impulse, or mechanical or electronic recording and any non-identical copies (whether different from the original because of notes made on such copies, because of indications that said copies were sent to different individuals than were the originals, or because of any other reason), including but not limited to working papers, preliminary, intermediate or final drafts, correspondence, memoranda, charts, notes, records of any sort of meetings, invoices, financial statements, financial calculations, diaries, reports of telephone or other oral conversations, desk calendars, appointment books, audio or video tape recordings, microfilm,

3

microfiche, computer tape, computer disk, computer printout, computer card, electronic mail, and all other writings and recordings of every kind that are in YOUR actual or constructive possession, custody or control.

9.     The term "IDENTIFY" when used in reference to a person means to provide the following information:

     a. Full name;

     b. Present or last known address; and

     c. Present or last known telephone number.

10.     The term "IDENTIFY" when referring to a fact or facts means to state with particularity and in detail all facts and information about the circumstances YOU know or are informed and believe, including (as applicable) who was involved, what was involved, when it occurred, where it occurred and how it occurred.

11.     "PERSON" or "PERSONS" means, unless otherwise specified, any natural person, firm, entity, corporation, partnership, proprietorship, association, joint venture, other form of organization or arrangement, and government and government agency of every nature and type.

12.     The phrases "REFERRING TO," "RELATED TO" and "RELATING TO," as used herein, include, but are not limited to, the following meanings: bearing upon, concerning, constituting, discussing, describing, evidencing, identifying, in connection with, pertaining to, respecting, regarding, responding to, or in any way logically or factually relevant to the matter described in the request

13.     The terms "AND" and "OR" are not intended to be read disjunctively, but rather conjunctively unless the context of a particular request clearly indicates otherwise. "OR" should be understood to include and encompass "AND"; and "AND" should be understood to include and encompass "OR."

4

14.    "ANY" or "EACH" should be understood to include and encompass "ALL."

15.    "ADVANCE PAYMENTS" means advance payments made by KYOCERA or any other LTA CUSTOMER, such as the ADVANCE PAYMENTS described in Section 6 of AGREEMENT IV or any comparable clause in any LONG TERM SUPPLY AGREEMENT.

16.    "AGREEMENT I" means the long-term supply agreement between KYOCERA and HEMLOCK dated August 30, 2005.

17.    "AGREEMENT II" means the long-term supply agreement between KYOCERA and HEMLOCK dated June 21, 2006.

18.    "AGREEMENT III" means the long-term supply agreement between KYOCERA and HEMLOCK dated July 18, 2007.

19.    "AGREEMENT IV" means the long-term supply agreement between KYOCERA and HEMLOCK dated November 13, 2008.

20.    "AGREEMENT I SIGNATURE DATE" means August 30, 2005.

21.    "AGREEMENT II SIGNATURE DATE" means June 21, 2006.

22.    "AGREEMENT III SIGNATURE DATE" means July 18, 2007.

23.    "AGREEMENT IV SIGNATURE DATE" means November 13, 2008.

24.    "BP SOLAR" means BP Solar International, Inc., a Delaware Corporation and/or any of its officers, directors, employees, corporate parents, subsidiaries, affiliates, or predecessors-in-interest.

25.    "CHINA" means the People's Republic of China.

26.    "CHINESE GOVERNMENT" means the Chinese State, including any governmental entity in China (including local and national governmental agencies and regulators), the Communist Party of China, and any entities that

5

directly or indirectly control, or are controlled by any governmental entity in China.

27.    "CHINESE OFFICIALS" means any official or officials acting directly or indirectly on behalf of the CHINESE GOVERNMENT.

28.    "CORNING" means Corning Incorporated and/or any of its officers, directors, employees, corporate parents, subsidiaries, affiliates, or predecessors-in-interest.

29.    "DEMANDS FOR ASSURANCES" means demands for assurance of performance including demands made under MCLA § 444.2609, or any other provisions of the MCLA or the Uniform Commercial Code.

30.    "DOW" means Dow Chemical Co. and/or any of its officers, directors, employees, corporate parents, subsidiaries, affiliates, or predecessors-in-interest.

31.    "DOW CORNING" means Dow Corning Corporation and/or any of its officers, directors, employees, corporate parents, subsidiaries, affiliates, or predecessors-in-interest.

32.    "FORCE MAJEURE EVENT" means any event or events that may fall within the force majeure clauses, Section 19 of AGREEMENT IV, or Section 19 of Agreement III and/or any events that are similar to or RELATED TO the events described as force majeure events in KYOCERA'S ANSWER AND COUNTERCLAIMS.

33.    "GLOBAL SUN" means Global Sun Limited, Isofoton S.A., and/or any of the officers, directors, employees, corporate parents, subsidiaries, affiliates, or predecessors-in-interest of either.

