# EXHIBIT 12

1                          STATE OF MICHIGAN

2          IN THE CIRCUIT COURT FOR THE COUNTY OF SAGINAW

3

4   HEMLOCK SEMICONDUCTOR CORPORATION,

5              Plaintiff,

6

7          vs.                              File No. 13-020593-CK-1

8   GREEN ENERGY TECHNOLOGY,

9              Defendant.
                                        /
10  _____

11

12                  ORAL OPINION OF THE COURT

13       BEFORE THE HONORABLE FRED L. BORCHARD, CIRCUIT JUDGE

14             Saginaw, Michigan - April 20, 2015

15

16   APPEARANCES VIA PHONE:

17

18   For Plaintiff:   (There was no appearance stated on the
                      record.)
19

20

21   For Defendant:   (There was no appearance stated on the
                      record.)
22

23

24

25   Reported By:    TRACY M. STEMLER, CSR-4023
                     Official Court Reporter


                              1

1                         I N D E X

2

3   WITNESSES:   PLAINTIFF

    None

4

5

6   WITNESSES:   DEFENDANT

7   None

8

9

10  EXHIBITS:                              MARKED    RCVD

11  None

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1        Saginaw, Michigan
 2        April 20, 2015
 3                    (Following took place via phone:)
 4                    THE COURT:  If, at any time, you cannot.
 5                    Hear me, please let me know.  Court at this
 6        time will call the matter of Hemlock Semiconductor
 7        versus Green Energy, Case Number 13-020593-CK.  The
 8        record will reflect this is the day, time, and place
 9        set for an opinion on Defendants' motion for compelling
10        discovery.
11                    Background on this case indicates the
12        defendants, Green Energy Technology, Inc., otherwise
13        known as GET, and Tatung Company of America, Inc.,
14        Tatung having filed a joint motion to compel discovery
15        asserting that, notwithstanding objections by the
16        plaintiff, Hemlock Semiconductor, HSC, certain
17        requested information is relevant and it should be
18        provided in the discovery.
19                    To put the present issue in context, review
20        of the pleadings and undisputed facts is helpful in
21        this matter.  Hemlock Semiconductor's complaint alleges
22        that pursuant to a long-term supply amendment dated
23        5-4-11 as subsequently amended, the agreement, which
24        will be known as -- between HSC's assignor, its
25        affiliate, Hemlock Singapore, and both defendants, HSC,
```

3

1   was to manufacture and sell certain polycrystalline

2   silicon, known as the product, to the defendants in

3   specified quantities pursuant to an annual schedule at

4   specific prices for a term extending through December

5   31 of 2020.

6           The agreement obligated the defendants to,

7   quote, absolutely and irrevocably to pay full purchase

8   price for the product regardless of whether Defendants

9   actually took delivery, that is, quote, take and pay,

10  end quote, contract.  Complaint goes on to allege the

11  agreement required Defendants to make advance payment

12  in several installments.

13          It also provided that upon an uncured

14  default, HSC could terminate the agreement and recover

15  all unpaid advance payment installments, retain any

16  advanced payment, recover for all delivered product,

17  and recover payment for all remaining product at the

18  then effective price.

19          It's alleged the defendants failed to pay

20  advance payment installments as required and failed to

21  take and/or pay for product.  HSC also alleges it sent

22  notice of termination to the defendants pursuant to the

23  agreement and it claims $737,235,429.17 due on the

24  agreement under theories of breach of contract and

25  account stated.

4

1       While GET's Answer admits signing the

2    agreement including the amendments, Tatung's Answer

3    admits signing the amendments to the agreement, and it

4    was originally with the defendant; that is, the

5    agreement was originally with the defendant Green

6    Energy only, and responses to the requests for

7    admission, when review of the pleadings, also noted

8    advance payment installments by admission were not

9    made.  The agreement does contain take-or-pay language.

10   The agreement contains the liquidated damages

11   provision.

12       Defendants received notice of default from

13   HSC.  Both defendants, however, interpose several

14   affirmative defenses, including failure to mitigate

15   damages.  Performance, as argued, was excused by the

16   Doctrine of Commercial Impracticability, and

17   performance was also excused by the Doctrine of

18   Frustration of Purpose.

19       It's also alleged affirmatively the requested

20   damages were unreasonable, excessive and unenforceable,

21   and acted as unenforceable penalty.  Now, because of

22   these defenses, the defense assert that, over HCS's

23   (sic) objections, they are entitled to discovery

24   evidence related to Hemlock's financial performance and

25   condition before and after execution of the agreement,

1    including income statements, balance sheets, sales

2    revenue information concerning product inventory, and

3    HSC's strategic planning and utilization forecasts on

4    the premises, it's argued, that the information will

5    demonstrate that HSC's actual damages render the

6    liquidated damages provision of the agreement

7    unenforceable and unreasonable.

8         It's also argued that HSC's agreement to sell

9    product to other customers is relevant on the premises

10   that HSC agreed to sell product at reduced market rates

11   to other customers in recognition of the global decline

12   in the solar industry and failed to mitigate damages by

13   similarly selling to Defendants at attractive prices

14   below the -- that required by the agreement.

15        It's finally argued, also, that HSC's

16   awareness of market, legal, and government forces

17   affecting the market make the request for discovery

18   reasonable on the premises that this information will

19   relevantly show the frustration of purpose of the

20   agreement, impossibility of it, and commercial

21   impracticability.

22        As to liquidated damages central to this

23   present motion, and, really, as the Court looks at it,

24   the entire case, is the enforceability of the

25   agreement's liquidated damages provision.   Liquidated

1    damages, this Court understands, refers to the sum
2    which the parties to a contract have agreed at the time
3    of entering into the contract as being payable to
4    satisfy any loss or injury flowing from the breach of
5    contract.  This principle's set forth in 7 Mich Civ
6    Jur, Damages Section 146.
7             To be enforceable, the liquidated damages
8    clause must bear a reasonable relation to the
9    anticipated or actual damages.  This principle is set
10   forth in St. Paul Fire and Marine Insurance Company
11   verses Guardian Alarm, 115 Mich App 278, 1982.  If
12   damages are deemed excessively harsh, too large an
13   amount, that is, unreasonable, they could be considered
14   punitive rather than compensatory and therefore
15   unenforceable.  This involves -- or is -- Court, for
16   that principle, would cite the case of Watson versus
17   Harrison, 324 Mich 16.  It's a 1949 case.
18             The validity and reasonableness of a
19   liquidated damages provision is determined by
20   conditions existing at the time the contract is entered
21   into, not when the breach occurs, Wilkinson versus
22   Lanterman, 314 Mich 568, a 1946 case, and there's other
23   cases since that time.
24             There are three factors in determining
25   reasonableness of liquidated -- of the liquidated

7

1    damages provision in sale of goods:  One, the

2    anticipated or actual harm caused by the breach; two,

3    the difficulty of proving damages sustained; and,

4    three, the inconvenience or nonfeasibility of otherwise

5    obtaining an adequate remedy, MCL 440.24718(1) and UCC

6    2-718(1).

7              As to the anticipated actual harm factor,

8    although courts are prone to honor a general freedom of

9    contract including allocation of risk, parties cannot

10   disregard the principle of just compensation that

11   contemplates compensation only for damages actually

12   sustained, Curran, C-U-R-R-A-N, versus William, 352

13   Mich 278, a 1956 case, but an agreement for damages

14   will not be disregarded as an unforcible --

15   unenforceable penalty unless it is obvious from the

16   contract and the whole subject matter that the

17   principle compensation has been disregarded, Central

18   Trust Company versus Wolf, 255 Mich 8, 1931.

19             Before accepting as conclusive an agreement

20   as to damages, it should be examined by the Court to

21   determine whether the liquidated damages figure is

22   really in the nature of an attempted compensation of

23   actual damages likely to result or whether it has the

24   effect of exacting the penalty from the contract

25   breaker.

1       As to the difficulty of proof, liquidated

2  damages will be permitted only if actual damages cannot

3  be ascertained with certainty at the time of

4  contracting, Worley, W-O-R-L-E-Y, versus McCarty, 354

5  Mich 599, 1958 case.

6       As to the inconvenience or nonfeasibility of

7  an adequate remedy, this seems to be substantially

8  redundant to the previous factor that damages not be

9  readily measurable at the time of contracting.  Again,

10  this is Trentacosta, Michigan Contract Law, 2d ed,

11  Section 6.36, page 260.

12       Importantly, the enforceability of liquidated

13  damages provisions in Michigan is a question of law,

14  Moore versus St. Clair County, 120 Mich App 355.

15       Here, the defendants seek to discover HSC's

16  financial condition since 2006, that is, before and

17  after the execution of the agreement in 2011, on the

18  premise the information will demonstrate HSC's actual

19  damages render the agreement's liquidated damages

20  provision unenforceable and unreasonable.

21       While evidence related to HSC's actual and

22  anticipated damages may be relevant and discoverable

23  and this very information may be necessary to enable

24  the Court to determine reasonable -- the reasonableness

25  of the liquidated damages provision only, the relevance

9

1   of the defendants' particular discovery request is

2   suspect for several reasons:

3           First, the defense argues in their supporting

4   brief at page four their obligation to pay is

5   conditioned on HSC's ability to provide product and,

6   therefore, they want to discover whether HSC was even

7   financially viable or capable of performing its

8   contractual obligations, but nowhere is it claimed,

9   either in the defendants' answers, affirmative

10  defenses, or otherwise, that HSC is guilty of a

11  material breach or even an anticipatory breach of the

12  agreement.  Rather, the defendants' argument is limited

13  to the anecdotal observation that the entire solar

14  industry suffered a drastic decline beginning in 2011,

15  and Hemlock no longer -- excuse me, Hemlock, no doubt,

16  faced the very similar difficulties as other

17  participants in the market.

18          Second, the defendants seek information

19  concerning HSC's financial condition before and after

20  the execution of the agreement, but case law indicates

21  that the reasonableness of liquidated damages is to be

22  determined by conditions existing at the time the

23  contract is entered into.  That's the Wilkerson case.

24          Third, even if limited to HSC's financial

25  condition as the agreement's function are the discovery

