# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

| | |
|---|---|
| HEMLOCK SEMICONDUCTOR CORPORATION,<br><br>*Plaintiff*,<br><br>v.<br><br>KYOCERA CORPORATION,<br><br>*Defendant*. | Case No. 15-CV-11236-TLL<br><br>Hon. Thomas L. Ludington |
| KYOCERA CORPORATION,<br><br>*Counterclaimant*,<br><br>v.<br><br>HEMLOCK SEMICONDUCTOR CORPORATION,<br><br>*Counterdefendant*. | |

**PLAINTIFF HEMLOCK SEMICONDUCTOR
CORPORATION'S MEMORANDUM OF LAW IN
<u>SUPPORT OF ITS CROSS-MOTION FOR A PROTECTIVE ORDER</u>**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................II

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................ IV

QUESTION PRESENTED ..................................................................................... V

I. PRELIMINARY STATEMENT ................................................................... 1

II. PERTINENT FACTS .................................................................................... 2

    A. The Court Dismisses All of Kyocera's Counterclaims ........................ 2

    B. The Court Denies Kyocera's Motion for Judgment on the Pleadings With Respect to the Accelerated Damages Provisions ....... 6

    C. The Parties Continue to Seek Discovery Relating to Kyocera's Rejected Legal Theories ....................................................................... 6

III. THE COURT SHOULD PRECLUDE INQUIRY INTO MATTERS RELATING SOLELY TO THE THEORIES REJECTED IN THE JANUARY 6 ORDER ................................................................................. 7

IV. CONCLUSION ............................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Abraham v. Trinity Health Corp.,
  No. 12-14402, 2013 WL 2051160 (E.D. Mich. May 14, 2013) ......................... 8

Flagg ex rel. Bond v. City of Detroit,
  268 F.R.D. 279 (E.D. Mich. 2010) .................................................................... 8

Doe v. Porter,
  370 F.3d 558 (6th Cir. 2004) ............................................................................. 8

Field Turf USA, Inc. v. Sports Construction Group, LLC,
  No. 06-2624, 2007 WL 4412855 (N.D. Ohio Dec. 12, 2007) ........................... 9

Herbst v. Ressler & Associates, Inc.,
  No. 13-2327, 2014 WL 4205294 (E.D. Mo. Aug. 22, 2014) .......................... 10

JP Morgan Chase Bank, N.A. v. Winget,
  No. 08-13845, 2012 WL 3133927 (E.D. Mich. Aug. 1, 2012) ......................... 8

Saye v. Old Hill Partners, Inc.,
  478 F. Supp. 2d 248 (D. Conn. 2007) .............................................................. 10

Stacy v. H & R Block Tax Servicess, Inc.,
  No. 07-13327, 2011 WL 807563 (E.D. Mich. Mar. 2, 2011) ........................... 8

Tribula v. SPX Corp.,
  No. 08-13300, 2009 WL 87269 (E.D. Mich. Jan. 12, 2009) ............................. 8

U.S. S.E.C. v. AA Capital Partners, Inc.,
  No. 06-51049, 2009 WL 3735880 (E.D. Mich. Nov. 3, 2009) ......................... 8

Wausau Underwriters Insurance Co. v. Pronto Staffing Services, Inc.,
  No. 11-928, 2011 WL 6016284 (N.D. Ill. Dec. 2, 2011) .................................. 9

**Other Authorities**

Fed. R. Civ. P. 12(f)(1) ........................................................................................ 10

Fed. R. Civ. P. 26(b) .............................................................................................. 8

Fed. R. Civ. P. 26(c)..................................................................................passim

