UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

HEMLOCK SEMICONDUCTOR CORPORATION,

        Plaintiff,                            Case No. 15-cv-11236

v                                                Honorable Thomas L. Ludington

KYOCERA CORPORATION,

        Defendant.

_____/

**ORDER DENYING MOTION FOR CLARIFICATION AND GRANTING IN PART AND DENYING IN PART MOTION FOR LEAVE TO FILE FIRST AMENDED ANSWER**

Plaintiff Hemlock Semiconductor ("Hemlock") and Defendant Kyocera are significant participants in the global solar energy industry. Their immediate dispute arises from a series of contracts for the sale of quantities of industrial-grade polycrystalline silicon by Hemlock to Kyocera. Following changes in global solar market conditions, Kyocera sought to excuse its performance under a force majeure provision in the parties' contracts. In response, Hemlock sought adequate assurances that Kyocera would perform its obligations under the agreements. When Hemlock concluded that Kyocera had not provided adequate assurances that it would perform its contractual commitment, it initiated this suit.

Hemlock filed its initial complaint on April 1, 2015, and filed an amended complaint on April 29, 2015. Kyocera filed its answer together with six counterclaims on July 10, 2015. ECF Nos. 4, 9. On January 6, 2016 the Court granted Hemlock's motions to dismiss Kyocera's counterclaims and strike Kyocera's Japanese antitrust defense. ECF No. 61. Kyocera now brings a motion for leave to file a first amended answer and counterclaims, and a motion for

clarification of the Court's January 6, 2016 order. Kyocera's motion for clarification will be denied, and Kyocera's motion for leave to amend will be granted in part and denied in part.

## I.

The facts as set forth in the Court's January 6, 2016 order are, in relevant part, as follows. Hemlock, Plaintiff in this action, is a Michigan corporation involved in the manufacture and sale of polycrystalline silicon ("polysilicon") and photovoltaic solar cells and modules. ECF No. 4 at ¶¶ 1, 3, 7. The majority of the common stock of Hemlock is owned by Dow Corning Corporation. Shin-Etsu Handotai Co. Ltd. owns a minority interest in Hemlock. *See Joint Venture Partners*, HSCPOLY, http://www.hscpoly.com/content/hsc_comp/ownership.aspx. Kyocera, Defendant in this action, is a Japanese corporation that describes itself as "one of the world's largest vertically-integrated producers and suppliers of solar energy panels." ECF No. 4 at ¶ 8.

### A.

Beginning in 2005, in the face of a worldwide polysilicon shortage, Hemlock and Kyocera entered into four long-term polysilicon supply contracts. The first Long Term Supply Agreement ("Agreement I") is effective from August 30, 2005 to December 31, 2015. The second Long Term Supply Agreement ("Agreement II") is effective from July 21, 2006 to December 31, 2018. The third Long Term Supply Agreement ("Agreement III") is effective from July 18, 2007 to December 31, 2019. Finally, the fourth Long Term Supply Agreement ("Agreement IV") is effective from November 13, 2008 to December 31, 2020. Am. Compl. at ¶¶ 12-13. The agreements require Kyocera to make large initial payments to assist Hemlock's expansion of its existing polysilicon production facilities in the United States.

After the parties entered into the agreements, the global solar industry was affected by the Chinese government's intervention. Specifically, the Chinese government provided subsidies to Chinese solar-based companies and facilitated large-scale "dumping" of Chinese solar panels into the global market in order to increase Chinese market share in the solar industry. In response, in 2012 the United States government imposed anti-subsidy and anti-dumping import tariffs of 24-36 percent on Chinese solar components. These state actions caused the prices of both polysilicon and solar panels to drop precipitously.

In response to the falling market prices, the parties agreed to short-term contract modifications in 2011 and 2012 that lowered the gross price and the advance payment for those years. These modifications did not affect any other contract terms or future pricing schedules. While the short-term price amendments came to an end, the Chinese market saturation and resulting trade war did not. From mid-2014 to early 2015, Kyocera proposed additional price modifications, all of which Hemlock rejected.

