# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

HEMLOCK SEMICONDUCTOR
CORPORATION, *et al.*,

                    Plaintiffs,

        v.

KYOCERA CORPORATION,

                    Defendant.

Case No. 15-CV-11236 (TLL) (PTM)

Honorable Thomas L. Ludington

---

KYOCERA CORPORATION

                    Counterclaimant,

        v.

HEMLOCK SEMICONDUCTOR
CORPORATION, *et al.*,

                    Counterdefendants.

# KYOCERA CORPORATION'S MEMORANDUM OF
# LAW IN OPPOSITION TO HEMLOCK'S MOTION TO
# <u>MODIFY THE PROTECTIVE ORDER</u>

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................1

II.     RELEVANT FACTS ..............................................................................2

      A.     Hemlock Files This Action, and Kyocera Files in Tokyo
            District Court. ..................................................................................2

      B.     The Parties Stipulate to, and the Court Enters, a Protective
            Order. ...............................................................................................3

      C.     Hemlock Refuses to Participate Meaningfully in Discovery. ...............4

      D.     Hemlock Has Used the Clause It Now Attacks to Keep
            Relevant Discovery from Kyocera. .......................................................6

      E.     Hemlock Asks to Modify the Protective Order But Does Not
            File a Motion. ..................................................................................8

III.    ARGUMENT ..........................................................................................9

      A.     Hemlock Fails to Show that It Has Good Cause, or Even a
            "Minimal Need," to Belatedly Modify the Protective Order to
            Which It Agreed. ...............................................................................9

            1.     Hemlock Has Not Demonstrated that It Has Any Need
                  for Modification of the Protective Order. ...............................11

            2.     Any Need to Use Discovery Materials in Japan Was
                  Entirely Foreseeable at the Time Hemlock Agreed to the
                  Protective Order. ..................................................................13

            3.     Kyocera Has Relied on the Terms of the Protective Order
                  as Written. ..........................................................................14

            4.     Hemlock's Request for Modification Is Vague and
                  Overbroad. ...........................................................................17

      B.     The Cases Hemlock Cites in Support of Its Motion to Modify
            Are Inapposite. ...............................................................................18

      C.     The Factors Courts Consider When Evaluating a Request Under
            28 U.S.C. § 1782 Are Relevant and Weigh Against Modifying
            the Protective Order .........................................................................21

IV.     CONCLUSION .....................................................................................24

i

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Advanced Micro Devices, Inc. v. Intel Corp.*,
  2004 WL 2282320 (N.D. Cal. Oct. 4, 2004) ....................................................22

*Aetna Inc. v. Blue Cross Blue Shield of Mich.*,
  2015 WL 1499002 (E.D. Mich. Mar. 31, 2015)................................................19

*In re "Agent Orange" Prod. Liability Litig.*,
  104 F.R.D. 559 (E.D.N.Y. 1985).....................................................................20

*In re Air Crash Disaster at Detroit Metropolitan Airport on Aug. 16,
  1987*, 130 F.R.D. 634 (E.D. Mich. 1989) ..........................................................17

*In re Application of Sumar*,
  123 F.R.D. 467 (S.D.N.Y. 1988) ......................................................................24

*Bayer AG & Miles, Inc. v. Barr Labs., Inc.*,
  162 F.R.D. 456 (S.D.N.Y. 1995) .....................................................10, 13, 14, 16

*City of Hartford v. Chase*,
  942 F.2d 130 (2d. Cir. 1991) ......................................................................15, 16

*In re Hallmark Capital Corp.*,
  534 F. Supp. 2d 951 (D. Minn. 2007)................................................................24

*Infineon Techs. AG v. Green Power Techs. Ltd.*,
  247 F.R.D. 1 (D.D.C. 2005)................................................................. 10, passim

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004)....................................................................................21, 22

*INVISTA N. Am. S.a.r.l v. M & G USA Corp.*,
  2013 WL 1867345 (D. Del. Mar. 28, 2013) .........................................17, 20, 21

*In re Jenoptik AG*,
  109 F.3d 721 (Fed. Cir. 1997) ..........................................................................20

*Jochims v. Isuzu Motors Ltd.*,
  145 F.R.D. 499 (S.D. Iowa 1992)......................................................................13

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Kerasotes Mich. Theatres, Inc. v. Nat'l Amusements, Inc.*,
    139 F.R.D. 102 (E.D. Mich. 1991) ............................................................19, 20

*In re Knoxville News Sentinel Co.*,
    723 F.2d 470 (6th Cir. 1983) .............................................................................19

*In re Kolon Industries Inc.*,
    No. 09-00058, Dkt. No. 1163 (E.D. Va June 1, 2011) .......................................21

*Martindell v. Int'l Tel. & Tel. Corp.*,
    594 F.2d 291 (2d Cir. 1979). ............................................................................15

*Meyer Goldberg, Inc. of Lorain v. Fisher Foods, Inc.*,
    823 F.2d 159 (6th Cir. 1987) ....................................................................passim

*MSC.software Corp. v. Altair Eng'g, Inc.*,
    2008 WL 2478313 (E.D. Mich. June 17, 2008) ..................................................9

*Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.*,
    234 F.R.D. 175 (N.D. Ill. 2006).........................................................................10

