UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

HEMLOCK SEMICONDUCTOR
CORPORATION, et al.,

                Plaintiff,                      Case No. 15-cv-11236

v                                                Honorable Thomas L. Ludington

KYOCERA CORPORATION,

                Defendant.

_____/

## ORDER DENYING MOTION TO COMPEL

The immediate dispute between Plaintiff Hemlock Semiconductor ("Hemlock") and Defendant Kyocera arises from a series of contracts for the sale of quantities of industrial-grade polycrystalline silicon by Hemlock to Kyocera. Following changes in global solar market conditions, Kyocera sought to excuse its performance under a force majeure provision in the parties' contracts. In response, Hemlock sought adequate assurances that Kyocera would perform its obligations under the agreements. When Hemlock concluded that Kyocera had not provided adequate assurances that it would perform its contractual commitment, it initiated this suit.

Hemlock filed its initial complaint on April 1, 2015, and an amended complaint on April 29, 2015, asserting that Kyocera had failed to provide adequate assurances of performances under MCLA § 440.2609 and had repudiated Supply Agreements I-III. ECF No. 4. Hemlock also seeks a declaratory judgment that Supply Agreements I-III are not unconscionable and an anti-suit injunction to prevent Kyocera from further prosecuting a related action in Tokyo. *Id.* Kyocera filed its answer together with six counterclaims on July 10, 2015. ECF No. 9. On

January 6, 2016 the Court granted Hemlock's motions to dismiss Kyocera's counterclaims and strike Kyocera's Japanese antitrust defense. ECF No. 61. On March 11, 2016, this matter was consolidated with a related action between Hemlock Semiconductor LLC ("Hemlock LLC") and Kyocera regarding the enforceability of Supply Agreement IV. ECF No. 83.

Now before the Court is Kyocera's motion to compel responses to its discovery Request No. 60. Because the privileged information Kyocera seeks is not relevant to this action, and because Kyocera can obtain the information it seeks from another source, its motion to compel will be denied.

## I.

The facts as set forth in the Court's January 6, 2016 order are, in relevant part, as follows. Hemlock, Plaintiff in this action, is involved in the manufacture and sale of polycrystalline silicon ("polysilicon") and photovoltaic solar cells and modules. ECF No. 4 at ¶¶ 1, 3, 7. Kyocera, Defendant in this action, describes itself as "one of the world's largest vertically-integrated producers and suppliers of solar energy panels." ECF No. 4 at ¶ 8.

## A.

Beginning in 2005, in the face of a worldwide polysilicon shortage, Hemlock and Kyocera entered into four long-term polysilicon supply contracts. The first Long Term Supply Agreement ("Agreement I") is effective from August 30, 2005 to December 31, 2015. The second Long Term Supply Agreement ("Agreement II") is effective from July 21, 2006 to December 31, 2018. The third Long Term Supply Agreement ("Agreement III") is effective from July 18, 2007 to December 31, 2019. Finally, the fourth Long Term Supply Agreement ("Agreement IV") is effective from November 13, 2008 to December 31, 2020. Am. Compl. at

¶¶ 12-13. The agreements require Kyocera to make large initial payments to assist Hemlock's expansion of its existing polysilicon production facilities in the United States.

After the parties entered into the agreements, the global solar industry was affected by the Chinese government's intervention. Specifically, the Chinese government provided subsidies to Chinese solar-based companies and facilitated large-scale "dumping" of Chinese solar panels into the global market in order to increase Chinese market share in the solar industry. In response, in 2012 the United States government imposed anti-subsidy and anti-dumping import tariffs of 24-36 percent on Chinese solar components. These state actions caused the prices of both polysilicon and solar panels to drop precipitously.

In response to the falling market prices, the parties agreed to short-term contract modifications in 2011 and 2012 that lowered the gross price and the advance payment for those years. These modifications did not affect any other contract terms or future pricing schedules. While the short-term price amendments came to an end, the Chinese market saturation and resulting trade war did not. From mid-2014 to early 2015, Kyocera proposed additional price modifications, all of which Hemlock rejected.

**B.**

After failing to reach a modification agreement, Kyocera sent notice to Hemlock in February 2015 that it was exercising a force majeure provision of Agreement IV. Hemlock refused to recognize Kyocera's invocation of any force majeure rights, contending that the force majeure provision in Agreement IV did not excuse Kyocera from performance because of the changing solar-market conditions. Consequently, on February 13, 2015 Kyocera filed suit in Michigan State Court seeking a declaration that its contractual performance could be excused by Agreement IV's force majeure clause.