34.    "GLOBAL SUN LITIGATION" means all litigation between GLOBAL SUN and HEMLOCK regarding any LONG TERM SUPPLY AGREEMENT.

sd-656626

35.   "GREEN ENERGY TECHNOLOGY" means Green Energy Technology, Inc., Tatung Co. of America, Inc., and/or any of its officers, directors, employees, corporate parents, subsidiaries, affiliates, or predecessors-in-interest.

36.   "GREEN ENERGY TECHNOLOGY LITIGATION" means all litigation between GREEN ENERGY TECHNOLOGY and HEMLOCK regarding any LONG TERM SUPPLY AGREEMENT.

37.   "INTERNATIONAL TRADE COMMISSION" means United States International Trade Commission.

38.   "ITC PARTIES" means any persons or entities that have been parties to proceedings initiated before, or considered by, the INTERNATIONAL TRADE COMMISSION RELATING TO the SOLAR INDUSTRY.

39.   "KYOCERA ANSWER AND COUNTERCLAIMS" means the answer and counterclaims filed by KYOCERA on or about July 10, 2015 (Dkt. No. 9) and any amended answers or counterclaims filed by KYOCERA in this action.

40.   "LONG TERM SUPPLY AGREEMENTS" or "LTA" means agreements in which any party agreed to purchase polysilicon from HEMLOCK over a period of more than three years.

41.   "LTA CUSTOMER" means any party that agreed to purchase polysilicon from HEMLOCK in a LONG TERM SUPPLY AGREEMENT.

42.   "MOFCOM" means Ministry of Commerce, People's Republic of China.

43.   "SETTLEMENT AGREEMENT" means any agreement purporting to resolve a legal, commercial, or financial dispute between parties.

44.   "SOLAR INDUSTRY" means industries associated with the production, manufacture, distribution, sale, purchase, or installation of SOLAR MATERIALS.

sd-656626

45.     "SOLAR MATERIALS" means polysilicon, photovoltaic cells, solar panels, or any other materials used in the manufacture of devices that generate energy from sunlight.

46.     "SOLAR MANUFACTURING LITIGATION" means all litigation between HEMLOCK and any entities regarding a LONG TERM SUPPLY AGREEMENT.

47.     "SOLAR WORLD" means Solar World AG, Solar World Americas Inc., Deutsche Solar GmbH, Deutsche Solar AG, and/or any of the officers, directors, employees, corporate parents, subsidiaries, affiliates, or predecessors-in-interest of any of them.

48.     "SOLAR WORLD LITIGATION" means all litigation between SOLAR WORLD and HEMLOCK regarding any LONG TERM SUPPLY AGREEMENT.

49.     "STANDSTILL AGREEMENT" means any agreement in which the parties agree or propose to agree to delay the assertion of any claim for a period of time.

50.     "TENNESSEE REPRESENTATIVES" means representatives of the state of Tennessee, any counties in Tennessee (including Montgomery County), any cities in Tennessee (including Clarksville, Tennessee), or any other governmental agency, or economic development agency or similar quasi-governmental agency in Tennessee.

51.     "TENNESSEE PLANT" means polysilicon production facilities that were built, operated, or otherwise affiliated with HEMLOCK in the state of Tennessee.

52.     "UNITED STATES GOVERNMENT" means any governmental entity in the United States of America (including government agencies and

8

(iv) have, as a practical matter, been able to use, inspect, examine, or copy the requested document when you have sought to do so; or (v) are able to lawfully use, inspect, examine, or copy the requested documents.

6.      If YOU are aware that a document or thing (or a group of documents or things) once existed, but has been destroyed, YOU are requested to specifically IDENTIFY such document or thing, when the document or thing was destroyed, the reason for such destruction, and the circumstances under which such destruction occurred.

7.      If any document or thing responsive to these requests was, but no longer is in your possession, custody or control, please IDENTIFY that document or thing and state whether any such document or thing: (a) is missing or lost; (b) has been destroyed; (c) has been transferred voluntarily or involuntarily; or (d) has been otherwise disposed of, and, in each instance, please explain in detail the circumstances surrounding any such disposition thereof.

8.      These requests require the production of documents either in the same form and same order as they are kept in the usual course of business, or organized and labeled to correspond with the particular demands set forth below. If YOU choose the former method, the documents are to be produced in the boxes, file folders, bindings or other containers in which the documents are found. The titles, labels, or other descriptions on the boxes, file folders, bindings or other containers are to be left intact. Hard-copy documents (notebooks, invoices, etc.) can also be produced as single-page, Bates labeled TIFF files accompanied by either a Concordance load file or similar file that gives the start and stop Bates range for each document provided that the organization of the documents (i.e. boxes, file folders, bindings or other containers) is reflected in meta data in the Concordance load file.

*sd-656626*

9.      All e-mails should be immediately followed by all of their attachments and should include at least the following fields: From, To, CC, BCC, Subject, Attachments, and SENTDATE. All electronic documents, before being converted to single page TIFF images, should have any hidden text made visible, including, but not limited to, hidden rows or columns in spreadsheets.