1    requests relevant to the inquiry whether the parties'

2    calculation of liquidated damages bears a reasonable

3    relation to HSC's actual damages anticipated at the

4    time?  This requires consideration of the proper

5    measure of damages in the absence of a liquidated

6    damages agreement.

7            In this regard, the UCC, at 2-708(1), and MCL

8    440.2708(1) provides, in pertinent part:  Subject to

9    Subsection (2) and the provisions of this article with

10   respect to proof of market price, Section 2723, the

11   measure of damages for nonacceptance or repudiation by

12   the buyer is the difference between the market price at

13   the time and place for tender and the unpaid contract

14   price together with any incidental damages provided in

15   this article, Section 2710, but less expenses saved the

16   consequence of the buyer's breach.  The contract price

17   is the agreement, and the market price does not appear

18   to function -- does not appear a function of HSC's

19   financial condition.

20           Finally, take-or-pay contracts have received

21   judicial acceptance elsewhere, including Hemlock

22   Semiconductor versus Global Sun Limited, which

23   provides, in part, the purpose of the take-or-pay

24   clause is to appropriate the risk of production and the

25   sales between the buyer and seller.  The seller bears

11

1    the risk of production.  To compensate seller that

2    risk, buyer agrees to take or pay for it -- pay for, if

3    not taken, a minimum quantity.  The buyer bears the

4    risk of market demand.  The take-or-pay clause insures

5    that if the demand for product goes down, the seller

6    will still receive the price for the contract quantity

7    delivered each year.

8           Under Universal RES Corporation versus

9    Panhandle, 813 F2d 77, at page 80, the terms of a

10    take-or-pay clause are fully enforceable.  The Tenth

11    Circuit has emphasized when considering contracts with

12    take-or-pay provisions where the buyer is in breach,

13    the seller's damages are measured by the obligation to

14    pay, the value of which is the contract price in effect

15    at the time such deficiency occurred multiplied by the

16    difference between the contract quantity and the actual

17    quantity of the product purchased for any year buyer

18    was in breach.

19           This principle is also set forth in Prenaulta

20    Corporation versus Colorado Interstate, 944 F2d 677, at

21    page 690.  The Court would also note in direct -- or in

22    the opinion, the matter of Attorney General versus

23    Public Service Commission, a Court of Appeals' decision

24    found at 171 Mich App 696, a 1988 case.

25           In conclusion, the particular discovery

1    request related to HSC's financial condition does not

2    appear to be relevant to the affirmative defense that

3    the liquidated damages provision of the agreement

4    constitutes an unreasonable or unenforceable penalty.

5         As to mitigation of damages, as part of the

6    broader principle of avoidance of consequences, the law

7    imposes a duty on a party injured by a breach of

8    contract to undertake reasonable efforts to minimize

9    resulting damages, Shiffer, S-H-I-F-F-E-R, versus Board

10   of Education, 393 Mich 190, at page 197, a 1974 case,

11   and there are a number of other cases also cited

12   subsequent and as well as prior to that case, but only

13   reasonable diligence and ordinary care is required to

14   allow full recovery of damages caused by a defendant's

15   wrong, Clapman, C-L-A-P-M-A-N, versus Yanga, Y-A-N-G-A,

16   102 Mich App 47, a 1980 case, not necessarily the best

17   court cause of action or even -- or achieve a measure

18   of success.  See-- GC Kay Company versus Standard Steel

19   Treating, 352 Mich 234.

20        Mitigation commonly consists of a seller

21   taking steps to reduce expenses or generating revenue

22   by selling goods otherwise destined to the defaulting

23   buyer.

24        The merit of this issue is arguably inverse

25   to the enforceability of the liquidated damages

13

1    provisions; that is, any mitigation duty would be

2    seemingly displaced if the parties' contractual

3    obligation for damages is reasonable.

4            Here, assuming applicability of the defense,

5    the defendants argue in their supporting brief, page

6    six, that the duty to mitigate required HSC to allow

7    Defendants to continue purchasing product from HSC even

8    after the unforeseen and precipitous decline of prices

9    in the solar industry beginning in 2011.  Because

10   product is a fungible commodity, HSC's costs of

11   producing the product are identical across customers is

12   clearly indicative of whether it could have accepted

13   lower prices from the defendants.

14           Had HSC allowed such a concession, the

15   defendants argue that other -- as other suppliers did,

16   Defendants could have continued to purchase product

17   from HSC, and HSC could have continued to generate

18   revenue from Defendants even if something less than the

19   windfall that HSC seeks through the lawsuit as, Court

20   again reiterates, Defendants argue in their brief at

21   page six.

22           It seems an interesting proposition that a

23   party's duty to mitigate extends to selling goods under

24   contract to that of a breaching party for less than the

25   contract price, and, in any event, this proposition

14

1  would not appear to mitigate the defendants' exposure;

2  that is, selling the product at a reduced price would

3  end up with the defendants paying the amount and still

4  being liable for the deficiency due under the agreement

5  rather than mitigating by HSC's generating revenue from

6  sale to a third-party buyer and pursuing Defendants on

7  the deficiency only.

8  Here, rather than discount the defendants'

9  contract price to reflect the changing market

10  conditions, HSC elected to affirm the agreement and to

11  sue for damages, Price versus Long Realty, Inc., 199

12  Mich App 461, at page 466.  Accordingly, assuming HSC's

13  obligation to mitigation damages not extend to selling

14  product to the defendants at a price discounted from

15  the agreement, the defendants' request for information

16  related to HSC's agreements to sell product to other

17  customers is based on a false premise.

18  As to frustration of purpose, commercial

19  impracticability and impossibility, the defendants have

20  also interposed the affirmative defenses.  Although

21  impossibility was not enumerated as an affirmative

22  defense by either of the defendants, its applicability

23  is asserted in the present joint motion/brief, and the

24  Plaintiffs -- the Plaintiff has joined in the issue in

25  its response.  In any event, the restatement of

1    contracts equates extreme impracticability with

2    impossibility.

3            Although contracting parties are generally

4    obligated to perform or pay damages for failure to

5    perform no matter how burdensome the performance, the

6    law excuses promisors from performing when an

7    unforeseen event makes performance impossible, Dobbs,

8    under Laws of Contract, Section 186, page 296.

9            Impossibility as a defense is recognized in

10   two forms:  Original impossibility; that is, unknown

11   circumstances exist when the contract is formed that

12   render performance impossible, and supervening

13   impossibility; that is, occurrence of an event after

14   the contract -- I'm sorry, that is, the occurrence of

15   an event after contract formation renders performance

16   impossible.

17           In either event, the key to excusing

18   nonperformance is due to impossibility -- due to

19   impossibility is the foreseeability of the

20   circumstances rendering performance impossible.

21   Trentacosta, Michigan Contract Law, 2d ed, Section

22   9.65, at page 397.  Where there is conflicting evidence

23   on the question of impossibility, it is a question of

24   fact for the trier of fact to resolve, Roberts versus

25   Farmers, Inc., Exchange, 275 Mich at 58, page 74.

16

1    The affirmative defense of impracticability

2 derives from the restatement of contracts recognition

3 that absolute impossibility is not required, but an

4 obligor may be excused from performance upon a showing

5 of impracticability because of extreme and unreasonable

6 difficulty, expense, injury, or loss involved, Bissell

7 versus LW Edison Company, 9 Mich App 276, at page 285.

8

9    The doctrine of frustration of purpose may be

10 invoked to excuse performance if, one, the contract is

11 at least partially executory, two, the purpose of the

12 contract was known to both parties at the time of

13 frustration, and, three, the purpose was frustrated by

14 an event which is not the fault of the party invoking

15 the doctrine not reasonably foreseeable, in other

16 words, at the time of the formation, Molnar versus

17 Molnar, 110 Mich App, page 622.

18    However, here, the affirmative defenses of

19 frustration of purpose, impossibility, and

20 impracticability are premised on the collapse of the

21 product's market.  As analyzed in Dobbs under Laws of

22 Contract, Section 197, page 215, this premise appears

23 legally deficient.

24    For impossibility of frustration to operate

25 as an excuse, it must be objective rather than

1   subjective.  It is the difference between the thing

2   that cannot be done and I cannot do it.

3         The primary application of this distinction,

4   Dobbs goes on to note, is in cases where performance is

5   impossible because of inability to pay money or render

6   any other performance as a result of insolvency or

7   other financial problems.  Such inability is personal

8   to the obligor.  It does not excuse performance.  It

9   is, perhaps, more realistic to state, however, that

10  when entering into a contract, each party assumes the

11  risk that he will have the financial ability to

12  perform, and cases cited by the plaintiff confirm that

13  economic hardship does not excuse performance.  That

14  includes the case of General Motors Corp. versus

15  Paramount Metal Products, 90 F Supp 2d 861, Karl Wendt

16  Farm Equipment Company versus International Harvester,

17  931 F2d 1112, Chainworks, Inc., versus Webco

18  Industries, 2000 -- that's cited in 2000 -- or a 2006

19  case.

20        And, accordingly, the defendants', the court

21  would note, discovery request as related to HSC's

22  awareness of market, legal, and government forces

23  affecting the product marketplace do not appear to be

24  relevant to an appropriate application of the

25  affirmative defense of impracticability, impossibility,

1    and frustration of purpose.   Therefore, it is ordered

2    that the defendants' motion to compel discovery is

3    denied.

4              That is the opinion of the Court.   I'd ask

5    that the appropriate order be entered, and if you can

6    submit it within seven days or get it sent out under a

7    seven-day notice of presentment, I'd appreciate it.

8    Thank you.

9              A VOICE:   Thank you, your Honor.

10             (Proceedings adjourned.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   STATE OF MICHIGAN      )
 2                          ) SS
 3   COUNTY OF SAGINAW      )
 4
 5
 6
 7
 8          I certify that this transcript is a complete, true
 9   and correct transcript of the proceedings and testimony
10   taken in this case before the Honorable Fred L. Borchard,
11   Circuit Judge, in Saginaw, Michigan.
12
13
14
15
16
17   _____
                    Tracy M. Stemler, CSR-4023
18                  Official Court Reporter
                    111 South Michigan Avenue
19                  Saginaw, MI   48602
20
21
22
23
24
25
```