-iv-

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

1. Hemlock Semiconductor Corp. v. Kyocera Corp., No. 15-11236, Dkt. No. 61 (E.D. Mich. Jan. 6, 2016).

2. Tribula v. SPX Corp., No. 08-13300, 2009 WL 87269 (E.D. Mich. Jan. 12, 2009).

3. Abraham v. Trinity Health Corp., No. 12-14402, 2013 WL 2051160 (E.D. Mich. May 14, 2013).

4. Stacy v. H & R Block Tax Servs., Inc., No. 07-13327, 2011 WL 807563 (E.D. Mich. Mar. 2, 2011).

5. Field Turf USA, Inc. v. Sports Const. Grp., LLC, No. 06-2624, 2007 WL 4412855, at *8 (N.D. Ohio Dec. 12, 2007).

## QUESTION PRESENTED

QUESTION NO. 1:   Where the Court has rejected many of Kyocera's defensive theories as a matter of law, should this Court issue a protective order limiting the scope of discovery so as to preclude fact discovery, by both parties, into matters that pertain solely to those rejected theories?

Yes.

Plaintiff Hemlock Semiconductor Corporation ("Hemlock") respectfully submits this memorandum of law in support of its motion pursuant to Fed R. Civ. P. 26(c)(1)(D) for a protective order precluding discovery into matters that pertain solely to legal theories that this Court rejected in its January 6, 2016 Order ("January 6 Order"), dismissing all seven of Defendant Kyocera Corporation's ("Kyocera") counterclaims and denying Kyocera's motion for judgment on the pleadings.

## I.   PRELIMINARY STATEMENT

This cross-motion is necessary because Kyocera refuses to acknowledge the import of the Court's January 6 Order. That order rejected several contract defenses pled by Kyocera as counterclaims for declaratory relief. Nonetheless, Kyocera continues to seek discovery into matters that pertain <u>solely</u> to those rejected theories, on the grounds that they live on in the form of identical affirmative defenses.

In dismissing all of Kyocera's counterclaims, the Court rejected all four of Kyocera's defensive theories (impossibility/impracticability, frustration of purpose, force majeure, and mutual mistake) which were based on its allegation that illegal actions of the Chinese government disrupted the global solar market. The Court also rejected three of Kyocera's other defensive theories: illegality under Japanese antitrust law, unjust enrichment, and breach of contract by

Hemlock. In addition, the January 6 Order recognized that because Hemlock has not terminated the agreements, the termination provisions are not at issue. Yet Kyocera continues to seek discovery in support of these arguments.

If discovery proceeds on these issues, it will drag on for months and will spawn more disputes and motions requiring further involvement and guidance from the Court. Curtailing the scope of discovery now would allow the parties to focus on the narrow issues that remain and expeditiously move toward resolution of this straightforward breach of contract action.

To be clear, Hemlock is not seeking a one-sided protective order. Hemlock, too, has numerous outstanding discovery requests to Kyocera that go to these now-dismissed theories, and a protective order appropriately limiting the scope of discovery would allow Hemlock to withdraw those outstanding requests.

## II. PERTINENT FACTS

### A. The Court Dismisses All of Kyocera's Counterclaims

In April 2015, Hemlock sued Kyocera for breaches of three of the parties long-term supply agreements.[1] Kyocera responded with seven counterclaims

---

[1] There are four long-term supply agreements between the parties ("Agreements I-IV"). The first three are the subject of this case. Agreement IV is the subject of a related case that Kyocera has recently removed to this Court. The parties expect to stipulate to consolidate the two actions, after which Hemlock plans to serve an amended omnibus complaint, to which Kyocera plans to respond.

against Hemlock. On January 6, 2016, this Court dismissed all of Kyocera's counterclaims.

Four of Kyocera's counterclaims were based on its allegation that the Chinese government had manipulated the solar market: impossibility/impracticability, frustration of purpose, force majeure, and mutual mistake. The Court dismissed the counterclaim for impracticability/impossibility, holding that "[r]egardless of the cause of the market shift, Kyocera's allegations amount only to claims of 'economic unprofitableness,' which are insufficient to give rise to claims of impossibility or impracticability." Jan. 6 Order at 8. The Court dismissed the counterclaim for frustration of purpose on similar grounds. Id. at 10. It dismissed the counterclaim for force majeure because the force majeure clause in Agreement III does not run in Kyocera's favor, and, in any event, the facts alleged by Kyocera would not trigger it. Id. at 14. The fifth counterclaim—mutual mistake—also failed: "First, mistaken expectations about market behavior do not relate to a fact in existence at the time the Supply Agreements were executed. Second, in entering into the long-term supply agreements, Kyocera accepted the risk that the market prices for polysilicon would decrease, thereby rendering its performance unprofitable." Id. at 18-19.