**B.**

After failing to reach a modification agreement, Kyocera sent notice to Hemlock in February 2015 that it was exercising a force majeure provision of Agreement IV. Hemlock refused to recognize Kyocera's invocation of any force majeure rights, contending that the force majeure provision in Agreement IV did not excuse Kyocera from performance because of the changing solar-market conditions. Consequently, on February 13, 2015 Kyocera filed suit in Michigan state Court seeking a declaration that its contractual performance could be excused by Agreement IV's force majeure clause.

On June 16, 2015, the Michigan State trial court granted Hemlock's motion for summary disposition, finding that the change in market conditions did not implicate Agreement IV's force

majeure clause. On December 3, 2015, the Michigan Court of Appeals affirmed, explaining that Kyocera had assumed the market risks that gave rise to the alleged liability and that "the plain language of the force majeure clause at issue does not permit relief to plaintiff on the grounds that the market for polysilicon has shifted, regardless of the cause of that shift." *Kyocera Corp. v. Hemlock Semiconductor*, 15-025786-CK *2 (Mich. Ct. App. Dec. 3, 2015), ECF No. 58 Ex. A.

### C.

On February 26, 2015 Hemlock sent Kyocera a demand for adequate assurances that it would perform under Agreements I-III pursuant to MCLA § 440.2609. Compl. ¶ 28. Kyocera sent Hemlock a response on March 26, 2015, arguing that Kyocera had no obligation to provide written assurances to Hemlock and that MCLA § 440.2609 did not apply to the supply agreements. *Id.* at ¶ 29. Hemlock then initiated the instant suit on April 1, 2015 alleging that Kyocera had failed to provide Hemlock with adequate assurances that it would make purchases under the supply agreements in 2015. Am. Compl. ¶ 28.

Two days later, on April 3, 2015, Kyocera filed a complaint against Hemlock in the Civil Division of Tokyo District Court in Japan. The Tokyo complaint alleges that Hemlock violated Japanese antitrust law by abusing a superior position of bargaining power in entering into the supply agreements. That case remains pending.

Then, on October 7, 2015 Hemlock filed suit in Saginaw County circuit court alleging that Kyocera had violated supply agreement IV, seeking a declaratory judgment that supply agreement IV is not unconscionable, and seeking an anti-suit injunction to prevent Kyocera from further prosecuting the Tokyo Action. Kyocera removed that action to this Court on February 3, 2016, and that action also remains pending at this time. *See* Case No. 1:16-cv-10376, ECF No. 1.

After Kyocera filed its answer, together with six counterclaims, Hemlock moved to dismiss Defendant Kyocera's counterclaims. ECF Nos. 9, 21. Hemlock also moved to strike an affirmative defense alleged by Kyocera based on Japanese antitrust law. ECF NO. 22. On January 6, 2016, the Court granted both of Hemlock's motions, dismissed Kyocera's seven counterclaims, and struck Kyocera's Japanese antitrust defense. ECF NO. 61. Kyocera now brings a motion for clarification of that order and a motion for leave to file a first amended answer and counterclaims. ECF Nos. 64, 62.

**II**.

Kyocera's motion for clarification will be addressed first. In the Court's January 6, 2016 order, the Court determined that Kyocera's antitrust defense should be stricken for two reasons:

> [F]irst, because it does not meet the requirements of *Kaiser Steele* and *Kosuga* to be proper for this Court's determination as part of this breach of contract action, and second, because even if Kyocera obtained a final judgment from the Tokyo District court, the Supply Agreements' forum selection provision and choice of law provision would preclude this Court from recognizing the foreign judgment.

ECF No. 61. Kyocera now moves for clarification as to the second reason. Specifically, "Kyocera asks the Court to confirm that it did not intend to prejudice Kyocera's ability to ask the Court to consider a request to enforce a valid Japanese Judgment (and Kyocera's ability to fully address the related issues of comity and choice of law) if such a judgment issues." ECF No. 64, 1. Hemlock opposes Kyocera's motion for clarification, arguing that Kyocera's motion has identified no language that actually needs to be clarified, and that Kyocera merely disagrees with the Court's opinion and analysis. ECF No. 66.