*Omega Homes, Inc. v. Citicorp. Acceptance Co.*,
    656 F. Supp. 393 (W.D. Va. 1987).....................................................................16

*Oracle Corp. v. SAP AG*,
    2010 WL 545842 (N.D. Cal. Feb. 12, 2010) .....................................................20

*Peterson v. Wright Med. Tech., Inc.*,
    2013 WL 655527 (C.D. Ill. Feb. 21, 2013) ................................................17, 18

*In re Posco*,
    794 F.3d 1372 (Fed. Cir. 2015) ........................................................................21

*Robb v. Ishee*,
    2008 WL 440440 (S.D. Ohio Feb. 13, 2008) ....................................................19

*In re Se. Milk Antitrust Litig.*,
    666 F. Supp. 2d 908 (E.D. Tenn. 2009)............................................................10

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*SEC v. TheStreet.Com*,
273 F.3d 222 (2d Cir. 2001) ........................................................................10, 15

*United Nuclear Corp. v. Cranford Ins. Co.*,
905 F.2d 1424 (10th Cir. 1990) ..........................................................................18

*United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.*,
2004 WL 2009414 (D.D.C. May 17, 2004)..................................................14, 18

*Viskase Corp. v. W.R. Grace & Co.-Conn.*,
1992 WL 13679 (N.D. Ill. Jan. 24, 1992)..........................................................13

*Waite, Schneider, Bayless & Chesley Co. L.P.A. v. Davis*,
2012 WL 3600106 (S.D. Ohio Aug. 21, 2012) ..................................................10

FEDERAL STATUTES

28 U.S.C. § 1782.....................................................................................................21

FEDERAL RULES

Fed. R. Civ. P. 26(c)........................................................................................10, 15

OTHER AUTHORITIES

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 11.432 (2004) .............................9

## I.   __INTRODUCTION__

The protective order in this case limits use of confidential materials to this litigation.  Hemlock agreed to this limitation at a time when it was fully aware of the separate litigation between Hemlock and Kyocera in Japan.  Restricting the use of confidential materials produced in the U.S. action *to* the U.S. action is appropriate because the procedures for discovery under Japanese law are far narrower than the discovery permitted under U.S. law.  Hemlock apparently recognizes this fact, because it has not asked the Japanese Court for the discovery at issue here.  Instead, by asking this Court to change the protective order, Hemlock is seeking to use U.S. discovery procedures to make an end run around Japanese procedures.

Hemlock's request to modify the protective order satisfies none of the factors that courts regularly consider in determining such requests.  Hemlock agreed to the protective order even though it knew the Japanese litigation was underway.  Hemlock fails to explain why modification is necessary or why it has not sought discovery of the documents in the Japanese action, let alone identify particular documents for which modification is required.  Kyocera has relied on the protective order.  And the requested modification is substantially overbroad.  These considerations have repeatedly led courts to reject requests to modify protective orders.

By its Motion, Hemlock asks this Court to give it an unfair advantage. Hemlock itself has resisted even the most basic discovery; for example, it has refused to produce deposition transcripts of employees who were deposed in the related Deutsche Solar and Green Energy Technology matters, it has withheld documents about the negotiation of the contracts at issue, and it has relied on the exact clause it challenges here to deny Kyocera access to documents that Hemlock produced in related litigation. At the same time, Hemlock waited months before bringing this last-minute, expedited Motion to Modify the Protective Order in this case to allow it to use documents obtained here in the Japanese litigation. The Court should reject Hemlock's belated Motion to Modify the Protective Order.

## II.   RELEVANT FACTS

### A.   Hemlock Files This Action, and Kyocera Files in Tokyo District Court.

On April 1, 2015, Hemlock sued Kyocera in this Court alleging anticipatory breach of three of the four supply agreements between the parties ("Agreements I-III"). (Dkt. No. 1.) Two days later, on April 3, Kyocera sued Hemlock in Tokyo District Court for violating Japanese antitrust law. (Declaration of John Tierney ("Tierney Decl."), Dkt. No. 92-2 ¶ 3.) That same day, the General Manager of Kyocera's Legal Division sent an email to one of Hemlock's senior executives and its in-house counsel stating that "Kyocera has filed a complaint regarding Hemlock's violation of Japanese antitrust law before Tokyo district court," and

attaching a copy of the complaint. (Declaration of Christian G. Andreu-von Euw ("AvE Decl.") ¶ 1, Exs. A, B.)

Just a few weeks later, on April 29, 2015, Hemlock amended its complaint in this Court to allege that Kyocera had filed the Tokyo District Court action and to add a claim for an anti-suit injunction (which Hemlock has since dropped). (Dkt. No. 4 ¶¶ 72-82.) Hemlock attached a certified English translation of the Tokyo complaint as an exhibit to that amended complaint. (*Id.*, Ex. 1.) Kyocera formally served Hemlock with the Tokyo District Court action on June 27, 2015.[1]

### B.   The Parties Stipulate to, and the Court Enters, a Protective Order.

After all of that had taken place, the parties agreed on the protective order at issue in this Motion. Specifically, on July 13, 2015, Kyocera's counsel sent an email seeking Hemlock's agreement to a proposed protective order that Hemlock authored in the related Deutsche Solar suit. (AvE Decl. ¶¶ 3, 23, Ex. C.)