On June 16, 2015, the Michigan State trial court granted Hemlock's motion for summary disposition, finding that the change in market conditions did not implicate Agreement IV's force majeure clause.  On December 3, 2015, the Michigan Court of Appeals affirmed, explaining that Kyocera had assumed the market risks that gave rise to the alleged liability and that "the plain language of the force majeure clause at issue does not permit relief to plaintiff on the grounds that the market for polysilicon has shifted, regardless of the cause of that shift."  *Kyocera Corp. v. Hemlock Semiconductor*, 15-025786-CK *2 (Mich. Ct. App. Dec. 3, 2015), ECF No. 58 Ex. A.

### C.

On February 26, 2015 Hemlock sent Kyocera a demand for adequate assurances that it would perform under Agreements I-III pursuant to MCLA § 440.2609.  Compl. ¶ 28. Kyocera sent Hemlock a response on March 26, 2015, arguing that Kyocera had no obligation to provide written assurances to Hemlock and that MCLA § 440.2609 did not apply to the supply agreements.  *Id*. at ¶ 29.  Hemlock then initiated the instant suit on April 1, 2015 alleging that Kyocera had failed to provide Hemlock with adequate assurances that it would make purchases under the supply agreements in 2015.  Am. Compl. ¶ 28.

Two days later, on April 3, 2015, Kyocera filed a complaint against Hemlock in the Civil Division of Tokyo District Court in Japan. The Tokyo complaint alleges that Hemlock violated Japanese antitrust law by abusing a superior position of bargaining power in entering into the supply agreements.  That case remains pending.

Then, on October 7, 2015 Hemlock Semiconductor LLC ("Hemlock LLC") filed suit in Saginaw County circuit court alleging that Kyocera had violated supply agreement IV, seeking a declaratory judgment that supply agreement IV is not unconscionable, and seeking an anti-suit injunction to prevent Kyocera from further prosecuting the Tokyo Action.  Kyocera removed that

action to this Court on February 3, 2016. *See* Case No. 1:16-cv-10376, ECF No. 1.  Pursuant to

the parties' stipulation, that matter was consolidated with the above-captioned action on March

8, 2016. ECF No. 82.

After Kyocera filed its answer, together with six counterclaims, Hemlock moved to

dismiss Defendant Kyocera's counterclaims. ECF Nos. 9, 21.  Hemlock also moved to strike an

affirmative defense alleged by Kyocera based on Japanese antitrust law. ECF No. 22.   On

January 6, 2016, the Court granted both of Hemlock's motions, dismissed Kyocera's seven

counterclaims, and struck Kyocera's Japanese antitrust defense.  ECF No. 61.  Kyocera then

brought a motion for clarification of that order, which was denied, and a motion for leave to file

a first amended answer and counterclaims, which was granted in part and denied in part.  ECF

No. 75.

## II.

Kyocera filed its motion to compel discovery on February 9, 2016.  Kyocera seeks an

order compelling Hemlock to respond to the following request for production of discovery:

**REQUEST NO. 60:**

ALL transcripts and audio or video recordings of testimony (in deposition, trial, or other form) given by Denise Beachy, Robert Hansen, Andrew Tometich, James Studelberg, Joseph Rinaldi, Cindy Yuan, Hidenori Yanagi, Hiromi Ida, Gary Homan, Greg Bausch, Hitoshi Takahashi, or Chikatoshi Kasa in connection with any SOLAR MANUFACTURING LITIGATION.

Instead of responding to the request, Hemlock objected as follows:

**RESPONSE TO REQUEST NO. 60:**

See General Objections and Responses 1 - 8, which are incorporated by reference as though set forth fully herein. In particular, Hemlock objects to this Request because it is overly broad, unduly burdensome, and not proportional to the needs of the case. Moreover, the information sought is not relevant to this litigation and covered by protective orders in those other litigations. See generally Opinion and Order dated January 6, 2016, Hemlock Semiconductor Corp. v. Kyocera Corp.,

No. 15-11236, Dkt. No. 61 (E.D. Mich.). Hemlock will not search for or produce documents in response to this Request.

*See* Mot. to Compel Ex. 10.  Kyocera notes that it has since narrowed Request No. 60 to seek only deposition transcripts, and not audio or video recordings.