10.     Documents should be produced as single-page, Bates labeled TIFF files accompanied by either a Concordance load file or similar file that gives the start and stop Bates range for each document, complete extracted or OCR text for each document in a single text file for each document, and the metadata listed in the table below. Metadata is an essential component of any electronic document. If YOU object to the production of any metadata, YOU are under a duty to preserve the following metadata until an agreement is reached regarding its production.

| Name | Format | Description |
| --- | --- | --- |
| BEGPRODBATE | Text | Beginning Production Number |
| ENDPRODBATE | Text | Ending Production Number |
| PROD_VOLUME | Text | Production Volume (ex. MOF-PD001) |
| BEGPRODATT | Text | Beginning Production Family Number |
| ENDPRODATT | Text | Ending Production Family Number |
| CUSTODIAN | Text | If applicable, custodian or source information for the document |
| PAGES | Text | Total page count per document |
| FILENAME | Text | Document File Type |
| FILEEXT | Text | File extension of original document |
| TITLE | Text | Title of Document |
| AUTHOR | Text | Author of Document |
| LASTEDITEDBY | Text | Last User to Edit Document |
| CREATEDATE | MM/DD/YYYY | Document Created Date |
| LASTMODDATE | MM/DD/YYYY | Document Last Modified Date |

sd-656626

regulators) and any entities that directly or indirectly control or are controlled by any governmental entity in the United States of America.

## INSTRUCTIONS

1.     The use of the singular form of any word includes the plural and the use of any plural includes the singular.

2.     The use of a verb in any tense shall be construed as the use of a verb in all other tenses, wherever necessary to bring within the scope of the Request for Production all responses that might otherwise be construed to be outside the scope.

3.     These document requests are intended to cover any and all documents and things in YOUR global charge or possession as well as those subject to your custody or control, whether in your actual possession, at the office of your attorneys, or at any other place or in the possession of any other PERSON or entity subject to YOUR control.

4.     Your response to this inspection demand must respond separately to each numbered demand for inspection below by (i) a statement that you will comply with the particular demand and in whole or (ii) if you can only comply with the demand in part, a description of the documents that will be produced and a description of the portion of the demand that you are unable to comply with, (iii) a statement that you lack the ability to comply with the particular demand, or (iv) any objection to the particular demand.

5.     A document is deemed to be in your possession, custody, or control if it is (a) in your physical custody or (b) in the physical custody of any other person and you (i) own the requested document in whole or in part; (ii) have a right by contract, statute, or otherwise to use, inspect, examine, or copy the requested document on any terms; (iii) have an understanding, whether express or implied, that you may use, inspect, examine, or copy the requested document on any terms;

9

| Name | Format | Description |
|------|--------|-------------|
| SENTDT | MM/DD/YYYY HH:MM:SS | Document Sent Date and Sent Time |
| FILESIZE | Text | Document file size in bytes |
| SUBJECT | Paragraph | Email Subject |
| FROM | Paragraph | Author of Email |
| RECIPIENT | Paragraph | Recipient of Document |
| CC | Paragraph | Copies |
| BCC | Paragraph | BCC |
| MESSAGEID | Paragraph | Unique message identifier |
| LOCATION | Paragraph | Location of where documents were collected |
| MD5HASH | Paragraph | MD5HASH checksum for file |

11.     Audio and video files, large spreadsheets, database files, and other documents that cannot be conveniently converted to single-page TIFFs should be produced in their native format with no alterations to the file name with an index assigning a single Bates number and confidentiality label to each document. If a single audio or video recording encompassing multiple pieces is produced (e.g., a movie DVD made from multiple chapters), one Bates number and confidentiality can be assigned to the CD, DVD, VHS, audiocassette, etc.

12.     If a Request asks for "documents sufficient to show," "documents sufficient to identify," or "documents sufficient to describe," some fact, activity, or circumstance and responsive documents are available in both English and a foreign language, both the English language and foreign language version of said documents shall be produced in accordance with the provisions of paragraph D above.

13.     In the event YOU are able to produce only some of the documents or things responsive to these requests within the allowed time, YOU are requested to produce the documents or things which can be produced, and to state the reason

12

for YOUR asserted inability to provide the remaining documents or things as explained in paragraph 4 above. Once the remaining responsive documents or things are obtained or available, those documents or things should be produced promptly at a mutually agreeable time.

14.     These Requests are propounded for the purpose of discovery and are not to be taken as waiving any objections which may be made at trial to the introduction of evidence on subjects covered by these Requests or as an admission of the relevance or materiality at trial of any of the matters covered by these Requests.

15.     You are under a continuous obligation to supplement your answers to these Requests under the circumstances specified in Fed. R. Civ. P. 26(e) and 34.