20

$737,235,429.17 [1]  4/23

**1**

102 [1]  13/16
110 [1]  17/17
111 [1]  20/18
1112 [1]  18/17
115 [1]  7/11
120 [1]  9/14
13-020593-CK [1]  3/7
13-020593-CK-1 [1]  1/6
146 [1]  7/6
16 [1]  7/17
171 [1]  12/24
186 [1]  16/8
190 [1]  13/10
1931 [1]  8/18
1946 [1]  7/22
1949 [1]  7/17
1956 [1]  8/13
1958 [1]  9/5
197 [2]  13/10 17/22
1974 [1]  13/10
1980 [1]  13/16
1982 [1]  7/11
1988 [1]  12/24
199 [1]  15/11

**2**

2-708 [1]  11/7
2-718 [1]  8/6
20 [2]  1/13 3/2
2000 [2]  18/18 18/18
2006 [2]  9/16 18/18
2011 [3]  9/17 10/14 14/9
2015 [2]  1/13 3/2
2020 [1]  4/5
215 [1]  17/22
234 [1]  13/19
255 [1]  8/18
260 [1]  9/11
2710 [1]  11/15
2723 [1]  11/10
275 [1]  16/25
276 [1]  17/7
278 [2]  7/11 8/13
285 [1]  17/7
296 [1]  16/8
2d [3]  9/10 16/21 18/15