Sixth, the Court dismissed Kyocera's counterclaim for unjust enrichment "[b]ecause the Supply Agreements expressly contemplate and govern Kyocera's

non-refundable advance payments to Hemlock, [and therefore] Kyocera cannot recover its advance payments by implied contract." Id. at 20-21. Finally, the Court dismissed Kyocera's counterclaim that Hemlock breached Paragraph 9 of the Supply Agreements by failing to maintain expanded manufacturing facilities. As the Court held, "Kyocera makes no allegation that Hemlock has been unable to meet its obligation to fulfill Kyocera's demands for polysilicon under the Supply Agreements . . . ." Id. at 25.

The January 6 Order thus rejected all of the legal theories underpinning Kyocera's counterclaims. These same theories also formed the bases of many of Kyocera's affirmative defenses:

| **Dismissed Counterclaim** | **Corresponding Affirmative Defense(s)** |
|---|---|
| First Counterclaim: Declaratory Judgment of Impracticability/ Impossibility Relieving Kyocera of Performance Under Agreements I-III | Affirmative Defense No. 19: "Any required performance on the part of Kyocera is excused by the doctrine of impossibility/commercial impracticability." |
| | Affirmative Defense No. 21: "Any required performance on the part of Kyocera is excused by the supervening acts of one or more third parties." |
| Second Counterclaim: Declaratory Judgment of Frustration of Purpose Relieving Kyocera of Performance Under Agreements I-III | Affirmative Defense No. 20: "Any required performance on the part of Kyocera is excused by the doctrine of frustration of purpose." |
| | Affirmative Defense No. 22: "Any required performance on the part of |

| | |
|---|---|
| | Kyocera is excused by the illegal dumping of solar materials by the Chinese Government and Chinese producers, which caused a fundamental disruption in the market that was not foreseen or foreseeable by the parties at the time of their agreements." |
| Third Counterclaim: Declaratory Judgment of Force Majeure for Agreement III | Affirmative Defense No. 18: "Any required performance on the part of Kyocera under Agreement III is relieved by the force majeure clause in Section 19 due to the occurrence of force majeure events." |
| Fifth Counterclaim: Declaratory Judgment that Agreements I-III Are Voidable for Mutual Mistake | Affirmative Defense No. 23: "The contracts are voidable due to mutual mistake because, among other reasons, both parties mistakenly believed that the polysilicon markets and solar markets would continue to function normally, which excludes the effects of illegal acts of third parties." <br><br> Affirmative Defense No. 24: "The contracts are void due to unilateral mistake." |
| Sixth Counterclaim: Unjust Enrichment | Affirmative Defense No. 5: "Plaintiff would be unjustly enriched if allowed to recover on its complaint." |
| Seventh Counterclaim: Breach of Agreements I-III | Affirmative Defense No. 17: "Plaintiff has not performed its obligations under the Supply Contracts, nor does it intend to perform its obligations, as modified by the agreement of the parties and by their conduct." |

### B. The Court Denies Kyocera's Motion for Judgment on the Pleadings With Respect to the Accelerated Damages Provisions

Soon after Hemlock's motion to dismiss was fully briefed, Kyocera moved for judgment on the pleadings, arguing that the termination clauses in the Agreements are unenforceable. The Court denied that motion "[b]ecause Hemlock is not seeking accelerated damages at this time, and because this Court's jurisdiction extends only to actual cases and controversies." Jan. 6 Order at 34.