Kyocera's motion will be denied. Kyocera has not identified any unclear language or analysis in the Court's previous opinion.[1] It is not appropriate for this Court to interpret or expound upon its previous opinion unmoored from an actual (as opposed to a hypothetical) dispute.

### III.

Kyocera also moves for leave to file a first amended answer and counterclaims. ECF No. 62. Under Federal Rule of Civil Procedure 15, a court should "freely give leave" to amend "when justice so requires." FED. R. CIV. P. 15(a)(2). "[T]he thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings." *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986) (internal citations and quotations omitted). Factors that courts should consider when determining whether to grant leave to amend include "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment…." *Hageman v. Signal L.P. Gas, Inc.,* 486 F.2d 479, 484 (6th Cir. 1973). "Decisions as to when justice requires amendment are left to the sound discretion of the trial judge[.]" *Robinson v. Michigan Consol. Gas Co. Inc.,* 918 F.2d 579, 591 (6th Cir. 1990).

Plaintiff Hemlock argues that Kyocera's proposed amendments would be futile. "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Riverview Health Inst. LLC v. Med. Mut. of Ohio,* 601 F.3d 505, 512 (6th Cir. 2010) (internal citation and quotation marks omitted). A pleading fails to state a claim under Rule

---

[1] Kyocera's request for leave to file a motion for reconsideration will not be considered. As explained in the Court's practice guidelines, "under no circumstances may a motion be included within the text or footnotes of another motion."

12(b)(6) if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009).

In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert*, 517 F.3d at 439. The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft*, 556 U.S. at 678. In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, (quoting *Twombly*, 550 U.S. at 570).

**A.**

Kyocera first seeks to add additional facts in support of a renewed counterclaim for declaratory judgment of impracticability. As thoroughly explained in this court's previous order:

> The alleged illegal acts of the Chinese government have no bearing on whether Kyocera's performance has become impossible or impracticable. Rather, the alleged illegal acts have simply caused a market shift in pricing, making it unprofitable for Kyocera to continue to perform as promised. Regardless of the cause of the market shift, Kyocera's allegations amount only to claims of "economic unprofitableness," which are insufficient to give rise to claims of impossibility or impracticability. *See Chase,* 217 N.W. at 567.

ECF No. 62, 8. In contrast to Kyocera's assertion, this Court's previous order in response to Hemlock's motion to dismiss was not intended to act as a drafting guide for Kyocera. Instead, upon Hemlock's challenge to the validity of Kyocera's counterclaims, this Court's order was intended to narrow the scope of this action to legally relevant facts and claims. Kyocera's claim that its "solar business would cease to exist if it is forced to attempt to perform under the

Agreements" does not change the analysis. As explained by the Sixth Circuit in *Karl Wendt*, "neither market shifts nor the financial inability of one of the parties changes the basic assumptions of the contract such that it may be excused under the doctrine of impracticability." *Karl Wendt Farm Equipment Co., Inc. v. International Harvester Co.*, 931 F.2d 1112, 1117-18 (6th Cir. 1991). Regardless of the nature or magnitude of the Chinese Government actions, Kyocera's claims amount only to a claim that continued performance is unprofitable. Kyocera's proposed amended impracticability counterclaim would be futile.

**B.**

Kyocera also seeks to renew its counterclaim for a declaratory judgment of frustration of purpose. In its proposed claim, Kyocera seeks to define the primary purpose of the Agreements as providing a stable supply of *usable* polysilicon at a fixed price, in the context of a legally functioning market.

> This Court has already found to the contrary:
>
> The unambiguous primary purpose of the agreements was for Hemlock to provide Kyocera with a stable supply of polysilicon at a predictable price. This is apparent by the preambles of the agreements, which provide, "…Buyer desires to purchase and [Hemlock] agrees to sell Products (herein defined) pursuant to the terms and conditions of this Agreement." *See* ECF No. 1, Exhibit 1 at 1, Exhibit 2 at 1, Exhibit 3 at 1. It is also apparent by the parties' choice to structure their relationship in the form of long-term requirement contracts in order to provide some stability in fluctuating markets.