Like the protective order Hemlock signed in its prior lawsuits, the proposed protective order included a paragraph providing that any information marked as confidential and produced in discovery "shall be utilized by the Receiving party and its counsel *only for purposes of this litigation* and for no other purposes." (*Id.*

---

[1] Also on June 27, 2015, Kyocera served Hemlock with an English translation of Kyocera's first brief regarding jurisdiction in the Tokyo District Court, filed April 30, 2015. This brief argued that the supply agreements' exclusive jurisdiction clauses were the result of Hemlock's abuse of its superior bargaining position.

¶ 4, Ex. D; *see also* Dkt. No. 20 ("Protective Order") ¶ 6 (emphasis added).)  This clause is found in the protective orders Hemlock signed in its other customer lawsuits.  (*Compare* AvE Decl. Exs. M, N, *with* Dkt. No 20.)

Hemlock agreed to the proposed order without suggesting any changes, and the parties submitted it to the Court on July 22, 2015.  (AvE Decl. ¶ 3, Ex. C; Dkt. No. 20.)  This Court signed and entered the Stipulated Protective Order—including the provision barring the parties from using confidential discovery information other than in the U.S. litigation—on July 29, 2015.  (Dkt. No. 20.)

### C. <u>Hemlock Refuses to Participate Meaningfully in Discovery.</u>

On July 23, 2015, Kyocera served requests for production of documents on Hemlock.  (AvE Decl. ¶ 5, Ex. E.)  Hemlock refused to timely produce documents.  (*Id.* ¶ 6, Ex. F.)  Hemlock still had not produced any documents on September 4, 2015, when it served its own set of document requests on Kyocera.  (*Id.* ¶ 13, Ex. H.)  Nonetheless, Kyocera timely produced responsive documents on October 8, 2015.  (*Id.* ¶ 14, Ex. I.)  Kyocera's document production included correspondence the parties exchanged while negotiating the polysilicon supply agreements at issue in this litigation and in the litigation in Japan—including the two documents that Hemlock apparently now wants to use in the Tokyo action.  (*Id.* ¶ 16; *see* Brief in Support of Motion to Modify Protective Order (hereinafter, "Mot."), Dkt. No. 92-1, 7-8 & Exs. J, K.)

It was not until more than a month later, on November 13, 2015, that Hemlock finally produced its first set of documents.  (*See* AvE Decl. ¶ 7.)  That first production consisted of 208 documents Hemlock had previously produced to Deutsche Solar in its related litigation against Deutsche Solar.  (*Id.* ¶ 8.)  Those 208 documents comprise less than 2% of the documents Hemlock produced to Deutsche Solar, despite the fact that Kyocera asked Hemlock for all documents produced in that related suit.  (*Id.*; *see also id.* Ex. E, RFP No. 9.)

Hemlock's present assertion that it "has now produced more documents than Kyocera," (Mot. at 8), is misleading, as the reality is that most of Hemlock's production has consisted of documents that have little to do with the parties' claims or defenses.  For example, the majority of the documents Hemlock produced after November 13 were purchase orders, invoices, and other documents related to routine shipments containing evidence that was not contested by the parties and has little, if any, relevance to any claims and defenses.  (AvE Decl. ¶ 9.)

Notably absent from Hemlock's production are documents pertaining to the negotiations of the supply agreements at issue in this litigation.  For example, Hemlock produced over 80 meeting minute documents and similar internal documents pertaining to meetings between Hemlock and Kyocera describing negotiations from Hemlock's point of view, but those documents described efforts to **_re_**negotiate the contracts after the polysilicon market plummeted, and efforts to

manage the Hemlock/Kyocera relationship after the agreements were signed.  (*See* AvE Decl. ¶ 10.)  None of these 80 documents describe the original negotiations that led to any of the agreements at issue, and Kyocera's counsel has been unable to locate in Hemlock's production internal documents describing those negotiations.  (*Id*.)  Similarly, less than 5% of the emails Hemlock produced are from the four-year time period when the parties were negotiating the supply agreements at issue, and none of those emails evidence Hemlock's internal discussions about those negotiations.  (*Id.* ¶ 11.)

Kyocera did, of course, produce documents showing its own internal deliberations during those negotiations.  (*See id.* ¶ 12.)  They are among the very documents that Hemlock now apparently seeks permission to use in Tokyo.  (*See* Tierney Decl. ¶¶ 10, 14.)

### D.    Hemlock Has Used the Clause It Now Attacks to Keep Relevant Discovery from Kyocera.

Not only did Hemlock refuse to produce relevant documents, but it also used the very clause in the protective order it now seeks to change to block Kyocera from obtaining relevant documents from willing third parties in related litigation about near-identical supply agreements.  On July 24, 2015, Kyocera served subpoenas on Deutsche Solar and Green Energy Technology ("GET") seeking documents that had been produced during discovery in those companies' ongoing lawsuits against Hemlock.  (Dkt. Nos. 24-3, 24-4, 24-5, 24-6.)  Hemlock moved to

quash the subpoenas.  (Dkt. No. 24.)  Hemlock argued that Deutsche Solar and

GET could not produce the documents because Kyocera's request was a "attempt

to short-circuit the proper discovery process" in this case.  (*Id.* at 6.)  Hemlock

explained that the protective orders covering the Deutsche Solar and GET

documents state that "Confidential Information and Highly Confidential

Information shall be utilized <u>only</u> for purposes of this litigation <u>and for no other</u>

<u>purposes</u>"  (*Id.* (emphasis added by Hemlock).)