### A.

Federal Rule of Civil Procedure 26(b)(1), as effective on December 1, 2015, governs the scope of discovery.  The rule provides the following:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense  of the proposed discovery outweighs its likely benefit.

*Id*.  The rule's previous language allowing discovery of relevant but inadmissible information that appeared "reasonably calculated to lead to the discovery of admissible evidence" has been deleted from the new rule to address concerns that the exception was swallowing the limitations placed on the scope of discovery.  *See* Rule 26, 2015 Advisory Committee Notes.

Under Rule 34, a party may serve on any other party a request to produce documents within the scope of rule 26(b).  If a party from which production is sought fails to make the requested disclosures, the party seeking discovery may move for an order compelling discovery under Rule 37(a)(3)(B).

### B.

The touchstone of Rule 26(b)(1) is relevance. Under Federal Rule of Evidence 401, evidence is relevant if "(a) it has any tendency to make a fact that more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." At the discovery stage, information sought need not be ultimately admissible at trial, so long as it

appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).  Where, as here, a party objects to the relevancy of the information sought, the party seeking discovery bears the burden of demonstrating its relevance.  *See Hennigan v. Gen. Elec. Co.*, No. 2010 WL 4189033, at *3 (E.D. Mich. Aug. 3, 2010), adopted, 2010 WL 4179376 (E.D. Mich. Oct. 20, 2010).  The initial issue is thus whether privileged discovery material from actions involving Hemlock and third parties is relevant to any valid claim or defense in this matter.

Kyocera argues that the deposition transcripts are relevant because they were created in the course of related and substantially similar litigation.  Specifically, Kyocera claims that the litigation in which the transcripts were produced is substantially similar to the current case because those cases involved similarly situated parties, almost identical supply agreements for the purchase of the same product, and the same affirmative defenses asserted by Kyocera. Kyocera argues that the witnesses in those matters will be witnesses in this matter, and that the cases involve similar claims, defenses and underlying contract language.  Kyocera asserts that any testimony the witnesses gave in those matters regarding Hemlock's understanding of contractual terms or events is therefore relevant in this matter. Finally, Kyocera argues that the testimony is relevant for credibility determinations.

Hemlock responds that Kyocera has not carried its burden of proving relevance. Hemlock argues that because the contracts at issue are not ambiguous, evidence regarding the interpretation of any contract provisions is irrelevant. Hemlock further argues that any deposition testimony about "key events" is irrelevant, since this Court has already dismissed Kyocera's counterclaims regarding alleged disruptions of the solar industry due to interference by the Chinese Government, and "key events" are otherwise unique to each of Hemlock's different

customers. Hemlock concludes that Kyocera's discovery request is merely an attempt to abuse and harass Hemlock's witnesses, and that credibility alone is not a sufficient ground to allow discovery of the confidential transcripts.

Kyocera has not met its burden of showing relevance. Kyocera has not explained why witness testimony concerning claims in similar matters would be relevant in this breach of contract action, and has not explained what overlapping factual questions those witnesses would be examined about here. To the extent Kyocera seeks testimony regarding events involving Chinese Governmental action in the solar industry, this Court has already found such events irrelevant to the Parties' valid claims and defenses, and so facts involving such events are not of consequence in determining this action.  *See* Fed. R. Evid. 401; *See also* ECF Nos. 61, 75.  To the extent Kyocera seeks testimony regarding interpretation of the parties' contracts, "an unambiguous contractual provision is reflective of the parties' intent as a matter of law", and therefore witness interpretations of unambiguous contractual provisions are irrelevant. *See Quality Products and Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 362, 369 (Mich. 2003). Because the contractual provisions at issue in the present action are unambiguous, witness interpretations of the provisions are not relevant.

Because Kyocera has not carried its burden of demonstrating the transcripts' relevance, Kyocera cannot show that the relevance of the transcripts outweighs the privilege they are covered by. The fact that non-parties have waived their claims of privilege does not in any way affect Hemlock's claimed privilege. Importantly, Kyocera can obtain access to the information contained in those documents through another source: Kyocera can simply depose the witnesses in this matter.  Similarly, Kyocera can determine the credibility of the witnesses by subjecting

them to cross-examination, which is the crucible of credibility determinations. *See Crawford v. Washington*, 541 U.S. 36 (2004).

## III.

Accordingly, it is **ORDERED** that Kyocera's Motion to Compel, ECF No. 67, is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: April 27, 2016

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 27, 2016.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager

---