16.     Should you refuse, on the grounds of attorney-client privilege, work product immunity or any other claimed privilege from production, to produce any document or tangible thing, then provide at the time of making said refusal a list of all such non-produced documents or things. As to any such document or thing, state the following: the basis upon which the claim of privilege is being asserted; the number of the request calling for its production; the DATE of the document; the name of each PERSON who signed or prepared the document; the name of each addressee and PERSON to whom the document or copies thereof were given or sent; a description of the general subject matter of the document; and identification of any document or other material transmitted with or attached to the document and the nature or character of the document or thing.

sd-656626

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

ALL DOCUMENTS REFERRING TO CHINESE GOVERNMENT's

support of the SOLAR INDUSTRY in CHINA from 2007 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**


**REQUEST FOR PRODUCTION NO. 2:**

ALL DOCUMENTS RELATING TO ANY illegal acts of the CHINESE

GOVERNMENT that are RELATED TO the SOLAR INDUSTRY.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**


**REQUEST FOR PRODUCTION NO. 3:**

ALL DOCUMENTS CONCERNING the SOLAR INDUSTRY in CHINA

after the AGREEMENT I SIGNATURE DATE including, but not limited, internal

reports AND analyses, external reports commissioned by YOU, CORNING,

DOW, OR DOW CORNING, AND external reports by HEMLOCK OR third-

party analysts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

14

**REQUEST FOR PRODUCTION NO. 4:**

ALL COMMUNICATIONS with CORNING, DOW, OR DOW CORNING

REGARDING ANY LONG TERM SUPPLY AGREEMENT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

**REQUEST FOR PRODUCTION NO. 5:**

ALL COMMUNICATIONS with CORNING, DOW, OR DOW CORNING

REGARDING ANY LTA CUSTOMER.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

**REQUEST FOR PRODUCTION NO. 6:**

ALL COMMUNICATIONS to OR from Joe Rinaldi, James G. Stutelberg,

Andrew Tometich, Richard Doombos, Denise Beachy, James B. Flaws, OR

Robert Hansen REGARDING KYOCERA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

**REQUEST FOR PRODUCTION NO. 7:**

ALL DOCUMENTS produced to HEMLOCK in the BP SOLAR

LITIGATION, the SOLAR WORLD LITIGATION, the GLOBAL SUN

15

sd-656626

LITIGATION, the GREEN ENERGY TECHNOLOGY LITIGATION, OR ANY

SOLAR MANUFACTURING LITIGATION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**


**REQUEST FOR PRODUCTION NO. 8:**

ALL DOCUMENTS produced to HEMLOCK in ANY litigation RELATED

TO LONG TERM SUPPLY AGREEMENTS, CONCERNING the interpretation

of, enforceability of, purpose of, unconscionability of, legality of, breach of,

compliance with, OR impracticability OR impossibility of complying with ANY

LONG TERM SUPPLY AGREEMENT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**


**REQUEST FOR PRODUCTION NO. 9:**

ALL DOCUMENTS produced by HEMLOCK in the BP SOLAR

LITIGATION, the SOLAR WORLD LITIGATION, the GLOBAL SUN

LITIGATION, the GREEN ENERGY TECHNOLOGY LITIGATION, OR ANY

SOLAR MANUFACTURING LITIGATION.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

sd-656626

**REQUEST FOR PRODUCTION NO. 10:**

ALL DOCUMENTS produced by HEMLOCK in ANY litigation RELATED TO LONG TERM SUPPLY AGREEMENTS CONCERNING the interpretation of, enforceability of , purpose of, unconscionability of, legality of , breach of, compliance with, OR impracticability OR impossibility of complying with ANY LONG TERM SUPPLY AGREEMENT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**


**REQUEST FOR PRODUCTION NO. 11:**

ALL COMMUNICATIONS REGARDING ANY LONG TERM SUPPLY AGREEMENTS to OR from Joe Rinaldi, James G. Stutelberg, Andrew Tometich, Richard Doombos, Denise Beachy, James B. Flaws, OR Robert Hansen including but not limited to COMMUNICATIONS RELATED TO the interpretation of, enforceability of , purpose of, unconscionability of, legality of , breach of, compliance with, OR impracticability OR impossibility of complying with  ANY LONG TERM SUPPLY AGREEMENT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

**REQUEST FOR PRODUCTION NO. 12:**

ALL COMMUNICATIONS between ANY of HEMLOCK's customers AND HEMLOCK, DOW CORNING, DOW, OR CORNING REGARDING the acts of CHINESE companies OR the CHINESE GOVERNMENT AND are RELATED TO requests to change the terms of ANY LONG TERM AGREEMENT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

**REQUEST FOR PRODUCTION NO. 13:**

ALL DOCUMENTS RELATED TO YOUR strategy for managing LTA CUSTOMER complaints (including LTA CUSTOMER requests to renegotiate contracts) AND LTA CUSTOMER RELATIONSHIPS after the AGREEMENT III SIGNATURE DATE.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

**REQUEST FOR PRODUCTION NO. 14:**

ALL DOCUMENTS REGARDING offers by YOU, OR requests by others, to renegotiate, modify, OR suspend performance of ANY LONG TERM SUPPLY AGREEMENT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