**3**

31 [1]  4/5
314 [1]  7/22
324 [1]  7/17
352 [2]  8/12 13/19
354 [1]  9/4
355 [1]  9/14
393 [1]  13/10
397 [1]  16/22

**4**

4023 [2]  1/25 20/17
440.24718 [1]  8/5
440.2708 [1]  11/8
461 [1]  15/12
466 [1]  15/12
47 [1]  13/16
48602 [1]  20/19

5-4-11 as [1]  3/23
568 [1]  7/22
58 [1]  16/25
599 [1]  9/5

**6**

6.36 [1]  9/11
622 [1]  17/17
677 [1]  12/20
690 [1]  12/21
696 [1]  12/24

**7**

708 [1]  11/7
718 [1]  8/6
74 [1]  16/25
77 [1]  12/9

**8**

80 [1]  12/9
813 [1]  12/9
861 [1]  18/15

**9**

9.65 [1]  16/22
90 [1]  18/15
931 [1]  18/17
944 [1]  12/20

**A**

ability [2]  10/5 18/11
absence [1]  11/5
absolute [1]  17/3
absolutely [1]  4/7
acceptance [1]  11/21
accepted [1]  14/12
accepting [1]  8/19
accordingly [2]  15/12 18/20
account [1]  4/25
achieve [1]  13/17
across [1]  14/11
acted [1]  5/21
action [1]  13/17
actual [10]  6/5 7/9 8/2 8/7 8/23 9/2
 9/18 9/21 11/3 12/16
actually [2]  4/9 8/11
adequate [2]  8/5 9/7
adjourned [1]  19/10
admission [2]  5/7 5/8
admits [2]  5/1 5/3
advance [4]  4/11 4/15 4/20 5/8
advanced [1]  4/16
affecting [2]  6/17 18/23
affiliate [1]  3/25
affirm [1]  15/10
affirmative [8]  5/14 10/9 13/2
 15/20 15/21 17/1 17/18 18/25
affirmatively [1]  5/19
after [6]  5/25 9/17 10/19 14/8
 16/13 16/15
again [2]  9/9 14/20
agreed [2]  6/10 7/2
agreement [27]
agreement's [3]  6/25 9/19 10/25
agreements [1]  15/16
agrees [1]  12/2
Alarm [1]  7/11
all [3]  4/15 4/16 4/17
allege [1]  4/10
alleged [2]  4/19 5/19

alleges [2]  3/1 3/12
allocation [1]  8/9
allow [2]  13/14 14/6
allowed [1]  14/14
also [11]  4/13 4/21 5/7 5/17 5/19
 6/8 6/15 12/19 12/21 13/11 15/20
although [3]  8/8 15/20 16/3
amended [1]  3/23
amendment [1]  3/22
amendments [2]  5/2 5/3
America [1]  3/13
amount [2]  7/13 15/3
analyzed [1]  17/21
and/or [1]  4/21
anecdotal [1]  10/13
annual [1]  4/3
Answer [2]  5/1 5/2
answers [1]  10/9
anticipated [5]  7/9 8/2 8/7 9/22
 11/3
anticipatory [1]  10/11
any [9]  3/4 4/15 7/4 11/14 12/17
 14/1 14/25 15/25 18/6
App [7]  7/11 9/14 12/24 13/16
 15/12 17/7 17/17
App 461 [1]  15/12
Appeals' [1]  12/23
appear [5]  11/17 11/18 13/2 15/1
 18/23
appearance [2]  1/17 1/21
APPEARANCES [1]  1/15
appears [1]  17/22
applicability [2]  14/4 15/22
application [2]  18/3 18/24
appreciate [1]  19/7
appropriate [3]  11/24 18/24 19/5
April [2]  1/13 3/2
are [11]  5/23 7/12 7/24 8/8 10/25
 12/10 12/13 13/11 14/11 16/3 17/20
arguably [1]  13/24
argue [3]  14/5 14/15 14/20
argued [4]  5/15 6/4 6/8 6/15
argues [1]  10/3
argument [1]  10/12
article [2]  11/9 11/15
as [31]
ascertained [1]  9/3
ask [1]  19/4
assert [1]  5/22
asserted [1]  15/23
asserting [1]  3/15
assignor [1]  3/24
assumes [1]  18/10
assuming [2]  14/4 15/12
at [31]
attempted [1]  8/22
Attorney [1]  12/22
attractive [1]  6/13
Avenue [1]  20/18
avoidance [1]  13/6
awareness [2]  6/16 18/22

**B**

Background [1]  3/11
balance [1]  6/1
based [1]  15/17
be [21]
bear [1]  7/8
bears [3]  11/2 11/25 12/3
because [4]  5/21 14/9 17/5 18/5
been [1]  8/17
before [6]  1/12 5/25 8/19 9/16

**B**

before... **[2]** 10/19 20/10
beginning **[2]** 10/14 14/9
being **[2]** 7/3 15/4
below **[1]** 6/14
best **[1]** 13/16
between **[5]** 3/24 11/12 11/25 12/16 18/1
Bissell **[1]** 17/6
Board **[1]** 13/9
BORCHARD **[2]** 1/12 20/10
both **[3]** 3/25 5/13 17/12
breach **[10]** 4/24 7/4 7/21 8/2 10/11 10/11 11/16 12/12 12/18 13/7
breaching **[1]** 14/24
breaker **[1]** 8/25
brief **[4]** 10/4 14/5 14/20 15/23
broader **[1]** 13/6
burdensome **[1]** 16/5
but **[6]** 8/13 10/8 10/20 11/15 13/12 17/3
buyer **[8]** 11/12 11/25 12/2 12/3 12/12 12/17 13/23 15/6
buyer's **[1]** 11/16

**C**

C-L-A-P-M-A-N **[1]** 13/15
C-U-R-R-A-N **[1]** 8/12
calculation **[1]** 11/2
call **[1]** 3/6
can **[1]** 19/5
cannot **[5]** 3/4 8/9 9/2 18/2 18/2
capable **[1]** 10/7
care **[1]** 13/13
case **[17]** 3/7 3/11 6/24 7/16 7/17 7/22 8/13 9/5 10/20 10/23 12/24 13/10 13/12 13/16 18/14 18/19 20/10
cases **[4]** 7/23 13/11 18/4 18/12
cause **[1]** 13/17
caused **[2]** 8/2 13/14
central **[2]** 6/22 8/17
certain **[2]** 3/16 4/1
certainty **[1]** 9/3
certify **[1]** 20/8
Chainworks **[1]** 18/17
changing **[1]** 15/9
CIRCUIT **[4]** 1/2 1/12 12/11 20/11
circumstances **[2]** 16/11 16/20
cite **[1]** 7/16
cited **[3]** 13/11 18/12 18/18
Civ **[1]** 7/5
CK **[2]** 1/6 3/7
claimed **[1]** 10/8
claims **[1]** 4/23
Clair **[1]** 9/14
Clapman **[1]** 13/15
clause **[4]** 7/8 11/24 12/4 12/10
clearly **[1]** 14/12
collapse **[1]** 17/20
Colorado **[1]** 7/20
commercial **[3]** 5/16 6/20 15/18
Commission **[1]** 12/23
commodity **[1]** 14/10
commonly **[1]** 13/20
Company **[6]** 3/13 7/10 8/18 13/18 17/7 18/16
compel **[2]** 3/14 19/2
compelling **[1]** 3/9
compensate **[1]** 12/1
compensation **[4]** 8/10 8/11 8/17