### C. The Parties Continue to Seek Discovery Relating to Kyocera's Rejected Legal Theories

At the time the Court issued its January 6 Order, each party had outstanding discovery requests speaking to the legal theories dismissed by the Order. Kyocera's requests (discussed at length in its pending second motion to compel, Dkt. No. 67, and in Hemlock's response, filed concurrently with this cross-motion for a protective order) sought prior testimony from Hemlock witnesses in Hemlock's actions against other customers. Because the Court's January 6 Order had significantly narrowed the case, Hemlock objected to the requests on the ground that the requested testimony was irrelevant. But during a meet and confer, counsel for Kyocera made clear that Kyocera believed it was still entitled to

discovery on issues relating to <u>all</u> of its affirmative defenses—even those identical to Kyocera's now-dismissed counterclaims. Ansbro Decl. ¶¶ 3-4.[2]

The outstanding requests propounded by Hemlock seek production of documents related to Kyocera's rejected China-based theories, to which Kyocera has objected. These requests are no longer relevant in light of the Court's January 6 Order. Therefore, if the Court issues a protective order precluding discovery relating solely to theories rejected by the January 6 Order, Hemlock will withdraw its outstanding requests that speak solely to such theories. If, however, Kyocera is permitted to seek discovery pertaining to its China-based theories, Hemlock will require the same discovery from Kyocera.

### III. THE COURT SHOULD PRECLUDE INQUIRY INTO MATTERS RELATING SOLELY TO THE THEORIES REJECTED IN THE JANUARY 6 ORDER

Under Rule 26(c)(1)(D), "[t]he Court may, for good cause, issue an order . . . limiting the scope of disclosure or discovery . . . ." As this Court has said, "Protective orders issued under Rule 26(c) serve the vital function of securing the just, speedy, and inexpensive determination of civil disputes by encouraging full disclosure of all evidence that might conceivably be relevant, an objective

---

[2] References herein to the "Ansbro Declaration" are to the Declaration of John Ansbro in Support of Hemlock's Cross-Motion for a Protective Order. The "Ansbro Declaration" referred to herein should not be confused with the Declaration of John Ansbro in support of Hemlock's response to Kyocera's second motion to compel.

which represents the cornerstone of our administration of civil justice." Flagg ex rel. Bond v. City of Detroit, 268 F.R.D. 279, 291 (E.D. Mich. 2010). "The decision to grant a protective order is entrusted to the Court's discretion." U.S. S.E.C. v. AA Capital Partners, Inc., No. 06-51049, 2009 WL 3735880, at *1 (E.D. Mich. Nov. 3, 2009) (unpublished) (Ansbro Decl. Ex. 1); see also Doe v. Porter, 370 F.3d 558, 560 (6th Cir. 2004).

"A showing that the proposed discovery is irrelevant can satisfy the 'good cause' requirement of Rule 26(c)." Tribula v. SPX Corp., No. 08-13300, 2009 WL 87269, at *1 (E.D. Mich. Jan. 12, 2009) (unpublished) (Ansbro Decl. Ex. 2); accord Abraham v. Trinity Health Corp., No. 12-14402, 2013 WL 2051160, at *1 (E.D. Mich. May 14, 2013) (unpublished) (Ansbro Decl. Ex. 3) ("Defendant has demonstrated good cause for a protective order based on the irrelevancy of Plaintiff's requests."); Stacy v. H & R Block Tax Servs., Inc., No. 07-13327, 2011 WL 807563, at *2 (E.D. Mich. Mar. 2, 2011) (unpublished) (Ansbro Decl. Ex. 4) (finding "good cause" met where scope of deposition was "not reasonably tailored to matters relevant to this case"). Of course, "if the information is only relevant to a claim that fails as a matter of law, the information is not relevant for Rule 26(b) purposes." JP Morgan Chase Bank, N.A. v. Winget, No. 08-13845, 2012 WL 3133927, at *4 (E.D. Mich. Aug. 1, 2012) (unpublished) (Ansbro Decl. Ex. 5). Therefore, where discovery is sought regarding counterclaims that the Court has

already dismissed, a protective order should issue precluding discovery into those matters. See Field Turf USA, Inc. v. Sports Const. Grp., LLC, No. 06-2624, 2007 WL 4412855, at *8 (N.D. Ohio Dec. 12, 2007) (unpublished) (Ansbro Decl. Ex. 6).