ECF No. 66, 8-9. This Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft*, 556 U.S. at 678. For these reasons, Kyocera's proposed amendment is futile.

**C.**

Next, Kyocera seeks to renew its counterclaim for breach of contract against Hemlock. In its proposed amendment, Kyocera seeks to add allegations that Hemlock agreed to open and

- 8 -

operate expanded facilities, which it failed to do. This argument was already dismissed by this Court, and is futile.

In Michigan, if "contract language is clear and unambiguous, its meaning is a question of law." *Port Huron Educ. Ass'n v. Port Huron Area Sch. Dist.*, 550 N.W.2d 228, 237 (Mich. 1996). With regard to the expanded manufacturing facility, Supply Agreements ¶ 9 provides: "Buyer acknowledges that [Hemlock] will be expanding its manufacturing facilities… in order to produce the Products to be supplied under this Agreement." Agreements I-III ¶ 9. That paragraph further provides: "Buyer acknowledges the possibility of delays in completing the manufacturing facility and expressly agrees that, so long as production of Product commences by [June 30, 2008/June 30, 2009/June 30, 2010], [Hemlock] SHALL HAVE NO LIABILITY TO BUYER FOR ANY SUCH DELAY." *Id.* (emphasis in originals).

This Court has already dismissed Kyocera's claim that Hemlock breached its agreement to maintain expanded manufacturing facilities. As explained in this Court's previous order:

> [T]here is nothing in the Supply Agreements that supports Kyocera's allegation that Hemlock agreed to maintain expanded manufacturing facilities. At most, the provision could amount to a promise by Hemlock to expand its manufacturing facilities to meet Kyocera's product demands under the Supply Agreements. Accordingly, Kyocera's claim will be dismissed to the extent that it suggests that Hemlock breached the Supply Agreements by failing to maintain expanded facilities.

ECF No. 61. For this same reason, Kyocera's motion for leave to file an amended counterclaim alleging breach of contract will be denied.

Furthermore, Kyocera's has not alleged legally sufficient damages to support this claim, even if it were valid (which it is not). It is undisputed that Kyocera is the party that decided to cease performance under the Supply Agreements. There is no allegation whatsoever that Hemlock was unable to meet Kyocera's demand for Polysilicon. Despite this, Kyocera attempts

to asserts three theories of damages resulting from Hemlock's failure to open and operate expanded facilities: (1) loss of the value of hundreds of millions of dollars in advance payments; (2) losses from the further damage of the polysilicon market by the illegal Chinese government conduct; and (3) injury from Hemlock's refusal to negotiate price. *See* ECF No. 71, 5.

Kyocera's allegation that it was damaged by its loss of advance payments was already dismissed in the Court's previous order based on the clear, unambiguous language of the Supply Agreements:

> Kyocera argues that because it agreed to the advanced payments for the purpose of allowing Hemlock to expand its manufacturing facilities, it has been injured as a result of Hemlock's failure to sufficiently expand its facilities. However, by the very terms of the advanced payment provision, Kyocera agreed "to make a non-refundable, unconditional, irrevocable advance payment" and expressly acknowledged its understanding and agreed that, "once this Agreement is executed, there are no circumstances or occurrences that will require [Hemolock] to refund to [Kyocera] all or any portion of the Advance Payment." Agreements I-III ¶ 2. Nothing in the Supply Agreements suggests that the advanced payments were in consideration for the expanded facilities. Instead, all three contracts are clear that the advanced payments were "non-refundable, unconditional, [and] irrevocable." *Id*. at ¶ 9. The Supply Agreements further explain that the only circumstance or occurrence requiring Hemlock to refund a portion of the advance payment is if, as a result of Hemlock's delay in completing its expanded manufacturing facility, Kyocera suffered loss, damage or injury resulting from (1) Hemlock's delay in delivery or (2) Hemlock's "failure to perform which is due to circumstances beyond its control." *Id*. at ¶ 15. … At the time of the agreements, Kyocera agreed to the non-refundable, unconditional, and irrevocable advanced payments. It cannot now, with the benefit of hindsight, recast the nature of those advanced payments.
>
> Furthermore, Kyocera's advanced payments to Hemlock are to be "applied as a credit against the price of the Products that Buyer is required to purchase under this Agreement at the times and amounts shown [in the schedules]." Accordingly, any damages that Kyocera suffers relating to the advanced payment is a result of its decision to cease performance under the agreed upon terms of the Supply Agreements. If Kyocera continued to perform as promised, then the advance payments would continue to be credited against Kyocera's subsequent purchases.