Hemlock took the position that "[w]hether those documents are relevant to

*this case* and therefore properly subject to discovery should be decided after

*Hemlock* reviews the requests for production, makes any necessary objections,

meets and confers with the Defendant, and the parties engage in motion practice,

should that be necessary—the Rule 34 procedure which Kyocera now seeks to

avoid."  (*Id.* (emphasis added).)  The Court granted the motion to quash, and

instructed Kyocera to use the discovery process in this case to obtain the material

directly from Hemlock in this case.  (Dkt. No. 61, at 36.)

Hemlock, however, refused to produce those documents, including

deposition transcripts of Hemlock witnesses, to Kyocera.  On February 9, 2016,

Kyocera filed a motion to compel seeking deposition transcripts from Hemlock's

litigation with Deustche Solar and GET associated with witnesses that may testify

in this case.  (Dkt. No. 67.)  The motion is currently pending.

### E.    **Hemlock Asks to Modify the Protective Order But Does Not File a Motion.**

On November 13, 2015, Hemlock approached Kyocera about modifying the protective order to allow Hemlock to use in the Tokyo action documents produced by Kyocera and marked "confidential" in the U.S. litigation. (*See* Mot., Ex. G.) On November 25, 2015, Kyocera declined to consent to modifying the protective order for that purpose.[2] (*Id.*, Ex. I.) Hemlock did not move to modify the protective order at that time.

More than four months later, on March 23, 2016, Hemlock again asked Kyocera to consent to modify the protective order. (*Id.*, Ex. L.) Kyocera responded on March 30 that it would not agree to the modification. (*Id.*, Ex. M.) Kyocera explained in its response that Hemlock had agreed to the protective order limiting use of confidential documents to the U.S. proceeding months *after* Hemlock learned of the action in Japan.

Two days later, on Friday, April 1, 2016, Hemlock told Kyocera that given its "time constraints in Japan," it would move to modify the protective order "on Monday, or Tuesday at the latest." (AvE ¶ 18, Ex. L.) Hemlock in fact filed its Motion to Modify the Protective Order a week later, but asked the Court to

---

[2] Hemlock implies that Kyocera agreed to modify the protective order and changed its mind. In reality, Kyocera's counsel told Hemlock that he could not provide a definitive answer until speaking with Kyocera, and Kyocera did not agree. (Mot., Ex. I.)

expedite the briefing schedule and shorten Kyocera's time to respond by a week.

(Dkt. Nos. 91, 92.)  The Court granted Hemlock's Motion to Expedite with

modifications, setting Kyocera's deadline to respond for Friday, April 22, 2016.

(Dkt. No. 93.)

Through all this time, Hemlock has never asked the Tokyo District Court to

order Kyocera to produce documents.  (AvE Decl. ¶ 19.)  This is in spite of the fact

that, as Hemlock acknowledges, Japanese procedure provides a mechanism for

Hemlock to do so.  (Tierney Decl. ¶ 15.)

## III.   ARGUMENT

### A.   Hemlock Fails to Show that It Has Good Cause, or Even a "Minimal Need," to Belatedly Modify the Protective Order to Which It Agreed.

The central consideration governing a motion to modify a protective order is

the need to "balance the potential harm to the party seeking protection against the

requesting party's need for the information."  MANUAL FOR COMPLEX LITIGATION

(FOURTH) § 11.432 (2004); *MSC.software Corp. v. Altair Eng'g, Inc.*, 2008 WL

2478313, at *1 (E.D. Mich. June 17, 2008).  In considering this balance, courts

look to a number factors, including: (1) the requesting party's need for the

modification;[3] (2) whether the need for the disclosure sought was foreseeable when

---

[3] Hemlock asserts that the Sixth Circuit does not require a showing of "good cause" in order to grant a request to modify a protective order.  (Mot. at 9-10 & n.9.)  But courts within the Sixth Circuit have applied a good cause standard to

(Footnote continues on next page.)

the parties first entered into the protective order; (3) whether the party opposing

modification relied on the protective order; and (4) whether the requested

modification is broad or confined to specifically relevant information. *See, e.g.*,

*Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 179 (N.D. Ill. 2006);

*Infineon Techs. AG v. Green Power Techs. Ltd.*, 247 F.R.D. 1, 2 (D.D.C. 2005);

*Bayer AG & Miles, Inc. v. Barr Labs., Inc.*, 162 F.R.D. 456, 464-67 (S.D.N.Y.

1995), *disagreed with on other grounds by SEC v. TheStreet.Com*, 273 F.3d 222,

229 n.7 (2d Cir. 2001).  Applying these factors demonstrates that the balance

between protection and disclosure weighs against modifying the protective order to

accommodate Hemlock's last-minute request to use confidential discovery

obtained in the U.S. litigation in Japan.

---

(Footnote continued from previous page.)

such requests.  *See, e.g.*, *Waite, Schneider, Bayless & Chesley Co. L.P.A. v. Davis*, 2012 WL 3600106, at *5 (S.D. Ohio Aug. 21, 2012) ("[A] protective order is always subject to modification or termination for good cause . . . ." (internal quotation marks omitted)); *In re Se. Milk Antitrust Litig.*, 666 F. Supp. 2d 908, 914 (E.D. Tenn. 2009) (same).  The cases Hemlock cites to support its claim that the standard for modification requires only that the requesting party show that it has a "minimal" need for the modification are materially distinguishable from the instant case, *see infra* III.B.  Regardless, whether the standard is described as good cause—which is the same standard for entering a protective order in the first place, Fed. R. Civ. P. 26(c)—or minimal need, Hemlock does not dispute that a party must have some legitimate reason for seeking a modification.  Under the circumstances here, Hemlock does not.

### 1.   Hemlock Has Not Demonstrated that It Has Any Need for Modification of the Protective Order.

Hemlock asserts that it needs to submit to the Tokyo District Court documents produced and designated as confidential in the U.S. litigation in order to rebut Kyocera's claim of Japanese jurisdiction. (Mot. at 1-2.) But even at this late date, Hemlock fails to identify a single document that it would like to submit to the Tokyo District Court that it is prevented from submitting by the terms of the protective order.

Hemlock's brief in support of modification identifies five specific documents it believes are relevant to the question of jurisdiction in Japan. (Tierney Decl. ¶¶ 8-11.) Of these, three have already been submitted to the Tokyo District Court, while the remaining two are emails that Kyocera sent *to Hemlock* in the ordinary course of business.[4] (*Id.*) Hemlock does not say whether it possesses

---

[4] The three documents submitted to the Tokyo District Court were submitted under seal. (Tierney Decl. ¶ 7; AvE. Decl. ¶ 20.) As such, only the Tokyo Court, Hemlock, and Kyocera have access to those documents and their contents. Hemlock's Motion to Modify and the accompanying Tierney Declaration, both of which were publicly filed without redactions, nevertheless describe the content of these three documents in detail. (Mot. at 7-8; Tierney Decl. ¶¶ 8-9, 11.) Similarly, although Hemlock afforded Kyocera the opportunity to move to file Exhibits J and K to its Motion under seal—which Kyocera did on April 18, 2016 (Dkt. No. 95)— Hemlock's Motion and the Tierney Declaration publicly describe the contents of these exhibits as well. In describing these sealed and confidential materials, Hemlock has violated both the spirit and the letter of the Tokyo District Court's sealing procedures and the protective order. (Protective Order ¶ 12(a) (providing that "any pleading, brief or memorandum which reproduces, *paraphrases or*

(Footnote continues on next page.)

these two emails independently of Kyocera's production (and, if not, why not).  By its plain terms, the protective order does not restrict a party's use of its own documents obtained independently of the litigation.  (Protective Order ¶ 21 ("This Stipulation has no effect upon, and shall not apply to, the parties' use of their own Discovery Material for any purpose.  Nothing herein shall impose any restrictions on the use or disclosure by a party of documents, materials, or information designated as Confidential that has been obtained lawfully by such party independently of the proceedings in this Litigation.").)

Hemlock's Motion is otherwise silent as to which documents it might wish to submit to the Tokyo District Court.  Given Hemlock's failure to show any need for relief as to the handful of documents it identifies and its failure to identify any additional documents that it wishes to use in Japan, the Motion provides no basis to modify the protective order as to any document, let alone to modify the order to permit use in the Japan litigation of any and all documents designated as confidential in this litigation.

---

(Footnote continued from previous page.)

*discloses* Confidential Information shall provide all other parties with seven days' written notice of its intent to file such material with the Court . . . .  The Confidential Information *shall not be filed until the Court renders a decision on the motion to seal*" (emphasis added.).)

### 2. Any Need to Use Discovery Materials in Japan Was Entirely Foreseeable at the Time Hemlock Agreed to the Protective Order.

Foreseeability is a significant factor that informs whether a court should grant modification of a protective order. Courts have regularly rejected requests to modify protective orders when a party fails to negotiate for a provision to address an issue that was reasonably foreseeable at the time of the negotiation. *See Jochims v. Isuzu Motors Ltd.*, 145 F.R.D. 499, 502 (S.D. Iowa 1992) ("Not surprisingly, a party's oversight in not negotiating a provision in a protective order concerning a matter which should have been reasonably foreseeable at the time of the agreement has been held to not constitute good cause for relief from the protective order."); *see also Bayer*, 162 F.R.D. at 466-67 (rejecting request to modify protective order where need for individual's access to protected documents was foreseeable at the time the parties negotiated the protective order); *Viskase Corp. v. W.R. Grace & Co.-Conn.*, 1992 WL 13679, at *4 (N.D. Ill. Jan. 24, 1992) (same).

Here, Hemlock was aware of the Tokyo proceedings more than three months before it agreed to the protective order that expressly limited the use of discovery materials to the U.S. litigation. Moreover, Hemlock has been specifically aware of the jurisdictional issues in Japan since June 27, 2015, at the latest. Hemlock provides no explanation for its failure to raise this highly foreseeable issue at the

13

time it agreed to the protective order. The current Motion should be denied on this basis alone.

### 3. Kyocera Has Relied on the Terms of the Protective Order as Written.

A party's reliance on a protective order is another significant factor that militates against modification. *See, e.g.*, *Meyer Goldberg, Inc. of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159, 163 (6th Cir. 1987); *Infineon*, 247 F.R.D. at 2; *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.*, 2004 WL 2009414, at *4 (D.D.C. May 17, 2004). Here, Kyocera has promptly produced documents broadly construed as responsive to Hemlock's requests with very limited objections based on relevance or burden. Kyocera was able to do so because of the protections afforded by the negotiated protective order. Had the protective order not been in place, Kyocera's production process would have been considerably slower and more burdensome for both parties. *Accord Bayer*, 162 F.R.D. at 467 (denying request to modify protective order, in part, because party opposing modification had produced voluminous discovery with "only limited objections to the relevance and burden of the requests" based on the assurances provided by the protective order).

Hemlock's argument that Kyocera's assertion that it relied on the protective order amounts to an admission that Kyocera would not have complied with its legal obligations regarding discovery absent the protective order is baseless. The

14

purpose of a protective order is to encourage an expeditious, cooperative discovery process by allowing the parties to exchange information without risking exposure of that information in other settings.  *See TheStreet.Com*, 273 F.3d at 229 ("[P]rotective orders issued under Rule 26(c) serve 'the vital function . . . of secur[ing] the just, speedy, and inexpensive determination of civil disputes . . . by encouraging full disclosure of all evidence that might conceivably be relevant. This objective represents the cornerstone of our administration of civil justice.' . . . Without an ability to restrict public dissemination of certain discovery materials that are never introduced at trial, litigants would be subject to needless 'annoyance, embarrassment, oppression, or undue burden or expense.'" (citing *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 295 (2d Cir. 1979), and Fed. R. Civ. P. 26(c))).  Protective orders work precisely because they enable the parties to forego meritorious, but time-consuming and burdensome, legal objections to disclosure and onerous document review.  Parties do not "rely" on protective orders as a prerequisite to complying with the law; they rely on them as a means to promote efficiency.

The case law bears this out, demonstrating that parties routinely rely on protective orders to expedite discovery, reduce the burden on the parties and the court created by serial discovery disputes, and encourage settlement.  *See, e.g.*, *City of Hartford v. Chase*, 942 F.2d 130, 136 (2d. Cir. 1991) (finding that "a

judicial assurance of confidentiality was a prerequisite to the parties' decision to settle their dispute"); *Bayer*, 162 F.R.D. at 467 (finding plaintiff had relied on protective order based on representation that, "[i]n order to expedite the case, [plaintiff] made only limited objections to the relevance and burden of the requests. With the agreed protective order, the need to scrutinize every scientific document delivered in the production and consult on its importance was significantly reduced."); *accord Omega Homes, Inc. v. Citicorp. Acceptance Co.*, 656 F. Supp. 393, 404 (W.D. Va. 1987) (recognizing that modifying protective order would allow plaintiff to "induc[e] broad disclosure under a set of ground rules" and then change rules to "avoid[] any limitations on itself"). Such is the case here as well.

Throughout the discovery process, Kyocera has further relied on this Court's authority to enforce the protective order. In other words, this Court's ability to enforce the protective order has assured Kyocera that confidential information may be disclosed in discovery without the risk that such information will be used outside the bounds of the protective order. But Hemlock's Japanese counsel is not subject to this Court's jurisdiction, and this Court will have no ability to enforce the protective order should Hemlock's Japanese counsel violate it. Thus, despite Hemlock's assertions to the contrary, (Mot. at 10-11), the protective order cannot be modified to allow Hemlock's Japanese counsel access to Kyocera's confidential

information without risking harm to Kyocera's "legitimate secrecy interests."
*Meyer Goldberg*, 823 F.2d at 163 (internal quotation marks omitted).

### 4.    Hemlock's Request for Modification Is Vague and Overbroad.

The fact that Hemlock is seeking a sweeping modification to allow it to use in Japan all discovery obtained in this case also weighs against Hemlock.  Contrary to Hemlock's assertion that "courts across the country have ***unanimously*** granted cross-use of U.S. discovery materials in related litigation abroad" (Mot. at 13 (original emphasis)), courts routinely reject overbroad and undifferentiated requests like Hemlock's, and have generally required parties to tailor their requests and explain why those documents are relevant and important to the requesting party.  *See In re Air Crash Disaster at Detroit Metropolitan Airport on Aug. 16, 1987*, 130 F.R.D. 634, 637 (E.D. Mich. 1989) (denying modification, in part, because party seeking modification "failed to present those particularized proofs that are requisite to a modification of either protective order at issue"); *see also INVISTA N. Am. S.a.r.l v. M & G USA Corp.*, 2013 WL 1867345, at *2 (D. Del. Mar. 28, 2013) (modification permissible where "the persons to whom such access [to confidential documents] would be provided are limited," and the number of documents the party sought to submit to the foreign court was small); *Peterson v. Wright Med. Tech., Inc.*, 2013 WL 655527, at *6 (C.D. Ill. Feb. 21, 2013)

(distinguishing plaintiff's request for documents from overbroad request in another case).

The requested modification here falls squarely on the vague and overbroad end of the spectrum. Hemlock seeks permission to allow it to use in the Japanese proceedings any document produced and designated as confidential in the U.S. litigation, (Mot. at 1), without limiting this request to any specific documents or topics. This sweeping request should be denied.

### B. The Cases Hemlock Cites in Support of Its Motion to Modify Are Inapposite.

The decision to modify a protective order is discretionary and case specific. *E.g.*, *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990); *Pogue*, 2004 WL 2009414, at *2. Hemlock identifies no case in which a court has modified a protective order to allow broad disclosure of confidential materials when the party seeking the modification agreed to the order with full knowledge that materials covered by the protective order could be relevant to an ongoing foreign proceeding. Instead, Hemlock cites cases involving materially different factual situations.

In *Meyer Goldberg*, for instance, the party seeking to protect the information had previously filed the information with the court, albeit under seal. 823 F.2d at 160. The Sixth Circuit found that this reduced the justification for keeping the information confidential in light of the "'long-established [U.S.] legal tradition,'

which recognizes 'the presumptive right of the public'" to access judicial records, including sealed records. *Id.* at 163 (quoting *In re Knoxville News Sentinel Co.*, 723 F.2d 470, 473-74 (6th Cir. 1983)). Moreover, the *Meyer Goldberg* court expressed skepticism that the information had been properly sealed in the first instance. *Id.* ("The record in this case nowhere reflects a confidentiality relied upon by any party now before the court, nor does it explain exactly on what basis confidentiality was properly claimed to suppress potential antitrust conduct and information from public knowledge or from a party seeking to utilize this information in a related type of private antitrust action."). No similar factors are present here.

In many other cases Hemlock cites, the party seeking to modify the protective order either was a third party that never agreed to the order in the first place, or was seeking modification in light of changed circumstances arising after the protective order was in place. *See Aetna Inc. v. Blue Cross Blue Shield of Mich.*, 2015 WL 1499002, at *1 (E.D. Mich. Mar. 31, 2015) (modification sought based on discovery of allegedly illegal provisions in contracts obtained in discovery); *Robb v. Ishee*, 2008 WL 440440, at *1 (S.D. Ohio Feb. 13, 2008) (modification sought by third-party death row inmate convicted of the same murder as petitioner in the case); *Kerasotes Mich. Theatres, Inc. v. Nat'l Amusements, Inc.*, 139 F.R.D. 102, 103 (E.D. Mich. 1991) (modification sought by

plaintiff in similar antitrust action against same defendant); *In re "Agent Orange" Prod. Liability Litig.*, 104 F.R.D. 559, 562 (E.D.N.Y. 1985) (modification sought by interest group representing members of settlement class), *superseded by statute on other grounds as stated in TheStreet.Com*, 273 F.3d at 233 n.11; *see also Meyer Goldberg*, 823 F.2d at 161 (action to intervene to obtain sealed material instituted by third party).  Unlike Hemlock, which voluntarily agreed to the terms of the protective order knowing about the Japanese litigation, the parties seeking the information in these cases either never bargained to be bound by a protective order's restrictions or could identify materially changed circumstances that created a need for modification.

In another set of cases, the party sought only a narrow modification that either would allow disclosure of a limited number of documents or would restrict the uses for which the documents could be disclosed.  *See In re Jenoptik AG*, 109 F.3d 721, 721 (Fed. Cir. 1997) (seeking permission to submit portions of deposition transcripts to foreign court); *INVISTA*, 2013 WL 1867345, at *2 (seeking permission to submit twelve redacted documents to foreign court); *Oracle Corp. v. SAP AG*, 2010 WL 545842, at *3 (N.D. Cal. Feb. 12, 2010) (party sought permission to show documents to foreign counsel, not to submit documents to foreign court); *Infineon*, 247 F.R.D. at 2-3 (focusing on subset of discovery that

would only "possibly" be submitted to a foreign court). Neither limitation cabins Hemlock's request here.

Finally, in *In re Kolon Industries Inc.*, the party opposing modification of the protective order had itself been submitting documents produced and designated confidential under the U.S. protective order to a foreign court. No. 09-00058, Dkt. No. 1163, at 2 (E.D. Va. June 1, 2011). Hemlock does not and could not contend that Kyocera has done anything similar here.

### C.   The Factors Courts Consider When Evaluating a Request Under 28 U.S.C. § 1782 Are Relevant and Weigh Against Modifying the Protective Order.

In addition to the factors discussed above, numerous courts have considered the factors that govern motions brought under 28 U.S.C. § 1782 when deciding motions to modify protective orders. *See, e.g.*, *In re Posco*, 794 F.3d 1372, 1376 (Fed. Cir. 2015); *INVISTA*, 2013 WL 1867345, at *3-4 (applying the so-called *Intel* factors without deciding whether or not they controlled the outcome); *Infineon*, 247 F.R.D. at 4 ("[C]onsideration of the reasoning that goes into a § 1782 ruling is helpful in assessing [defendant's] motion to modify the Protective Order."). These factors, articulated in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), are: "(a) whether the person from whom discovery is sought is a participant in the foreign proceeding; (b) the nature of the foreign tribunal, the character of the proceedings underway, and the receptivity of the tribunal to U.S.

federal judicial assistance; (c) whether the request is an attempt to circumvent foreign proof gather restrictions; and (d) the intrusiveness or burden imposed by the discovery." *Infineon*, 247 F.R.D. at 4 (citing *Intel*, 542 U.S. at 264-65). The *Intel* factors counsel against modifying the protective order here.

*First*, that Kyocera is a party to the Japanese proceeding weighs against modification, as a foreign court's need for U.S. judicial assistance in obtaining discovery is presumed to be minimal when it comes to obtaining information held by the parties to the foreign proceeding. *See Infineon*, 247 F.R.D. at 4; *Advanced Micro Devices, Inc. v. Intel Corp.*, 2004 WL 2282320, at *2 (N.D. Cal. Oct. 4, 2004).

*Second*, there is no indication whatsoever that the Tokyo District Court is receptive to U.S. judicial assistance. While the Tokyo District Court has accepted Hemlock's offer to submit evidence in support of its position on whether the Tokyo District Court has jurisdiction, the Tokyo Court has never indicated that this evidence should come from confidential documents produced in the U.S. litigation. Hemlock's argument to the contrary, (Mot. at 16), is completely unsupported conjecture.

*Third*, Hemlock's tactics strongly suggest that its request for modification is an attempt to circumvent Japanese discovery procedures. Hemlock has been aware of the jurisdictional issues in Japan since at least June 2015 and has submitted

multiple briefs to the Tokyo District Court on the topic.  And Hemlock
acknowledges that the Tokyo District Court has a procedure for ordering
production of documents from the parties.  (Tierney Decl. ¶ 15.)  Nevertheless,
Hemlock has made no effort to avail itself of these procedures despite having been
aware of the jurisdictional issues for many months and despite having first
approached Kyocera about changing the protective order back in November 2015.
This Court should not relieve Hemlock of its failure to seek discovery in Japan by
granting modification, especially considering that Hemlock waited until the last
possible moment to ask this Court to relieve it of the consequences of its lack of
diligence in Japan.

     *Fourth*, Hemlock's request to modify the protective order to allow it to use
*any* document produced and designated as confidential in Japan is overly intrusive
and burdensome.  Without knowing which specific documents Hemlock may seek
to use in Japan, Kyocera has no way to determine whether Hemlock has any
genuine need to introduce these documents or whether there is any basis for
submitting these documents under Japanese procedures, and forcing Kyocera to
review its entire production for such a purpose would clearly be unreasonably
burdensome.  Hemlock's vague, overbroad request stands in sharp contrast to cases
in which courts have found that specific, narrowly tailored requests to use
documents in a foreign proceeding are not overly intrusive or burdensome for the

producing party.  *See In re Hallmark Capital Corp.*, 534 F. Supp. 2d 951, 958 (D. Minn. 2007) (request for emails relating to a single subject over a several week period was not unduly burdensome); *In re Application of Sumar*, 123 F.R.D. 467, 472-73 (S.D.N.Y. 1988) ("The Order and subpoena in the present case are sufficiently specific as they specify documents during a reasonable period of time and state with reasonable particularity the subjects to which the documents relate.").

## IV.  <u>CONCLUSION</u>

For the reasons stated, Kyocera respectfully requests that the Court deny Hemlock's Motion to Modify the Protective Order.

Dated:  April 22, 2016      By:   /s/ Greg Stone
                 Gregory P. Stone
                 Daniel B. Levin
                 Erin J. Cox
                 Bryan H. Heckenlively
                 Emily Curran-Huberty
                 Munger, Tolles & Olson LLP
                 355 South Grand Avenue
                 Los Angeles, CA 90071
                 Tel: (213) 683-9528
                 gregory.stone@mto.com
                 daniel.levin@mto.com
                 erin.cox@mto.com
                 bryan.heckenlively@mto.com
                 emily.curran-huberty@mto.com

                 David C. Doyle
                 William V. O'Connor
                 Christian G. Andreu-von Euw
                 Morrison & Foerster LLP
                 12531 High Bluff Drive
                 San Diego, CA  92130-2040
                 Tel:  (858) 720-5100
                 ddoyle@mofo.com
                 woconnor@mofo.com
                 christian@mofo.com

                 Robert A. Hahn (P28193)
                 Jungerheld, Hahn & Washburn, P.C.
                 P.O. Box 6128
                 Saginaw, MI  48608-6128
                 Tel:  (989) 790-0000
                 r.hahn@ameritech.net

                 Keefe A. Brooks (P31680)
                 Brooks Wilkins Sharkey & Turco, PLLC
                 401 S. Old Woodward, Suite 400
                 Birmingham, MI 48009
                 Tel:  (248) 971-1800
                 brooks@bwst-law.com


                 Attorneys for Defendant and
                 Counterclaimant Kyocera Corporation

## CERTIFICATE OF SERVICE

I certify that on April 22, 2016, I caused a copy of the foregoing to be filed electronically and that the document is available for viewing and downloading from the ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.


By: /s/ Emily Curran-Huberty