18

sd-656626

**REQUEST FOR PRODUCTION NO. 15:**

ALL DOCUMENTS REGARDING changes OR modifications made to

ANY LONG TERM SUPPLY AGREEMENT that lowered the gross price, net

price, OR contracted quantity of ANY LONG TERM SUPPLY AGREEMENT

after 2009.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**


**REQUEST FOR PRODUCTION NO. 16:**

ALL DOCUMENTS REGARDING assertions that ANY LONG TERM

SUPPLY AGREEMENT is void, illegal, unenforceable, OR unconscionable.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**


**REQUEST FOR PRODUCTION NO. 17:**

ALL DOCUMENTS RELATED TO the United States Securities AND

Exchange Commission's May 7, 2013 letter to James B. Flaws of Corning, Inc.,

attached hereto as Exhibit A.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

sd-656626

**REQUEST FOR PRODUCTION NO. 18:**

ALL DOCUMENTS REGARDING YOUR accounting of payments received from KYOCERA OR other LTA CUSTOMERS including, but not limited to, your financial statements after the AGREEMENT 1 SIGNATURE DATE.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**


**REQUEST FOR PRODUCTION NO. 19:**

ALL DOCUMENTS REGARDING YOUR efforts to expand YOUR capacity to produce polysilicon after the AGREEMENT I SIGNATURE DATE.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**


**REQUEST FOR PRODUCTION NO. 20:**

ALL DOCUMENTS REGARDING the cost of production for polysilicon ordered by KYOCERA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**


**REQUEST FOR PRODUCTION NO. 21:**

ALL DOCUMENTS REGARDING YOUR efforts to sell the TENNESSEE PLANT.

sd-656626

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

**REQUEST FOR PRODUCTION NO. 22:**

ALL DOCUMENTS REGARDING YOUR efforts to build the

TENNESSEE PLANT, including but not limited to DOCUMENTS REGARDING

the cost of building the TENNESSEE PLANT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

**REQUEST FOR PRODUCTION NO. 23:**

ALL DOCUMENTS REGARDING YOUR decision to close the

TENNESSEE PLANT, reduce production at ANY other polysilicon plants, OR

otherwise produce less polysilicon than you previously intended.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

**REQUEST FOR PRODUCTION NO. 24:**

ALL DOCUMENTS REGARDING YOUR strategies, plans, OR efforts to

enforce LONG TERM SUPPLY AGREEMENTS including, but not limited to,

DOCUMENTS REGARDING the renegotiation of some LONG TERM SUPPLY

AGREEMENTS OR ANY subsequent plans to stop renegotiating LONG TERM

SUPPLY AGREEMENTS.

sd-656626

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

**REQUEST FOR PRODUCTION NO. 25:**

ALL DOCUMENTS REGARDING ANY requests by HEMLOCK, DOW

CORNING, CORNING, OR DOW that ANY LONG TERM SUPPLY

AGREEMENT customer OR other third party communicate with ANY CHINESE

OFFICIALS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

**REQUEST FOR PRODUCTION NO. 26**

ALL DOCUMENTS supporting OR RELATED TO the statements made by

Robert D. Hansen in the July 20, 2012 press release attached as Exhibit C to the

KYOCERA ANSWER AND COUNTERCLAIMS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

**REQUEST FOR PRODUCTION NO. 27**

ALL DOCUMENTS supporting OR RELATED TO the statements made by

YOU in the press release attached as Exhibit D to the KYOCERA ANSWER AND

COUNTERCLAIMS, including but not limited to, all DOCUMENTS RELATED

sd-656626

TO layoffs, AND reduced production as a result of industry oversupply,

international trade disputes.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

**REQUEST FOR PRODUCTION NO. 28**

ALL DOCUMENTS supporting OR RELATED TO the statements made by

YOU in press release attached as Exhibit E to the KYOCERA ANSWER AND

COUNTERCLAIMS, including but not limited to the statement that "Our

Polysilicon segment, the Hemlock Semiconductor Group, continued its strong

performance in 2014 despite the lack of progress in resolving the U.S. AND China

trade disputes plaguing the solar industry."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

**REQUEST FOR PRODUCTION NO. 29**

ALL DOCUMENTS RELATED TO the HEMLOCK STRATEGIES

discussed in Exhibit F to KYOCERA'S ANSWER AND COUNTERCLAIMS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

sd-656626

**REQUEST FOR PRODUCTION NO. 30**

ALL DOCUMENTS supporting OR RELATED TO the statements made

regarding HEMLOCK AND the SOLAR INDUSTRY in Exhibits G AND H to the

KYOCERA ANSWER AND COUNTERCLAIMS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**


**REQUEST FOR PRODUCTION NO. 31**

ALL DOCUMENTS supporting OR RELATED TO the statements made by

YOU in the press release attached as Exhibit I to the KYOCERA ANSWER AND

COUNTERCLAIMS, including but not limited to, ALL DOCUMENTS

RELATED TO the closing of the "Tennessee Manufacturing Facility as a Result of

Industry Oversupply, International Trade Disputes."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**


**REQUEST FOR PRODUCTION NO. 32:**

ALL COMMUNICATIONS with TENNESSEE REPRESENTATIVES

REGARDING YOUR plans to build the TENNESSEE PLANT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

24

**REQUEST FOR PRODUCTION NO. 33:**

ALL DOCUMENTS REGARDING forecasts of worldwide solar grade

polysilicon supply OR demand.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**


**REQUEST FOR PRODUCTION NO. 34:**

ALL DOCUMENTS REGARDING forecasts of HEMLOCK'S capacity to

manufacture solar grade polysilicon that were made before the AGREEMENT III

SIGNATURE DATE.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**


**REQUEST FOR PRODUCTION NO. 35:**

ALL DOCUMENTS evidencing polysilicon prices paid by ANY signatory

to ANY LONG TERM SUPPLY AGREEMENT whose required payment,

ordering, OR delivery commitments were modified at ANY time during the term

of its LONG TERM SUPPLY AGREEMENT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

sd-656626

**REQUEST FOR PRODUCTION NO. 36:**

YOUR financial statements (including but not limited to detailed profit AND loss statements AND detailed balance sheets) for every quarter between AGREEMENT I SIGNATURE DATE AND today.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

**REQUEST FOR PRODUCTION NO. 37:**

ALL DOCUMENTS supporting ANY contention that KYOCERA is not entitled to exercise FORCE MAJEURE rights under AGREEMENT III.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

**REQUEST FOR PRODUCTION NO. 38:**

ALL SETTLEMENT AGREEMENTS REGARDING ANY LONG TERM SUPPLY AGREEMENT, including but not limited to, SETTLEMENT AGREEMENTS between HEMLOCK AND BP SOLAR, SOLAR WORLD, GLOBAL SUN, GREEN ENERGY TECHNOLOGY, OR ANY LTA CUSTOMER.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

sd-656626

**REQUEST FOR PRODUCTION NO. 39:**

ANY STANDSTILL AGREEMENTS REGARDING ANY LONG TERM

SUPPLY AGREEMENT, including but not limited to, ANY STANDSTILL

AGREEMENTS between HEMLOCK AND BP SOLAR, SOLAR WORLD,

GLOBAL SUN, GREEN ENERGY TECHNOLOGY, OR ANY LTA

CUSTOMER.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**


**REQUEST FOR PRODUCTION NO. 40:**

ALL COMMUNICATIONS with INTERNATIONAL TRADE

COMMISSION, ITC PARTIES, MOFCOM, the CHINESE GOVERNMENT, OR

the UNITED STATES GOVERNMENT REGARDING the manufacture,

assembly, distribution, use, OR sale of SOLAR MATERIALS IN CHINA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**


**REQUEST FOR PRODUCTION NO. 41:**

ALL COMMUNICATIONS with TENNESSEE REPRESENTATIVES

REGARDING the manufacture, assembly, distribution, use, OR sale of SOLAR

MATERIALS IN CHINA.

sd-656626

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

**REQUEST FOR PRODUCTION NO. 42:**

ALL COMMUNICATIONS with GREEN ENERGY TECHNOLOGY, BP

SOLAR, SOLAR WORLD, GLOBAL SUN, OR ANY LTA CUSTOMER

REGARDING the manufacture, assembly, distribution, use, OR sale of SOLAR

MATERIALS IN CHINA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

**REQUEST FOR PRODUCTION NO. 43:**

ALL COMMUNICATIONS with the INTERNATIONAL TRADE

COMMISSION, ITC PARTIES, MOFCOM, the CHINESE GOVERNMENT, OR

the UNITED STATES GOVERNMENT REGARDING the SOLAR INDUSTRY

in CHINA AND its impact on the global solar industry.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

**REQUEST FOR PRODUCTION NO. 44:**

ALL COMMUNICATIONS with TENNESSEE REPRESENTATIVES

REGARDING the CHINESE GOVERNMENT.

sd-656626

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**


**REQUEST FOR PRODUCTION NO. 45:**

ALL COMMUNICATIONS with GREEN ENERGY TECHNOLOGY, BP SOLAR, SOLAR WORLD, GLOBAL SUN, OR ANY LTA CUSTOMER REGARDING the CHINESE GOVERNMENT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**


**REQUEST FOR PRODUCTION NO. 46:**

ALL COMMUNICATIONS with the INTERNATIONAL TRADE COMMISSION, ITC PARTIES, OR the UNITED STATES GOVERNMENT REGARDING the CHINESE GOVERNMENT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**


**REQUEST FOR PRODUCTION NO. 47:**

ALL DOCUMENTS submitted by OR on behalf of HEMLOCK in the trade proceeding before the MOFCOM that RELATE TO HEMLOCK'S efforts to market OR sell polysilicon in CHINA OR tariffs imposed on polysilicon sold OR marketed in CHINA.

sd-656626

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

**REQUEST FOR PRODUCTION NO. 48:**

ALL DOCUMENTS RELATED TO ANY payments made under ANY

LONG TERM SUPPLY AGREEMENT that were not accompanied by an order for

polysilicon including, but not limited to, ADVANCE PAYMENTS, "take-or-pay"

payments, AND payments made pursuant to a judgment OR other order from a

court, arbitration panel, OR other governmental, judicial, OR quasi-judicial

authority.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

**REQUEST FOR PRODUCTION NO. 49:**

ALL COMMUNICATIONS REGARDING DEMANDS FOR

ASSURANCES sent to ANY LTA CUSTOMER.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

**REQUEST FOR PRODUCTION NO. 50:**

ALL COMMUNICATIONS REGARDING ANY attempts by YOU OR and

LTA CUSTOMER to repudiate ANY LONG TERM SUPPLY AGREEMENT.

30

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**


**REQUEST FOR PRODUCTION NO. 51:**

ALL COMMUNICATIONS REGARDING ANY attempts by YOU OR

ANY LTA CUSTOMER to terminate ANY LONG TERM SUPPLY

AGREEMENT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**


**REQUEST FOR PRODUCTION NO. 52:**

ALL DOCUMENTS RELATED TO the end of James Stutelberg's

employment with YOU.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**


**REQUEST FOR PRODUCTION NO. 53:**

James Stutelberg's personnel file.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**


**REQUEST FOR PRODUCTION NO.  54:**

ALL DOCUMENTS REFERRING TO lost business, damages OR other

harm suffered by HEMLOCK, DOW CORNING, DOW, CORNING, OR ANY of

sd-656626

HEMLOCK's customers as a result of the acts OR omissions of CHINESE competitors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 54:**

**REQUEST FOR PRODUCTION NO. 55:**

ALL COMMUNICATIONS between YOU AND DOW CORNING, DOW, OR CORNING regarding the SOLAR INDUSTRY in CHINA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

**REQUEST FOR PRODUCTION NO. 56:**

ALL DOCUMENTS RELATED TO meetings of the board of directors of HEMLOCK, DOW CORNING, DOW, OR CORNING in which KYOCERA was discussed including, but not limited to, agendas, meeting minutes, presentations, AND notes from those meetings.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

**REQUEST FOR PRODUCTION NO. 57:**

ALL DOCUMENTS RELATED TO meetings of the boards of directors of HEMLOCK, DOW CORNING, DOW, OR CORNING from 2007 to present in which actions of the CHINESE GOVERNMENT RELATED TO the SOLAR

sd-656626

INDUSTRY in CHINA where discussed including, but not limited to, agendas,

meeting minutes, presentations, AND notes from those meetings.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

**REQUEST FOR PRODUCTION NO. 58:**

ALL DOCUMENTS RELATED TO meetings of the boards of directors of

HEMLOCK, DOW CORNING, DOW, OR CORNING from 2007 to present in

which the board discussed the closure of the TENNESSEE PLANT OR plans to

slow OR stop construction of the TENNESSEE PLANT including, but not limited

to, agendas, meeting minutes, presentations, AND notes from those meetings.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

**REQUEST FOR PRODUCTION NO. 59:**

ALL DOCUMENTS RELATED TO YOUR OR DOW CORNING'S

Antitrust AND Global Competition Policies.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 59:**

33

Dated:  July 23, 2015          By:   /s/ William V. O'Connor

Robert A. Hahn (P28193)
Jungerheld, Hahn & Washburn, P.C.
P.O. Box 6128
Saginaw, MI  48608-6128
Tel:  (989) 790-0000

Keefe A. Brooks
Brooks@bwst-law.com
Brooks Wilkins Sharkey & Turco, PLLC
401 S. Old Woodward, Suite 400
Birmingham, MI  48009
Tel:  (248) 971-1800

David C. Doyle
DDoyle@mofo.com
M. Andrew Woodmansee
MAWoodmansee@mofo.com
William V. O'Connor
WOConnor@mofo.com
Morrison & Foerster LLP
12531 High Bluff Drive
San Diego, CA  92130-2040
Tel:  (858) 720-5100

Attorneys for Defendant and
Counterclaimant
Kyocera Corporation

34

sd-656626

# Exhibit A



**DIVISION OF
CORPORATION FINANCE**

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

May 7, 2013

Via E-mail
Mr. James B. Flaws
Vice Chairman and Chief Financial Officer
Corning Incorporated
One Riverfront Plaza
Corning, NY 14831

> **RE: Corning Incorporated**
> **Form 10-K for the Year ended December 31, 2012**
> **Filed February 13, 2013**
> **File No. 1-3247**

Dear Mr. Flaws:

We have reviewed your filing and have the following comments. We have limited our review to only your financial statements and related disclosures and do not intend to expand our review to other portions of your documents. In some of our comments, we may ask you to provide us with information so we may better understand your disclosure.

Please respond to this letter within ten business days by providing the requested information or by advising us when you will provide the requested response. If you do not believe our comments apply to your facts and circumstances, please tell us why in your response.

After reviewing the information you provide in response to these comments, we may have additional comments.

Form 10-K for the Year Ended December 31, 2012

General

1. Where a comment below requests additional disclosures or other revisions to be made, these revisions should be included in your future filings, including your interim filings, if applicable.

Item 7. Management's Discussion and Analysis of Financial Condition and Results of Operations, page 17

Results of Operations, page 19

2. Please provide a more detailed analysis of the factors that impact your operations, including a complete discussion of known or anticipated trends that may continue to have

Mr. Flaws
Corning Incorporated
May 7, 2013
Page 2

an impact on sales, profit margins, selling, general and administrative expenses, etc.
Your discussion and analysis should provide investors with sufficient information to
understand the historical trends and the expectations for the future as seen through the
eyes of management.  We noted the following issues with regard to your discussion:

- On page 19 you disclose that sales in the Specialty Materials segment increased by
  double-digits due to the strong demand for Corning Gorilla Glass.  On page 24 you
  disclose that within your Display Technologies segment retail demand for larger-
  sized LCD televisions drove a double-digit increase in volume.  Describing your
  growth as "double digit" is ambiguous and could imply growth between 10% and
  99%.  Please quantify percentages, rather than describing amounts as "double digit."
- On page 24 you disclose that the Display Technologies segment's decrease in net
  sales in 2012 reflects significant price declines which occurred in the fourth quarter of
  2011 and the first quarter of 2012.  You further indicate the increase in volume
  resulting from retail demand for your larger-sized LCD televisions "slightly offset"
  the price declines.  Please expand your disclosures to quantitatively describe the
  dollar impact that price and volume variances had on Display Technologies' net sales.
- On page 25 you disclose that net sales for the Telecommunications segment were up
  slightly for 2012 as compared for 2011 and you disclose the contributing factors.
  Please quantify the impact of each contributing factor that you identify.
- On page 26 you disclose that net sales of the Environmental Technologies segment
  declined, in part, due to the negative impact of foreign exchange rate movements.
  Please quantify the impact that foreign exchange rates had on Environmental
  Technologies' net sales and results of operations.

The above examples are only meant to highlight areas where additional information
would have been beneficial to investors.  Please address these comments as they relate to
your consolidated and segment results of operations.  Refer to Section 501.04 of the
Financial Reporting Codification and SEC Release 33-8350 for guidance.  Please show
us in your supplemental response what the revisions will look like in future filings.

Cash Flows, page 29

2012 vs. 2011

3. You indicate that a net positive change in working capital effected operating cash flow.
   Please expand your disclosures to discuss the material underlying components of working
   capital and the reasons for material changes in these components.  In addition, please
   explain how the decrease in your accounts payable and other current liabilities from 2011
   to 2012 as reflected in your consolidated balance sheets resulted in $189 net cash
   provided by operations in 2012.

Mr. Flaws
Corning Incorporated
May 7, 2013
Page 3

Corning Incorporated Consolidated Financial Statements, page 45

Note 20  Reportable Segments, page 83

4. Please report the revenues from external customers for each product and service or each group of similar products. Refer to ASC 280-10-50-40 for guidance.

5. We note that you have identified your Environmental Technologies reportable segment as being the result of the aggregation of two operating segments. In light of the significance of your Display Technologies segment, please confirm that you do not have operating segments underlying this reportable segment. In addition, in light of your discussion on page 33 regarding your goodwill impairment testing within the Specialty Metals segment, please confirm that the businesses you refer to do not meet the definition of an operating segment. Refer to ASC 280-10-50-1. Please provide us with a representative copy of your monthly CODM reporting packages as well as the financial information that you regularly provide to your Board of Directors.

Dow Corning Corporation and Subsidiaries Consolidated Financial Statements, page 91

Note 14  Deferred Revenue, page 112

6. We note that under certain long-term product sales agreements, customers were obligated to purchase minimum quantities of product and make specified payments. Most of these product sales agreements extended over various periods and prior to 2012 the revenue associated with the agreements had been recognized using the average sales price over the life of the agreements. Under the average price methodology, differences between amounts invoiced to customers under the agreements and amounts recognized using the average price methodology were reported as deferred revenue in the consolidated balance sheets. After a series of amendments to the agreements in 2012, you concluded that future sales prices were no longer fixed and determinable and discontinued the use of the average price methodology. For the year ended December 31, 2012 and periods thereafter, the revenue associated with these product sales agreements is recognized using invoice-based pricing with a ratable recognition of existing deferred revenue amounts. Please address the following:

   • Provide us with a representative copy of the 2012 amended agreement. With reference to the specific terms of the amended agreement, provide support for your accounting. In this regard, please specifically identify the authoritative literature you are relying on to ratably recognize the existing deferred revenue amounts;

   • Quantify the amount of deferred revenue recognized in 2012 under this new accounting policy and show us how you determined the appropriateness of the amount to be recognized; and