compensatory **[1]** 7/14
complaint **[2]** 3/21 4/10
complete **[1]** 20/8
concerning **[1]** 6/2 10/19
concession **[1]** 14/14
conclusion **[1]** 12/25
conclusive **[1]** 8/19
condition **[6]** 5/25 9/16 10/19 10/25 11/19 13/1
conditioned **[1]** 10/5
conditions **[3]** 7/20 10/22 15/10
confirm **[1]** 18/12
conflicting **[1]** 16/22
consequence **[1]** 11/16
consequences **[1]** 13/6
consideration **[1]** 11/4
considered **[1]** 7/13
considering **[1]** 12/11
consists **[1]** 13/20
constitutes **[1]** 13/4
contain **[1]** 5/9
contains **[1]** 5/10
contemplates **[1]** 8/11
context **[1]** 3/19
continue **[1]** 14/7
continued **[2]** 14/16 14/17
contract **[29]**
contracting **[3]** 9/4 9/9 16/3
contracts **[4]** 11/20 12/11 16/1 17/2
contractual **[2]** 10/8 14/2
Corp **[1]** 18/14
CORPORATION **[3]** 1/4 12/8 12/20
correct **[1]** 20/9
costs **[1]** 14/10
could **[5]** 4/14 7/13 14/12 14/16 14/17
COUNTY **[3]** 1/2 9/14 20/3
court **[16]** 1/2 1/11 1/25 3/5 6/23 7/1 7/15 8/20 9/24 12/21 12/23 13/17 14/19 18/20 19/4 20/18
courts **[1]** 8/8
CSR **[2]** 1/25 20/17
CSR-4023 **[2]** 1/25 20/17
Curran **[1]** 8/12
customers **[4]** 6/9 6/11 14/11 15/17

**D**

damages **[46]**
dated **[1]** 3/22
day **[2]** 3/8 19/7
days **[1]** 19/6
December **[1]** 4/4
decision **[1]** 12/23
decline **[3]** 6/11 10/14 14/8
deemed **[1]** 7/12
default **[2]** 4/14 5/12
defaulting **[1]** 13/22
defendant **[5]** 1/9 1/21 2/6 5/4 5/5
defendant's **[1]** 13/14
defendants **[25]**
defendants' **[9]** 3/9 10/1 10/9 10/12 15/1 15/8 15/15 18/20 19/2
defense **[8]** 5/22 10/3 13/2 14/4 15/22 16/9 17/1 18/25
defenses **[5]** 5/14 5/22 10/10 15/20 17/18
deficiency **[3]** 12/15 15/4 15/7
deficient **[1]** 17/23
delivered **[2]** 4/16 12/7
delivery **[1]** 4/9
demand **[2]** 12/4 12/5

demonstrate **[1]** 3/12
denied **[1]** 19/3
derives **[1]** 17/2
destined **[1]** 13/22
determine **[2]** 8/21 9/24
determined **[2]** 7/19 10/22
determining **[1]** 7/24
did **[1]** 14/15
difference **[3]** 11/12 12/16 18/1
difficulties **[1]** 10/16
difficulty **[3]** 8/3 9/1 17/6
diligence **[1]** 13/13
direct **[1]** 12/21
discount **[1]** 15/8
discounted **[1]** 15/14
discover **[2]** 9/15 10/6
discoverable **[1]** 9/22
discovery **[10]** 3/10 3/14 3/18 5/23 6/17 10/1 10/25 12/25 18/21 19/2
displaced **[1]** 14/2
disregard **[1]** 10/16
disregarded **[2]** 8/14 8/17
distinction **[1]** 18/3
do **[2]** 18/2 18/23
Dobbs **[3]** 16/7 17/21 18/4
doctrine **[4]** 5/16 5/17 17/9 17/15
does **[6]** 5/9 11/17 11/18 13/1 18/8 18/13
done **[1]** 18/2
doubt **[1]** 10/15
down **[1]** 12/5
drastic **[1]** 10/14
due **[4]** 4/23 15/4 16/18 16/18
duty **[4]** 13/7 14/1 14/6 14/23

**E**

each **[2]** 12/7 18/10
economic **[1]** 18/13
ed **[2]** 9/10 16/21
Edison **[1]** 17/7
Education **[1]** 13/10
effect **[2]** 8/24 12/14
effective **[1]** 4/18
efforts **[1]** 13/8
either **[3]** 10/9 15/22 16/17
elected **[1]** 15/10
elsewhere **[1]** 11/21
emphasized **[1]** 12/11
enable **[1]** 9/23
end **[2]** 4/10 15/3
ENERGY **[4]** 1/8 3/7 3/12 5/6
enforceability **[3]** 6/24 9/12 13/25
enforceable **[2]** 7/7 12/10
entered **[3]** 7/20 10/23 19/5
entering **[2]** 7/3 18/10
entire **[2]** 6/24 10/13
entitled **[1]** 5/23
enumerated **[1]** 15/21
equates **[1]** 16/1
Equipment **[1]** 18/16
even **[6]** 10/6 10/11 10/24 13/17 14/7 14/18
event **[7]** 14/25 15/25 16/7 16/13 16/15 16/17 17/14
evidence **[3]** 5/24 9/21 16/22
exacting **[1]** 8/24
examined **[1]** 8/20
excessive **[1]** 5/20
excessively **[1]** 7/12
Exchange **[1]** 16/25
excuse **[5]** 10/15 17/10 17/25 18/8 18/13

**E**

excused [3]  5/15 5/17 17/4
excuses [1]  16/6
excusing [1]  16/17
execution [3]  5/25 9/17 10/20
executory [1]  17/11
EXHIBITS [1]  2/10
exist [1]  16/11
existing [2]  7/20 10/22
expense [1]  17/6
expenses [2]  11/15 13/21
exposure [1]  15/1
extend [1]  15/13
extending [1]  4/4
extends [1]  14/23
extreme [2]  16/1 17/5

**F**

F2d [3]  12/9 12/20 18/17
faced [1]  10/16
fact [2]  16/24 16/24
factor [2]  8/7 9/8
factors [1]  7/24
facts [1]  3/20
failed [3]  4/19 4/20 6/12
failure [2]  5/14 16/4
false [1]  15/17
Farm [1]  18/16
Farmers [1]  16/25
fault [1]  17/14
figure [1]  8/21
File [1]  1/6
filed [1]  3/14
finally [2]  6/15 11/20
financial [8]  5/24 9/16 10/19 10/24
 11/19 13/1 18/7 18/11
financially [1]  10/7
Fire [1]  7/10
First [1]  10/3
flowing [1]  7/4
Following [1]  3/3
forces [2]  6/16 18/22
forecasts [1]  6/3
foreseeability [1]  16/19
foreseeable [1]  17/15
formation [2]  16/15 17/16
formed [1]  16/11
forms [1]  16/10
forth [3]  7/5 7/10 12/9
found [1]  12/24
four [1]  10/4
FRED [2]  1/12 20/10
freedom [1]  8/8
frustrated [1]  17/13
frustration [8]  5/18 6/19 15/18
 17/9 17/13 17/19 17/24 19/1
full [2]  4/7 13/14
fully [1]  12/10
function [3]  10/25 11/18 11/18
fungible [1]  14/10

**G**

GC [1]  13/18
general [3]  8/8 12/22 18/14
generally [1]  16/3
generate [1]  14/17
generating [2]  13/21 15/5
get [2]  3/13 19/6
GET's [1]  5/1
global [2]  6/11 11/22
goes [3]  4/10 12/5 18/4

**goods** [3]  8/17 8/23 12/16
government [2]  6/16 18/22
GREEN [4]  1/8 3/7 3/12 5/5
Guardian [1]  7/11
guilty [1]  10/10

**H**

Had [1]  14/14
hardship [1]  18/13
harm [2]  8/2 8/7
Harrison [1]  7/17
harsh [1]  7/12
Harvester [1]  18/16
has [4]  8/17 8/23 12/11 15/24
have [7]  7/2 11/20 14/12 14/16
 14/17 15/19 18/11
having [1]  3/14
HCS's [1]  5/22
he [1]  18/11
Hear [1]  3/5
helpful [1]  3/20
HEMLOCK [8]  1/4 3/6 3/16 3/21
 3/25 10/15 10/15 11/21
Hemlock's [1]  5/24
here [4]  9/15 14/4 15/8 17/18
honor [1]  8/8 19/9
HONORABLE [2]  1/12 20/10
how [1]  16/5
however [3]  5/13 17/18 18/9
HSC [15]  3/16 3/25 4/14 4/21 5/13
 6/10 10/6 10/10 14/6 14/7 14/14
 14/17 14/17 14/19 15/10
HSC's [19]  3/24 6/3 6/5 6/8 6/15
 9/15 9/18 9/21 10/5 10/19 10/24
 11/3 11/18 13/1 14/10 15/5 15/12
 15/16 18/21

**I**

I'd [2]  19/4 19/7
I'm [1]  16/14
identical [1]  14/11
if [10]  3/4 7/11 9/2 10/24 12/2 12/5
 14/2 14/18 17/10 19/5
Importantly [1]  9/12
imposes [1]  13/7
impossibility [14]  6/20 15/19 15/21
 16/2 16/9 16/10 16/13 16/18 16/19
 16/23 17/3 17/19 17/24 18/5
impossible [5]  16/7 16/12 16/16
 16/20 18/5
impracticability [8]  5/16 6/21
 15/19 16/1 17/1 17/5 17/20 18/25
in [48]
inability [2]  18/5 18/7
Inc [5]  3/12 3/13 15/11 16/25 18/17
incidental [1]  11/14
includes [1]  18/14
including [5]  5/2 5/14 6/1 8/9 11/21
income [1]  6/1
inconvenience [2]  8/4 9/6
indicates [2]  3/11 10/20
indicative [1]  14/12
Industries [1]  18/18
industry [3]  6/12 10/14 14/9
information [8]  3/17 6/2 6/4 6/18
 9/18 9/23 10/18 15/15
injured [1]  13/7
injury [2]  7/4 17/6
inquiry [1]  11/1
insolvency [1]  18/6
installments [4]  4/12 4/15 4/20 5/8
Insurance [1]  7/10

insures [1]  7/11
interesting [1]  14/22
International [1]  18/16
interpose [1]  5/13
interposed [1]  15/20
Interstate [1]  12/20
into [4]  7/3 7/21 10/23 18/10
inventory [1]  6/2
inverse [1]  13/24
invoked [1]  17/10
invoking [1]  17/14
involved [1]  17/6
involves [1]  7/15
irrevocably [1]  4/7
is [60]
issue [3]  3/19 13/24 15/24
it [24]
it's [6]  4/19 5/19 6/4 6/8 6/15 7/17
its [4]  3/24 10/7 15/22 15/25

**J**

joined [1]  15/24
joint [2]  3/14 15/23
JUDGE [2]  1/12 20/11
judicial [1]  11/21
Jur [1]  7/6
just [1]  8/10

**K**

Karl [1]  18/15
Kay [1]  13/18
key [1]  16/17
know [1]  3/5
known [4]  3/13 3/24 4/2 17/12

**L**

language [1]  5/9
Lanterman [1]  7/22
large [1]  7/12
law [6]  9/10 9/13 10/20 13/6 16/6
 16/21
Laws [2]  16/8 17/21
lawsuit [1]  14/19
least [1]  17/11
legal [2]  6/16 18/22
legally [1]  17/23
less [3]  11/15 14/18 14/24
let [1]  3/5
liable [1]  15/4
likely [1]  8/23
limited [3]  10/12 10/24 11/22
liquidated [19]  5/10 6/6 6/22 6/25
 6/25 7/7 7/19 7/25 7/25 8/21 9/1
 9/12 9/19 9/25 10/21 11/2 11/5 13/3
 13/25
long [2]  3/22 15/11
long-term [1]  3/22
longer [1]  10/15
looks [1]  6/23
loss [2]  7/4 17/6
lower [1]  14/13
LW [1]  17/7

**M**

made [1]  5/9
make [2]  4/11 6/17
makes [1]  16/7
manufacture [1]  4/1
Marine [1]  7/10
MARKED [1]  2/10
market [11]  6/10 6/16 6/17 10/17
 11/10 11/12 11/17 12/4 15/9 17/21

**market... [1]** 18/22
**marketplace [1]** 18/23
**material [1]** 10/11
**matter [5]** 3/6 3/21 8/16 12/22 16/5
**may [4]** 9/22 9/23 17/4 17/9
**McCarty [1]** 9/4
**MCL [2]** 8/5 11/7
**me [3]** 3/5 3/5 10/15
**measurable [1]** 9/9
**measure [3]** 11/5 11/11 13/17
**measured [1]** 12/13
**merit [1]** 13/24
**Metal [1]** 18/15
**MI [1]** 20/19
**Mich [16]** 7/5 7/11 7/17 7/22 8/13 8/18 9/5 9/14 12/24 13/10 13/16 13/19 15/12 16/25 17/7 17/17
**MICHIGAN [9]** 1/1 1/13 3/1 9/10 9/13 16/21 20/1 20/11 20/18
**minimize [1]** 13/8
**minimum [1]** 12/3
**mitigate [5]** 5/14 6/12 14/6 14/23 15/1
**mitigating [1]** 15/5
**mitigation [4]** 13/5 13/20 14/1 15/13
**Molnar [2]** 17/16 17/17
**money [1]** 18/5
**Moore [1]** 9/14
**more [1]** 18/9
**motion [5]** 3/9 3/14 6/23 15/23 19/2
**motion/brief [1]** 15/23
**Motors [1]** 18/14
**multiplied [1]** 12/15
**must [2]** 7/8 17/25

**N**

**nature [1]** 8/22
**necessarily [1]** 13/16
**necessary [1]** 9/23
**no [6]** 1/6 1/17 1/21 10/15 10/15 16/5
**nonacceptance [1]** 11/11
**None [3]** 2/3 2/7 2/11
**nonfeasibility [2]** 8/4 9/6
**nonperformance [1]** 16/18
**not [18]** 5/8 7/21 8/14 9/8 11/17 11/18 12/3 13/1 13/16 15/1 15/13 15/21 17/3 17/14 17/15 18/8 18/13 18/23
**note [3]** 12/21 18/4 18/21
**noted [1]** 5/7
**notice [3]** 4/22 5/12 19/7
**notwithstanding [1]** 3/15
**Now [1]** 5/21
**nowhere [1]** 10/8
**number [2]** 3/7 13/11

**O**

**objections [2]** 3/15 5/23
**objective [1]** 17/25
**obligated [2]** 4/6 16/4
**obligation [4]** 10/4 12/13 14/3 15/13
**obligations [1]** 10/8
**obligor [2]** 17/4 18/8
**observation [1]** 10/13
**obtaining [1]** 8/5
**obvious [1]** 8/15

**occurred [1]** 16/13
**occurrence [2]** 16/13 16/14
**occurs [1]** 7/21
**Official [2]** 1/25 20/18
**on [17]** 1/17 1/21 3/9 3/11 4/10 4/23 6/3 6/9 6/18 9/17 10/5 13/7 15/6 15/17 16/23 17/20 18/4
**one [2]** 8/1 17/10
**only [6]** 5/6 8/11 9/2 9/25 13/12 15/7
**operate [1]** 17/24
**opinion [4]** 1/11 3/9 12/22 19/4
**or [30]**
**ORAL [1]** 1/11
**order [1]** 19/5
**ordered [1]** 19/1
**ordinary [1]** 13/13
**Original [1]** 16/10
**originally [2]** 5/4 5/5
**other [11]** 6/9 6/11 7/22 10/16 13/11 14/15 14/15 15/16 17/15 18/6 18/7
**otherwise [4]** 3/12 8/4 10/10 13/22
**out [1]** 19/6
**over [1]** 5/22

**P**

**page [14]** 9/11 10/4 12/9 12/21 13/10 14/5 14/21 15/12 16/8 16/22 16/25 17/7 17/17 17/22
**Panhandle [1]** 12/9
**Paramount [1]** 18/15
**part [3]** 11/8 11/23 13/5
**partially [1]** 17/11
**participants [1]** 10/17
**particular [2]** 10/1 12/25
**parties [4]** 7/2 8/9 16/3 17/12
**parties' [2]** 11/1 14/2
**party [5]** 13/7 14/24 15/6 17/14 18/10
**party's [1]** 14/23
**Paul [1]** 7/10
**pay [16]** 4/7 4/9 4/19 4/21 5/9 10/4 11/20 11/23 12/2 12/12 12/4 12/10 12/12 12/14 16/4 18/5
**payable [1]** 7/3
**paying [1]** 15/3
**payment [6]** 4/11 4/15 4/16 4/17 4/20 5/8
**penalty [4]** 5/21 8/15 8/24 13/4
**perform [3]** 16/4 16/5 18/12
**performance [14]** 5/15 5/17 5/24 16/5 16/7 16/12 16/15 16/20 17/4 17/10 18/4 18/6 18/8 18/13
**performing [1]** 10/7 16/6
**perhaps [1]** 18/9
**permitted [1]** 9/2
**personal [1]** 18/7
**pertinent [1]** 11/8
**phone [1]** 1/15 3/3
**place [3]** 3/3 3/8 11/13
**plaintiff [6]** 1/5 1/17 2/2 3/16 15/24 18/12
**Plaintiffs [1]** 15/24
**planning [1]** 6/3
**pleadings [2]** 3/20 5/7
**please [1]** 3/5
**polycrystalline [1]** 4/1
**precipitous [1]** 14/8
**premise [3]** 9/18 15/17 17/22
**premised [1]** 17/20
**premises [3]** 6/4 6/9 6/18

**accrued [1]** 7/21
**occurred [1]** 16/13

**present [3]** 3/19 6/23 15/23
**presentment [1]** 19/7
**previous [1]** 9/8
**price [14]** 4/8 4/18 11/10 11/12 11/14 11/16 11/17 12/6 12/14 14/25 15/2 15/9 15/11 15/14
**prices [4]** 4/4 6/13 14/8 14/13
**primary [1]** 18/3
**principle [6]** 7/9 7/16 8/10 8/17 12/19 13/6
**principle's [1]** 7/5
**prior [1]** 13/12
**problems [2]** 9/1 11/10
**proceedings [2]** 19/10 20/9
**producing [1]** 14/11
**product [19]** 4/2 4/8 4/16 4/17 4/21 6/2 6/9 6/10 6/10 10/5 12/5 12/17 14/7 14/10 14/11 14/16 15/2 15/14 15/16 18/23
**product's [1]** 17/21
**production [2]** 11/24 12/1
**Products [1]** 18/15
**promisors [1]** 16/6
**prone [1]** 8/8
**proof [2]** 9/1 11/10
**proper [1]** 11/4
**proposition [2]** 14/22 14/25
**provide [1]** 10/5
**provided [3]** 3/18 4/13 11/14
**provides [2]** 11/8 11/23
**proving [1]** 8/3
**provision [8]** 5/11 6/6 6/25 7/19 8/1 9/20 9/25 13/3
**provisions [4]** 9/13 11/9 12/12 14/1
**Public [1]** 12/23
**punitive [1]** 8/24
**purchase [2]** 4/7 14/16
**purchased [1]** 12/17
**purchasing [1]** 14/7
**purpose [9]** 5/18 6/19 11/23 15/18 17/9 17/11 17/13 17/19 19/1
**pursuant [3]** 3/22 4/3 4/22
**pursuing [1]** 15/6
**put [1]** 3/19

**Q**

**quantities [1]** 4/3
**quantity [4]** 12/3 12/6 12/16 12/17
**question [3]** 9/13 16/23 16/23
**quote [3]** 4/7 4/9 4/10

**R**

**rates [1]** 6/10
**rather [5]** 7/14 10/12 15/5 15/8 17/25
**RCVD [1]** 2/10
**readily [1]** 18/9
**realistic [1]** 18/9
**really [2]** 6/23 8/22
**Realty [1]** 15/11
**reasonable [7]** 6/18 7/8 9/24 11/2 13/8 13/13 14/3
**reasonableness [4]** 7/18 7/25 9/24 10/21
**reasonably [1]** 17/15
**reasons [1]** 10/2
**receive [1]** 12/6
**received [5]** 5/12 11/20
**recognition [2]** 6/11 17/2
**recognized [1]** 16/9
**record [1]** 1/18 1/21 3/8

**R**

recover [3]  4/14 4/16 4/17
recovery [1]  13/14
reduce [1]  13/21
reduced [2]  6/10 15/2
redundant [1]  9/8
refers [1]  7/1
reflect [2]  3/8 15/9
regard [1]  11/7
regardless [1]  4/8
reiterates [1]  14/20
related [5]  5/24 9/21 13/1 15/16 18/21
relation [2]  7/8 11/3
relevance [1]  9/25
relevant [6]  3/17 6/9 9/22 11/1 13/2 18/24
relevantly [1]  6/19
remaining [1]  4/17
remedy [2]  8/5 9/7
render [4]  6/5 9/19 16/12 18/5
rendering [1]  16/20
renders [1]  16/15
Reported [1]  1/25
Reporter [2]  1/25 20/18
repudiation [1]  11/11
request [5]  6/17 10/1 13/1 15/15 18/21
requested [2]  3/17 5/19
requests [2]  5/6 11/1
required [6]  4/11 4/20 6/14 13/13 14/6 17/3
requires [1]  11/4
RES [1]  12/8
resolve [1]  16/24
respect [1]  11/10
response [1]  15/25
responses [1]  5/6
restatement [2]  15/25 17/2
result [2]  8/23 18/6
resulting [1]  13/9
retain [1]  4/15
revenue [4]  6/2 13/21 14/18 15/5
review [2]  3/19 5/7
risk [6]  8/9 11/24 12/1 12/2 12/4 18/11
Roberts [1]  16/24

**S**

S-H-I-F-F-E-R [1]  13/9
SAGINAW [6]  1/2 1/13 3/1 20/3 20/11 20/19
sale [2]  8/1 15/6
sales [2]  6/1 11/25
satisfy [1]  7/4
saved [1]  11/15
schedule [1]  4/3
Second [1]  10/18
Section [7]  7/6 9/11 11/10 11/15 16/8 16/21 17/22
See [1]  13/18
seek [2]  9/15 10/18
seeks [1]  14/19
seemingly [1]  14/2
seems [2]  9/7 14/22
sell [4]  4/1 6/8 6/10 15/16
seller [5]  11/25 11/25 12/1 12/5 13/20
seller's [1]  12/13
selling [5]  6/13 13/22 14/23 15/2 15/13

**SEMICONDUCTOR [4]**  3/16 3/26 6/6 11/22
Semiconductor's [1]  3/21
sent [2]  4/21 19/6
Service [1]  12/23
set [4]  3/9 7/5 7/9 12/19
seven [2]  19/6 19/7
seven-day [1]  19/7
several [3]  4/12 5/13 10/2
sheets [1]  6/1
Shiffer [1]  13/9
should [1]  17/8 8/20
show [1]  6/19
showing [1]  17/4
sic [1]  5/23
signing [2]  5/1 5/3
silicon [1]  4/2
similar [1]  10/16
similarly [1]  6/13
since [2]  7/23 9/16
Singapore [1]  3/25
six [2]  14/6 14/21
solar [3]  6/12 10/13 14/9
something [1]  14/18
sorry [1]  16/14
South [1]  20/18
specific [1]  4/4
specified [1]  4/3
SS [1]  20/2
St [2]  7/10 9/14
Standard [1]  13/18
state [3]  1/1 18/9 20/1
stated [3]  1/17 1/21 4/25
statements [1]  6/1
Steel [1]  13/18
STEMLER [2]  1/25 20/17
steps [1]  13/21
still [2]  12/6 15/3
strategic [1]  6/3
subject [2]  8/16 11/8
subjective [1]  18/1
submit [1]  19/6
Subsection [1]  11/9
subsequent [1]  13/12
subsequently [1]  3/23
substantially [1]  9/7
success [1]  13/18
such [3]  12/15 14/14 18/7
sue [1]  13/19
suffered [1]  10/14
sum [1]  7/1
Sun [1]  11/22
supervening [1]  16/12
Supp [1]  18/15
suppliers [1]  14/15
supply [1]  3/22
supporting [2]  10/3 14/5
suspect [1]  10/2
sustained [2]  8/3 8/12

**T**

take [9]  4/9 4/21 5/9 11/20 11/23 12/2 12/4 12/10 12/12
take-or-pay [6]  5/9 11/20 11/23 12/4 12/10 12/12
taken [2]  12/3 20/10
taking [1]  13/21
Tatung [2]  3/13 3/14
Tatung's [1]  5/2
TECHNOLOGY [2]  1/8 3/12
tender [1]  11/13
Tenth [1]  12/10

terminate [1]  4/14
termination [1]  4/22
terms [1]  12/9
testimony [1]  20/9
than [6]  7/14 14/18 14/24 15/5 15/8 17/25
Thank [2]  19/8 19/9
that [48]
that's [2]  10/23 18/18
their [4]  10/3 10/4 14/5 14/20
then [1]  4/18
theories [1]  4/24
there [5]  1/17 1/21 7/24 13/11 16/22
there's [1]  7/22
therefore [3]  7/14 10/6 19/1
these [3]  5/23 7/13 10/6
thing [1]  18/1
third [2]  10/24 15/6
third-party [1]  15/6
this [24]
three [3]  7/24 8/4 17/13
through [2]  4/4 14/19
time [14]  3/4 3/6 3/8 7/2 7/20 7/23 9/3 9/9 10/22 11/4 11/13 12/15 17/12 17/16
together [1]  11/14
too [1]  7/12
took [2]  3/3 4/9
TRACY [2]  1/25 20/17
transcript [2]  20/8 20/9
Treating [1]  13/19
Trentacosta [2]  9/10 16/21
trier [1]  16/24
true [1]  20/8
Trust [1]  8/18
two [3]  8/2 16/10 17/11

**U**

UCC [2]  8/5 11/7
uncured [1]  4/13
under [7]  4/24 12/8 14/23 15/4 16/8 17/21 19/6
understands [1]  7/1
undertake [1]  13/8
undisputed [1]  3/20
unenforceable [7]  5/20 5/21 6/7 7/15 8/15 9/20 13/4
unforcible [1]  8/14
unforeseen [2]  14/8 16/7
Universal [1]  12/8
unknown [1]  16/10
unless [1]  8/15
unpaid [2]  4/15 11/13
unreasonable [6]  5/20 6/7 7/13 9/20 13/4 17/5
up [1]  15/3
upon [2]  4/13 17/4
utilization [1]  6/3

**V**

validity [1]  7/18
value [1]  12/14
verses [1]  7/11
versus [21]
very [2]  9/23 10/16
via [2]  1/15 3/3
viable [1]  10/7

## W

want **[1]** 10/6
was **[12]** 1/17 1/21 4/1 5/4 5/5 5/15
 5/17 10/6 12/18 15/21 17/12 17/13
Watson **[1]** 7/16
Webco **[1]** 18/17
well **[1]** 13/12
Wendt **[1]** 18/15
were **[2]** 5/8 5/20
when **[6]** 5/7 7/21 12/11 16/6 16/11
 18/10
where **[3]** 12/12 16/22 18/4
whether **[6]** 4/8 8/21 8/23 10/6
 11/1 14/12
which **[5]** 3/23 7/2 11/22 12/14
 17/14
While **[2]** 5/1 9/21
whole **[1]** 8/16
Wilkerson **[1]** 10/23
Wilkinson **[1]** 7/21
will **[10]** 3/6 3/8 3/24 6/4 6/18 8/14
 9/2 9/18 12/6 18/11
William **[1]** 8/12
windfall **[1]** 14/19
within **[1]** 19/6
WITNESSES **[2]** 2/2 2/6
Wolf **[1]** 8/18
words **[1]** 17/16
Worley **[1]** 9/4
would **[6]** 7/16 12/21 14/1 15/1
 15/2 18/21
wrong **[1]** 13/15

## Y

Y-A-N-G-A **[1]** 13/15
Yanga **[1]** 13/15
year **[2]** 12/7 12/17
you **[4]** 3/4 19/5 19/8 19/9
your **[1]** 19/9