The Court dismissed all seven of Kyocera's counterclaims. Yet Kyocera continues to predicate its discovery requests on the very same theories that the Court rejected. The Court should establish common-sense order in this case by limiting discovery to issues that are actually relevant and within the scope of the parties' straightforward contract dispute. This would save both sides significant time and money. Fact discovery would be streamlined and focused on the real issue here—Kyocera's breach of the Agreements.

Motion practice would also be curtailed. Kyocera has made improper objections to Hemlock's second set of discovery requests. However, many of those requests relate to Kyocera's China-based theories, and if this Court enters a protective order appropriately limiting discovery, Hemlock would withdraw its requests for such documents.

Kyocera maintains that its affirmative defenses still technically remain in the case even if its identical counterclaims have been dismissed. This argument is wrong. Kyocera has never articulated a reason why its defenses are any different, because they are not. Courts routinely strike defenses after dismissing the mirroring counterclaims, often without any separate analysis. See, e.g., Wausau

Underwriters Ins. Co. v. Pronto Staffing Servs., Inc., No. 11-928, 2011 WL 6016284, at *3 (N.D. Ill. Dec. 2, 2011) (unpublished) (Ansbro Decl. Ex. 8) ("Pronto's second affirmative defense of professional negligence mirrors its professional negligence counterclaim. It thus suffers from the same flaws as the counterclaim and is, therefore, stricken."); Herbst v. Ressler & Associates, Inc., No. 13-2327, 2014 WL 4205294, at *10 (E.D. Mo. Aug. 22, 2014) (unpublished) (Ansbro Decl. Ex. 9); Saye v. Old Hill Partners, Inc., 478 F. Supp. 2d 248, 278 (D. Conn. 2007). That this Court declined to do so in the January 6 Order should not change the true scope of this case from a straightforward contract enforcement action into a wide-ranging inquiry into international politics.[3]

---

[3] This Court has the power to strike any insufficient defense—on its own and at any time—under Rule 12(f)(1). Therefore, if the Court believes it is appropriate to strike any of Kyocera's affirmative defenses as a housekeeping matter, it is empowered to do so.

## IV. CONCLUSION

The Court should issue a protective order precluding fact discovery into matters that pertain solely to the theories that the Court rejected in its January 6, 2016 Order.

Dated: February 26, 2016      By: /s/ Alvin Lee

        ORRICK, HERRINGTON & SUTCLIFFE LLP
          J. Peter Coll, Jr.
          John Ansbro
          Alvin Lee
          Thomas N. Kidera
          51 West 52nd Street
          New York, New York 10019
          Telephone: (212) 506-5000
          Facsimile: (212) 506-5151
          pcoll@orrick.com
          jansbro@orrick.com
          alee@orrick.com
          tkidera@orrick.com

        BRAUN, KENDRICK, FINKBEINER, PLC
          Craig W. Horn (P34281)
          4301 Fashion Square Boulevard
          Saginaw, Michigan 48603
          (989) 498-2100
          crahor@BraunKendrick.com

        *Attorneys for Hemlock Semiconductor Corporation*

## CERTIFICATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 26(c)

I hereby certify that, pursuant to Federal Rule of Civil Procedure 26(c), counsel for Hemlock in good faith conferred with counsel for Kyocera in an effort to resolve this dispute without court action.

By: /s/ Alvin Lee

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2016, I electronically filed the foregoing Plaintiff Hemlock Semiconductor Corporation's Memorandum of Law in Support of Its Cross-Motion For a Protective Order with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record.

By:    /s/ Alvin Lee