ECF No. 21, 25-26. Because the Supply Agreements unambiguously state that the advance payments were "non-refundable, unconditional, irrevocable", and because the decision to cease

performance under the Supply Agreements was Kyocera's, Kyocera cannot allege that its failure to recoup those payments is a damage resulting from Hemlock's failure to "operate expanded facilities." *See Port Huron Educ. Ass'n*, 550 N.W.2d at 237.

Kyocera next alleges that it was damaged by Hemlock's failure to maintain expanded facilities in the following way:

> Had Hemlock expanded its facilities as promised, the Chinese Government would not have been able to gain as much control as it now has over the market through its illegal conduct because there would have been on additional private actor, with significant production capacity, affecting the market through legal conduct.

ECF No. 62, 18.

Under Michigan law, a party asserting breach of contract "may recover only those damages that are the direct, natural, and proximate result of the breach." *Alan Custom Homes, Inc. v. Krol,* 667 N.W.2d 379, 383 (Mich.Ct. App. 2003) (internal quotations and citation omitted). Thus, in contrast, the damages "must not be conjectural or speculative in their nature, or dependent upon the chances of business or other contingencies...." *McEwen v. McKinnon*, 11 N.W. 828 (Mich. 1882). *See also Doe v. Henry Ford Health Sys*., 865 N.W.2d 915, 922 (Mich. Ct. App. 2014) *appeal denied*, 498 Mich. 879, 868 N.W.2d 912 (2015).

Kyocera's alleged damages are conjectural and speculative, and entirely dependent on other business contingencies. The allegations amount to post-hoc assumptions about the way that a third party actor, the Chinese Government, may have acted in response to Hemlock's operation of expanded facilities, and ignores countless business contingencies that could have otherwise affected Hemlock's supply or output (such as reluctant purchasers). The alleged damages are therefore not "the direct, natural, and proximate result of the breach." *Alan Custom Homes,* 667 N.W.2d at 383. The damage allegation is therefore futile.

Kyocera's third and final damage theory fails for a similar reason. Kyocera alleges that, "[h]ad Hemlock opened and operated expanded facilities, by necessity it would have needed to sell the new supply of polysilicon and would have needed to compromise with its customers." This argument is rife with speculation. Not only does it assume that Hemlock would have needed to sell the hypothetical new supply, it also assumes that Hemlock would have been required to negotiate prices. More fatally, it assumes that Hemlock would have had to negotiate prices *with Kyocera* as opposed to with its multiple other customers. Because this damage theory is entirely conjectural and speculative, it is futile.

### D.

Finally, Kyocera seeks leave to amend its answer in order to add events that happened after the date of the original pleading. Under Federal Rule of Civil Procedure 15(d), "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Kyocera seeks to add an allegation that Hemlock sold the Clarksville site to Google. It also seeks to add an allegation that Hemlock issued shortfall notice to Kyocera demanding payment for polysilicon not ordered by Kyocera in 2015. Kyocera claims that these factual allegations "are relevant to Kyocera's affirmative defenses that remain at issue following the Order, in addition to Kyocera's amended counterclaims." Because these factual allegations may be relevant to outstanding claims or defenses in this matter, Kyocera will be granted leave to amend its pleading pursuant to Rule 15(d).

### IV.

Accordingly, it is **ORDERED** that Kyocera's motion for clarification, ECF No. 64, is **DENIED**.

It is further **ORDERED** that Kyocera's motion for leave to file a first amended answer and counterclaims, ECF No. 62, is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Kyocera is **GRANTED LEAVE** to amend its answer to add the proposed factual allegations concerning events that happened after the date of Kyocera's original answer pursuant to Rule 16(d).

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: March 1, 2016

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 1, 2016.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager