**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

| | |
|---|---|
| HEMLOCK SEMICONDUCTOR CORPORATION, | Case No. 15-CV-11236-TLL-PTM |
| *Plaintiff*, | Hon. Thomas L. Ludington |
| v. | Mag. Patricia T. Morris |
| KYOCERA CORPORATION, | |
| *Defendant*. | |
| HEMLOCK SEMICONDUCTOR, LLC, | |
| *Plaintiff*, | |
| v. | |
| KYOCERA CORPORATION, | |
| *Defendant*. | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT
KYOCERA CORPORATION'S MOTION TO COMPEL DISCOVERY**

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ..................................................................1

II.     PERTINENT FACTS AND PROCEDURAL HISTORY .........................4

    A.     Kyocera Executes Four Fixed-Price, Long-Term Supply
       Agreements For Polysilicon On A "Take-Or-Pay" Basis...................4

    B.     After The Market Price For Polysilicon Declined To A Level
       Below Its Contract Prices, Kyocera Sought To Avoid The
       Supply Agreements And Refused To Make Purchases ......................7

    C.     Kyocera Files Suit In Michigan State Court, Which Is
       Subsequently Dismissed In Favor Of Hemlock And Affirmed
       On Appeal, Rejecting Any Force Majeure Defense And
       Confirming Kyocera's Obligations Under The Supply
       Agreements...................................................................................8

    D.     The Court Grant's Hemlock's Motion To Dismiss/Strike,
       Eviscerating Kyocera's Meritless Defenses.....................................9

    E.     With Knowledge Of The Applicable Law, Kyocera Refuses To
       Withdraw Its Irrelevant Requests, And Instead Files This
       Motion ........................................................................................10

III.    ARGUMENT...........................................................................................11

    A.     Discovery Into Hemlock's Post-2008 Costs, Revenues, Profits,
       And Losses Is Irrelevant To Both Kyocera's Theory Of
       Unenforceability As Well As The Alternative Damages
       Measure Kyocera Advances...........................................................12

        1.     Post-2008 Discovery Is Irrelevant To The Enforceability
           Of Liquidated Damage Provisions Under Michigan Law .......12

        2.     Even If The Supply Agreements' Damages Provisions
           Are Unenforceable, Post-2008 Discovery Is Still
           Irrelevant To The Alternative Damages Measure
           Advanced By Kyocera Under The UCC.................................15

        3.     Kyocera Provides No Basis For Discovery Of Post-2008
           Records On "Mitigation" Grounds ........................................18

         4.     The Court Has Already Held that Kyocera Has No
           "Unjust Enrichment" Defense................................................18

## TABLE OF CONTENTS
(continued)

Page

B.   Discovery Into Post-2008 Records Concerning Hemlock's Capacity Expansion Is Irrelevant For Identical Reasons ..................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

<u>Allsopp Sand & Gravel, Inc. v. Lincoln Sand & Gravel Co.</u>,
    525 N.E.2d 1185 (Ill. App. Ct. 1988) ...............................................................16

<u>Attorney Gen. v. Pub. Serv. Comm.</u>,
    431 N.W.2d 47 (Mich. Ct. App. 1988) ................................................................6

<u>Curran v. Williams</u>,
    352 Mich. 278, 281 (1958)  .................................................................................13

<u>Entm't Prods., Inc. v. Shelby Cnty., Tenn.</u>,
    721 F.3d 729 (6th Cir. 2013) ..............................................................................12

<u>Hemlock Semiconductor Corp. v. Global Sun Ltd.</u>,
    No. 13-11881, 2014 WL 3440119 (E.D. Mich. July 15, 2014).......................1, 6

<u>Hemlock Semiconductor Corporation v. Green Energy Technology</u>,
    No. 13-020593-CK-1 (Mich. Cir. Ct. Apr. 20, 2015) (attached as
    Exhibit A).................................................................................................*passim*

<u>Kyocera Corp. v. Hemlock Semiconductor, LLC</u>,
    No. 327974, 2015 WL 7779299 (Mich. Ct. App. Dec. 3, 2015)..............1, 2, 8, 9

<u>Kyocera Corp. v. Hemlock Semiconductor, LLC</u>,
    15-025786-CK (Mich Cir. Ct. June 16, 2015) (attached as Exhibit
    B)......................................................................................................................8, 9

<u>McLouth Steel Corp. v. Jewell Coal and Coke Co.</u>,
    570 F.2d 594 (6th Cir. 1978) ................................................................................7

<u>Moore v. St. Clair Cnty.</u>,
    328 N.W.2d 47 (Mich. Ct. App. 1982)................................................................12

<u>Northcentral Telecom, Inc. v. AT & T Servs., Inc.</u>,
    No. 2:10-CV-225, 2011 WL 2148572 (W.D. Mich. May 31, 2011) ...........13, 14

<u>Prenalta Corp. v. Colo. Interstate Gas Co.</u>,
    944 F.2d 677 (10th Cir. 1991) ..............................................................................6

Priebe & Sons, Inc. v. U.S.,
    332 U.S. 407 (1947)......................................................................................13

Surles ex rel. Johnson v. Greyhound Lines, Inc.,
    474 F.3d 288 (6th Cir.2007) ......................................................................12

U.S. v. Swanson,
    618 F. Supp. 1231 (E.D. Mich. 1985) ................................................12, 13, 14, 0

Universal Res. Corp. v. Panhandle E. Pipeline Co.,
    813 F.2d 77 (5th Cir. 1987) ........................................................................6

Vamplew v. Wayne State Univ. Bd. of Governors,
    No. 12-14561, 2014 WL 266407 (E.D. Mich. Jan. 24, 2014)...........................11

Wilkinson v. Lanterman,
    22 N.W.2d 827 (Mich. 1946)................................................................13, 14, 20

**Statutes**

Mich Comp. Law. § 440.2704(2)...................................................................19

Mich. Comp. Law § 440.2708(1)...........................................................16, 17, 18

Mich. Comp. Law § 440.2718(1)...................................................................15

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)...............................................................................12

Prepared by a Task Force of the A.B.A. Subcommittee on General
    Provisions, et. al., Article 2, Part 7: Remedies, 16 Del. J. Corp. L.
    1203 (1991)......................................................................................17

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

**Cases**

1. <u>Hemlock Semiconductor Corporation v. Green Energy Technology</u>, No. 13-020593-CK-1 (Mich. Cir. Ct. Apr. 20, 2015)

2. <u>Hemlock Semiconductor Corp. v. Global Sun Ltd.</u>, No. 13-11881, 2014 WL 3440119 (E.D. Mich. July 15, 2014)

3. <u>Hemlock Semiconductor Corp. v. Kyocera Corp.</u>, No. 15-11236, 2016 WL 67596 (E.D. Mich. Jan. 6, 2016)

4. <u>Kyocera Corp. v. Hemlock Semiconductor, LLC</u>, 2015 WL 7779299 (Mich. Ct. App. Dec. 3, 2015)

5. <u>Moore v. St. Clair Cnty.</u>, 328 N.W.2d 47 (Mich. Ct. App. 1982)

6. <u>U.S. v. Swanson</u>, 618 F. Supp. 1231 (E.D. Mich. 1985)

7. <u>Wilkinson v. Lanterman</u>, 22 N.W.2d 827 (Mich. 1946)

**Statute**

Mich. Comp. Law § 440.2708(1)

## <u>QUESTIONS PRESENTED</u>

1) Is Kyocera entitled to wholesale discovery into Hemlock's accounting and financial data that <u>post-dates</u> the execution of the parties' contracts where, under Michigan law, the enforceability of the damages provisions in the parties' agreements only concerns information available to the parties <u>at the time of contracting</u>?

   No.

2) Where the alternative damages measure advanced by Kyocera under the UCC is a simple comparison of the contract price and market price—both of which already take into account an aggrieved seller's manufacturing costs— is Kyocera entitled to information regarding Hemlock's costs of production?

   No.

## I.   <u>PRELIMINARY STATEMENT</u>

This is a baseless motion to compel that relies upon the false premise that Hemlock is seeking to evade discovery because it assumes that Kyocera's two counterclaims will fail.  That is not Hemlock's position on discovery here. Essentially having conceded liability for breaching its long-term supply agreements, Kyocera's counterclaims attack the enforceability of the damages provisions contained in those agreements.  In the supply agreements at issue (already examined with approval in <u>Kyocera Corp. v. Hemlock Semiconductor, LLC</u>, No. 327974, 2015 WL 7779299 (Mich. Ct. App. Dec. 3, 2015)), Kyocera agreed to "take or pay" at fixed prices for agreed-upon quantities of polysilicon, for a ten year period.  By the "take or pay" clause—standard in the polysilicon and solar industry—Kyocera agreed that it would pay for those agreed quantities on an annual basis, even when it did not order the required quantities.  Despite the fact that Michigan courts have uniformly held Hemlock's take-or-pay contracts to be fully enforceable (including one of the very contracts at issue here), and that this very Court has affirmed and enforced Hemlock's take-or-pay contracts in similar litigation, Kyocera contends that the damages provisions it agreed to on four separate occasions are unenforceable penalties.[1]

---

[1]     While not at issue on this Motion, this Court has already enforced the very damages provisions at issue here.  See <u>Hemlock Semiconductor Corp. v. Global Sun Ltd.</u>, No. 13-11881, 2014 WL 3440119, at *4-5 (E.D. Mich. July 15, 2014).

1

Under Michigan law, a court's assessment of a liquidated damages provision only concerns the facts in existence <u>at the time of contracting</u>.  Here, the parties entered into the four agreements from 2005 to November 2008.  Because Michigan law analyzes liquidated damage clauses at the time of execution, Hemlock has agreed to produce its relevant cost, accounting, and financial data from that period of time.  In addition, Hemlock has agreed to produce for deposition witnesses who negotiated the contracts, personnel charged with conducting economic evaluations at the time the contracts were being signed, and both of its Chief Financial Officers from the relevant time period.   In sum, Hemlock has agreed to produce all of the information that Michigan law requires in order to assess the liquidated damages provisions being challenged by Kyocera.

Ignoring consistent Michigan law stating that liquidated damages provisions are not to be assessed retrospectively at the time of breach, Kyocera's motion seeks production of Hemlock's cost, accounting, and financial data from <u>after</u> the execution of the parties' contracts.  The purported basis for Kyocera's request is that the information is pertinent to an assessment of Hemlock's "actual" damages subsequent to Kyocera's breach.  But under Michigan law, a party's "actual" damages at the time of breach are not relevant to the enforceability of a liquidated

---

Indeed, the Michigan Court of Appeals has noted—in addressing one of the <u>very contracts at issue here</u>—that Kyocera expressly contracted for the liabilities stated in the damages provisions.  <u>See</u> <u>Kyocera</u>, 2015 WL 7779299.

2

damages provision, and the post-2008 information Kyocera seeks is therefore irrelevant.

Kyocera next argues that it is entitled to Hemlock's post-2008 financial and cost information because, if its counterclaims were to succeed (thus rendering the liquidated damages provisions unenforceable), the default measure of damages is determined under Section 2-708(1) of the UCC, which provides for contract-to-market damages. But that provision merely calculates damages by subtracting the market price at the time of tender from the contract price. While Section 2-708(1) also states that "expenses saved in consequence of the buyer's breach" should be subtracted from the final contract-to-market damages figure, applicable law makes clear that "expenses saved" merely refers to incidental costs, such as the cost of shipping or insurance—not the cost of producing the goods in question. Kyocera argues illogically that the phrase "expenses saved" as used in Section 2-708(1) would include Hemlock's manufacturing and production costs. By definition, however, the contract-to-market measure of damages takes account of an aggrieved seller's costs of production, as it is already built into both the contract and the market price.

There is no absolutely basis for this motion, and it should be denied. In fact, a motion to compel substantively identical to this one has already been briefed, argued, and decided in Hemlock's favor in Michigan state court, with leave to

appeal subsequently denied by the Michigan Court of Appeals.  See Oral Opinion

Of The Court, Hemlock Semiconductor Corporation v. Green Energy Technology,

No. 13-020593-CK-1 (Mich. Cir. Ct. Apr. 20, 2015) (hereinafter "GET") (attached

as Exhibit A); leave denied, (Mich Ct. App. Dec. 2, 2015).  In GET, the defendant

(also a defaulting customer of Hemlock's) made the same arguments in seeking the

same post-contract financial documentation that Kyocera seeks by this motion—

information concerning Hemlock's production costs, accounting, and financials

after the contract in question had been signed.  The Saginaw County Circuit Court

(by Chief Judge Borchard) denied the motion and applied controlling Michigan

law in rejecting the same meritless arguments Kyocera asserts here.

Finally, Kyocera argues that it is entitled to the information at issue on this

Motion to support its defense of unjust enrichment.  But this Court has already

explicitly held that Kyocera has no "unjust enrichment" claim, as it is barred by the

existence of the parties' express contracts.  Kyocera's motion should be denied in

its entirety.

## II.    PERTINENT FACTS AND PROCEDURAL HISTORY

### A.    Kyocera Executes Four Fixed-Price, Long-Term Supply Agreements For Polysilicon On A "Take-Or-Pay" Basis

Kyocera is a producer and supplier of high-quality solar panels, and is part

of the Kyocera group of companies (Dkt. 89 at 32), which had total net sales in

fiscal 2016 of $13.9 billion.[2]  Hemlock is a major manufacturer of polycrystalline silicon, which is used in the manufacturing of solar panels.  Id.

Kyocera executed four agreements with Hemlock between 2005 and 2008, a time marked by a worldwide shortage of polysilicon (and consequently, markedly high prices).  Dkt. 89 at 34.  In order to secure a stable source of high quality polysilicon at long-term, fixed prices, Kyocera entered into the Supply Agreements, each of which requires that Kyocera "take or pay" for the agreed-upon quantities of polysilicon each year, regardless of whether it actually orders and takes delivery of the product.  Specifically, the Supply Agreements provide:

> This Agreement is a "take or pay agreement" such that, in addition to making the Advance Payment required under Section 6, [Kyocera] is absolutely and irrevocably required to pay the Net Price per kilogram for the Contract Quantity per calendar year over the term of this Agreement.  In the event that Buyer fails to order or take delivery of the Contract Quantity for a calendar year then Seller shall invoice Buyer for the difference between the quantity of Products ordered in that calendar year and the Contract Quantity of Product for that calendar year at the Net Price in effect for HSC DMS and/or HS DMS for that calendar year . . . and Buyer shall pay the same in accordance with Section 9 hereof.

---

[2]      See Consolidated Financial Results of Kyocera Corporation and its Subsidiaries for the Year Ended March 31, 2016, available at http://global.kyocera.com/ir/news/pdf/rt160427_e.pdf.

Consol. Compl. (Dkt. 85), Ex. D (Supply Agreement IV).[3]  The total amount of polysilicon Kyocera committed to purchase under all four Supply Agreements is approximately $2.5 billion.  Consol. Compl. ¶ 4, Exs. A-D.

This Court has previously upheld the take-or-pay and full-term damages provisions contained in Hemlock's supply agreements.  See Global Sun, 2014 WL 3440119, at *4-5 (holding that "[t]he terms of a take-or-pay clause are fully enforceable" and that "[Hemlock's] damages are measured by the obligation to pay—the value of which is the contract price in effect at the time such deficiency occurred multiplied by the difference between the contract quantity and the actual quantity of product purchased for any year buyer was in breach." (emphasis added) (internal quotation marks and brackets omitted) (citing Prenalta Corp. v. Colo. Interstate Gas Co., 944 F.2d 677, 690 (10th Cir. 1991) and Universal Res. Corp. v. Panhandle E. Pipeline Co., 813 F.2d 77, 80 (5th Cir. 1987)).  Other Michigan courts have likewise recognized the validity of and/or enforced take-or-pay agreements.  See Attorney Gen. v. Pub. Serv. Comm., 431 N.W.2d 47, 49 (Mich. Ct. App. 1988) (under "take-or-pay" contract, "the mere fact that, for the 1984 accounting year, less gas was used by Consumers' customers, thereby triggering an additional payment under the minimum contract quantity clause, does not render

---

[3]     Supply Agreements I-III have slightly different, but functionally identical language.  Consol. Compl., Exs. A-C.

the agreement unreasonable or imprudent"); <u>McLouth Steel Corp. v. Jewell Coal and Coke Co.</u>, 570 F.2d 594, 605 (6th Cir. 1978) (under contract with minimum "take-or-pay" guarantee, "[defendant] could have required [plaintiff] to take and pay for the minimum 9,000 tons per month of coke provided in the contract"); <u>GET</u>, at 11-12 (denying motion to compel financial information, recognizing the "judicial acceptance" of take-or-pay clauses based on this same authority).

> **B.  After The Market Price For Polysilicon Declined To A Level Below Its Contract Prices, Kyocera Sought To Avoid The Supply Agreements And Ceased Making Purchases**

In the years after the execution of the Supply Agreements, Kyocera alleges that the Chinese government undertook a campaign of subsidizing Chinese solar companies, leading to an influx of lower-cost product into the global market and plummeting prices for polysilicon.  Dkt 89, pp. 54-56.  Despite a sharp decrease in polysilicon prices, Kyocera performed its obligations under the Supply Agreements through 2014.  But Kyocera claims that in 2014, it "realized it could not continue its solar business if it purchased polysilicon at the prices nominally called for in the Agreements" (Dkt. 89 at 64), decided to breach the contracts, and has not placed an order for polysilicon since and has refused to pay as it agreed to do in the Supply Agreements.

**C.    Kyocera Files Suit In Michigan State Court, Which Is Subsequently Dismissed In Favor Of Hemlock And Affirmed On Appeal, Rejecting Any Force Majeure Defense And Confirming Kyocera's Obligations Under The Supply Agreements**

On February 13, 2015, Kyocera sued Hemlock in the Saginaw County Circuit Court seeking a declaration that, due to Chinese interference in the marketplace, its performance under Supply Agreement IV was excused by that contract's force majeure clause, applicable to "acts of the Government."  Consol. Compl. Ex. D.

The trial court granted Hemlock's motion to dismiss that action on June 16, 2015, holding that the facts alleged did not trigger the force majeure clause. Opinion And Order, <u>Kyocera Corp. v. Hemlock Semiconductor, LLC</u>, 15-025786-CK (Mich Cir. Ct. June 16, 2015) (attached as Exhibit B).  Kyocera appealed that decision, and on December 3, 2015, the Michigan Court of Appeals affirmed. <u>Kyocera</u>, 2015 WL 7779299.  In its decision, the Michigan Court of Appeals voiced a strong validation of take-or-pay contracts:

> The very essence of a take-or-pay contract is therefore to allocate to the buyer the risk of falling market prices by virtue of fixed purchase obligations at a long-term fixed price, and to thereby secure for the buyer a stable supply, while allocating to the seller the risk of increased market prices and, by virtue of the buyer's obligation to take or pay for a fixed quantity of product, removing from the seller the risk of producing product that may go unpurchased.

<u>Id.</u>  Addressing the scope of Kyocera's total potential liability under the take-or-

8

pay provision and the potential acceleration of those damages upon termination,

the Court of Appeals explained:

> If plaintiff [Kyocera] is liable under the contract for the
> full purchase price of all unordered polysilicon for the
> duration of the contract, plaintiff faces liability of up to
> $1.74 billion . . . . Nonetheless . . . <u>we conclude that
> plaintiff contracted for precisely that liability</u> . . . ."

<u>Id.</u> (emphasis added).  Kyocera has moved for leave to appeal to the Michigan

Supreme Court, and its application is pending.

### D.   The Court Grant's Hemlock's Motion To Dismiss/Strike, Eviscerating Kyocera's Meritless Defenses

On April 1, 2015, Hemlock filed this action premised on Kyocera's stated

intent not to comply with its contractual obligations under Supply Agreements I-III

and its failure to provide adequate assurances of performance under the UCC.[4]

Dkt. 1.  Kyocera filed an Answer and Counterclaims on July 10, 2015, alleging a

host of defenses premised on economic difficulty and "interference" by the

Chinese government in the solar markets.  Dkt. 9.

---

[4]     Two days after Hemlock filed this action, on April 3, 2015, Kyocera sued
Hemlock in the Civil Division of Tokyo District Court in Japan, alleging violations
of antitrust law premised on "abuse of superior bargaining power."  Dkt. 102 at 3.
On October 7, 2015, Hemlock Semiconductor, LLC filed suit in Saginaw County
circuit court in Michigan, alleging breach of Supply Agreement IV (per a
contractual choice of forum clause).  <u>Id.</u>  Kyocera removed that action to this Court
on February 3, 2016, and that matter was consolidated with this case on March 8,
2016.  <u>Id.</u>

Hemlock moved to dismiss all seven of Kyocera's counterclaims as well as certain of its affirmative defenses. On January 6, 2016, the Court issued an extensive opinion granting Hemlock's motion in its entirety, and striking Kyocera's counterclaims premised on (i) impracticability/impossibility; (ii) frustration of purpose; (iii) force majeure; (iv) illegality under Japanese antitrust law; (v) mutual mistake; (vi) unjust enrichment; and (vii) Hemlock's breach of the Agreements. Dkt. 61. It did so primarily on the grounds that Kyocera was not entitled to avoid its obligations under the Supply Agreements simply because the price of polysilicon had changed, given its express assumption of the risk of market shifts via its long-term, fixed price contracts.

The Court subsequently denied Kyocera's motion for "clarification" of that decision and denied Kyocera's motion to replead numerous defenses. Dkt. 75. Hemlock filed a consolidated amended complaint on March 16, 2016 (Dkt. 85), and Kyocera filed its amended answer and counterclaims to that pleading on April 8, 2016 (Dkt. 89).

### E. With Knowledge Of The Applicable Law, Kyocera Refuses To Withdraw Its Irrelevant Requests, And Instead Files This Motion

Hemlock objected to the document requests at issue to the extent they seek documents relating to: (i) Hemlock's production cost accounting (RFP 20); (ii) Hemlock's accounting of payments from Kyocera (RFP 18); (iii) Hemlock's profit and loss and financial statements (RFP 36); and (iv) Hemlock's planned capacity

10

expansions.  Kyocera Mot. Ex. B.   Hemlock also objected to Kyocera's requests relating to the post-2008 construction or sale of Hemlock's Tennessee plant (RFPs 21, 22).  <u>Id.</u>  By its objection, Hemlock reminded Kyocera of the controlling Michigan law holding that the relevant point of analysis of a liquidated damage clause is <u>at the time the contract is executed</u>—not later.

## III.   <u>ARGUMENT</u>

Kyocera bears the burden of establishing the relevance of the documents it seeks.  <u>Vamplew v. Wayne State Univ. Bd. of Governors</u>, No. 12-14561, 2014 WL 266407, at *1 (E.D. Mich. Jan. 24, 2014) ("The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant.") (internal quotation marks omitted); Dkt. 98 at 7 (order denying Kyocera's prior motion to compel production of documents).  Under the newly amended Federal Rules, the scope of discovery is limited to "any nonprivileged matter that is [i] <u>relevant to any party's claim or defense</u> and [ii] proportional to the needs of the case," considering a host of factors.[5]  Dkt. 98 at 7, quoting Fed. R. Civ. P. 26(b)(1).

---

[5]    These enumerated factors include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

11

Therefore, "the district court may limit discovery due to irrelevance and

burdensomeness." Entm't Prods., Inc. v. Shelby Cnty., Tenn., 721 F.3d 729, 744

(6th Cir. 2013) (citing Surles ex rel. Johnson v. Greyhound Lines, Inc., 474 F.3d

288, 305 (6th Cir. 2007)).  "Although a plaintiff should not be denied access to

information necessary to establish her claim, neither may a plaintiff be permitted to

go fishing and a trial court retains discretion to determine that a discovery request

is too broad and oppressive." Id. (internal quotation marks omitted).

### A.   Discovery Into Hemlock's Post-2008 Costs, Revenues, Profits, And Losses Is Irrelevant To Both Kyocera's Theory Of Unenforceability As Well As The Alternative Damages Measure Kyocera Advances

#### 1.   Post-2008 Discovery Is Irrelevant To The Enforceability Of Liquidated Damage Provisions Under Michigan Law

As a threshold matter, the discovery Kyocera seeks is entirely irrelevant to

its challenge to the contracts' damages provisions as an unenforceable "penalty."

Under Michigan law, agreements fixing damages are enforceable "where the

damages which would result from a breach are uncertain and difficult to ascertain

at the time the contract is executed." Moore v. St. Clair Cnty., 328 N.W.2d 47, 49-

50 (Mich. Ct. App. 1982) (emphasis added).  Michigan law is clear that in

analyzing a liquidated damage provision, the only relevant point is the time the

contract was signed—not at the time of breach or at any subsequent point. See

U.S. v. Swanson, 618 F. Supp. 1231, 1243 (E.D. Mich. 1985) ("[T]he fact that the

damages suffered are shown to be less than the damages contracted for is not fatal.
These provisions <u>are to be judged as of the time of the making of the contract</u>.")
(quoting <u>Priebe & Sons, Inc. v. U.S.</u>, 332 U.S. 407 (1947) (emphasis added));
<u>Curran v. Williams</u>, 352 Mich. 278, 281 (1958) ("[T]he parties, <u>particularly at the
time of execution of the instrument</u>, are in as good a position as anyone to arrive at
a fair amount of damages for a subsequent breach.  In the event they are not
unconscionable or excessive courts will not disturb it.") (emphasis added).

The <u>GET</u> court made the exact same holding in rejecting discovery into
Hemlock's post-contracting production and financial data, on the basis that under
Michigan law as announced by the Michigan Supreme Court, "[t]he validity and
reasonableness of a liquidated damages provision is determined by conditions
existing <u>at the time the contract is entered into</u>, not when the breach occurs."  <u>GET</u>,
at 7 (emphasis added) (citing <u>Wilkinson v. Lanterman</u>, 22 N.W.2d 827 (Mich.
1946) (enforcing liquidated damages provision despite proof at trial that plaintiff
subsequently incurred no damages).

Kyocera relies entirely on one case for the proposition that subsequent
events or damages are relevant to the inquiry—but Kyocera fails to advise the
Court that the case applies <u>Texas</u> law, which is contrary to the law of Michigan on
this point.  See <u>Northcentral Telecom, Inc. v. AT & T Servs., Inc.</u>, No. 2:10-CV-
225, 2011 WL 2148572 (W.D. Mich. May 31, 2011) (applying Texas law "actual

13

harm" test pursuant to contractual choice-of-law clause, which—unlike Michigan law—requires that liquidated damage be proportional to subsequently sustained damages). By contrast, Michigan law inquires only as to the reasonableness of the parties' stipulation at the time of contracting, without regard to subsequent losses. Swanson, 618 F. Supp. at 1243; Wilkinson, 22 N.W.2d at 830.

Kyocera also takes language in the Michigan UCC out of context, despite the uniform treatment of the issue by Michigan courts. Kyocera notes that under Mich. Comp. Law § 440.2718(1), damages may only be liquidated in an amount "which is reasonable in light of the anticipated or actual harm caused by the breach . . . ." Br. at 10. Kyocera's unsupported mischaracterization of "actual harm" does not change the analysis. The UCC recognizes that, when a contract is signed, the parties may contemplate a range of different types of damage—some of which are "actual," that is, known in type and amount, and some of which are unknown, uncertain, and "anticipated." For example, a seller may have certain perishables on hand which would be rendered useless by a buyer's breach—this would be a known and actual consequence of breach at the time of contracting, in addition to other, less defined damages which could be otherwise "anticipated." Kyocera does not identify a single decision applying the UCC in the way it suggests, much less one that would transform the fundamental approach of Michigan courts to the analysis of liquidated damage provisions stated above—because none exists.

> **2.      Even If The Supply Agreements' Damages Provisions Are Unenforceable, Post-2008 Discovery Is Still Irrelevant To The Alternative Damages Measure Advanced By Kyocera Under The UCC**

Even if the damages provisions of the Supply Agreements were unenforceable as "penalties," Hemlock's post-2008 financial information is still irrelevant under the law Kyocera relies on. Kyocera's motion argues a basis for discovery under Michigan Uniform Commercial Code § 440.2708(1), which it claims could supply the proper measure of damages in the absence of a contractual provision. Mot. at 9. But § 2708(1) provides for "contract to market" damages, which are simply the difference between the contract price and the market price at the time of conveyance—a matter of simple arithmetic based on comparing the contracts here against publicly available information, independent of any "actual" business activities on Hemlock's part.

Kyocera argues that damages under § 2708(1) are reduced by "expenses saved in consequence of the buyer's breach," which it seeks to probe by obtaining information about Hemlock's cost accounting (RFP 18), how Hemlock accounts for Kyocera's payments (RFP 20), and Hemlock's financial statements (RFP 36). This fundamentally misunderstands how § 2708(1) is applied. Costs that are, by their nature, priced into the market price—materials, labor, overhead, manufacturing, etc.—are not the type of "expenses" that § 2708(1) deducts from

damages, since those costs are already deducted from the damages as part of the

market price.  As one commentary has explained:

> It should be clear that the deduction for "expenses saved
> in consequences of the buyer's breach" <u>does not include
> costs that the seller would have incurred to procure or to
> manufacture the goods</u>. Those savings are already
> worked into the formula in § 2-708(1).

Prepared by a Task Force of the A.B.A. Subcommittee on General Provisions, et.

al., <u>Article 2, Part 7: Remedies</u>, 16 Del. J. Corp. L. 1203, 1219 (1991) (emphasis

added); <u>accord</u> <u>Allsopp Sand & Gravel, Inc. v. Lincoln Sand & Gravel Co.</u>, 525

N.E.2d 1185, 1187 (Ill. App. Ct. 1988) (deducting "loading expenses" under

Illinois's version of UCC § 2-708(1)).

 An example makes this clear:  Suppose a seller manufactures widgets, and

each widget costs $100 to make.  A buyer contracts to buy the widgets for $200

each.  At the time of conveyance, the market price is $150 per widget.  The buyer

breaches by failing to make payment.  Under § 440.2708(1), damages would be

$50—<u>i.e.</u>, the difference between the contract price ($200) and the market price

($150)—less incidental expenses specific to the contract, such as shipping.[6]

---

[6]     While it is sometimes appropriate to deduct shipping costs as "expenses
saved" under Section 2-708(1) when those costs are borne by the seller, that is not
the case here because <u>Kyocera</u> agreed to bear all shipping costs under the parties'
supply agreements.  <u>See</u> Supply Agreements, Consol. Compl. Exs. A-C at Section
3, Ex. D at Section 10 (providing shipment under Incoterms FCA, by which buyer
bears all costs).

Kyocera does not, and cannot, identify any support for its argument that the $100 manufacturing cost should <u>also</u> be deducted, which would result in a <u>negative value</u>, leaving nothing for the seller.  Rather, by deducting the market price from the contract price, § 440.2708(1) already deducts all of the manufacturing and overhead costs that go into making the widget for $100 (plus whatever profit seller could have obtained on the open market).  Deducting those costs <u>again</u> as "expenses saved" would undermine the goal of § 440.2708(1): to give the seller the benefit of the bargain.

In <u>GET</u>, a different Hemlock customer that breached its supply agreement made the same argument that Kyocera does here.  The Saginaw County Circuit Court rejected it, holding that Hemlock's business activities, production data, and financial statements were irrelevant to the UCC's "contract to market" damage calculation.  <u>GET</u>, at 11 (applying § 2708(1); "The contract price is the agreement, and the market price does not appear [to be] a function of [Hemlock's] financial condition.").  Similarly here, RFPs 18, 20, and 36 bear no relation to any calculation of "expenses saved" under § 440.2708(1), eliminating Kyocera's primary asserted basis for discovery <u>even if</u> damages in this action were determined under the UCC provisions Kyocera relies on—rather than according to the contract Kyocera signed.

17

### 3.    Kyocera Provides No Basis For Discovery Of Post-2008 Records On "Mitigation" Grounds

Kyocera makes the conclusory, unsupported argument that Hemlock "had a duty to mitigate damages by not producing unordered polysilicon and not incurring unnecessary costs."  Mot. at 13.  But whether Hemlock manufactured or chose not to manufacture given amounts of polysilicon has no bearing on the mathematical equations which would determine Hemlock's "actual damages," either under the contracts or under the portions of the UCC advanced by Kyocera.[7]

In fact, the court in GET rejected a "mitigation" argument because the contract itself specifies the amount of damages.  GET also held that Hemlock's activities in manufacturing and selling polysilicon bore no relation to "mitigation" as contemplated by the law, and provided no valid grounds to seek discovery of Hemlock's production and finance records.  GET, at 13-15.

### 4.    The Court Has Already Held that Kyocera Has No "Unjust Enrichment" Defense

Kyocera also claims that "Hemlock's profits and losses are also relevant to Kyocera's unjust enrichment defense—namely, that Hemlock is capitalizing on a market collapse caused by illegal conduct to reap windfall profits."  Mot. at 13. Kyocera's argument ignores this Court's January 6, 2016 Order, which expressly

---

[7]    The UCC instead specifies that upon a buyer's breach, a seller may either choose to cease manufacture of unfinished goods, complete manufacturing, or proceed in any other reasonable manner.  Mich Comp. Law. § 440.2704(2).

18

held that Kyocera cannot assert an unjust enrichment defense, because all of the

matters concerning its payments are governed by written contracts:

> However, because express written agreements exist
> between the parties, Kyocera cannot challenge the fairness
> of the contract terms it agreed to or its performance under
> the express contract terms on a quantum meruit theory of
> unjust enrichment.  If Kyocera seeks to challenge the
> fairness of the express contract terms, it must do so under
> claims of unconscionability, duress or fraud.  Kyocera
> may only challenge Hemlock's performance under the
> express contract terms by asserting a breach of contract
> claim.

Dkt. 61 at 22.  Thus, these so-called "grounds" for discovery have already been

rejected.

### B.    Discovery Into Post-2008 Records Concerning Hemlock's Capacity Expansion Is Irrelevant For Identical Reasons

Finally, Kyocera argues that it is entitled to discovery into Hemlock's

records concerning its subsequent plant expansions and investments in Michigan

and Tennessee.  Mot. at 14-15, RFP 19, 21, 22.  Kyocera argues that these

documents are relevant to analysis of the liquidated damages issue.  Kyocera is

wrong for the same reasons cited in Section III.A.1, above—namely, that "[t]he

validity and reasonableness of a liquidated damages provision is determined by

conditions existing at the time the contract is entered into," not by any subsequent

events.

19

The Court need look no further than the Supply Agreements to understand the issue. The Supply Agreements state that "[Kyocera] understands and acknowledges that [Hemlock] is making substantial capital investments to expand its manufacturing capabilities in order to satisfy [Kyocera's] demand for the Products." Consol. Compl. Exs. A-C, Section 10. It is the prospective recognition of the necessity of that investment at the time of contracting—not simply in building the plants, but operating them and maintaining them well into the future, together with all attendant risks—that bears on the reasonableness inquiry. Kyocera claims that Hemlock relied on its actual expenses in the Deutsche Solar case as justification, but in fact, there Hemlock merely stated the following:

> At the time the Supply Agreements were signed, Deutsche Solar wanted a long-term and reliable source of polysilicon. Hemlock could only make such a supply commitment if it invested billions of dollars in capacity expansions, and the contracts the parties negotiated expressly acknowledged this.

No. 13-cv-11037, Dkt. 91 at 45. The fact of any subsequent expenditure was a matter of public record in that case, and mentioned merely as corroboration of the relevant matter, which is what the parties believed at the time of execution. In fact, whether the planned expansions eventually cost more or less does not change the inquiry under Michigan law, which focuses on the anticipated circumstances and the parties' intent at the time they signed the contract, not at any subsequent point. Swanson, 618 F. Supp. at 1243; Wilkinson, 22 N.W.2d at 830; GET at 7.

20

## **CONCLUSION**

The Court should deny Kyocera's Motion to Compel in its entirety.

Dated:  June 17, 2016                    By:   /s/ Alvin Lee

                                        ORRICK, HERRINGTON & SUTCLIFFE
                                        LLP
                                            J. Peter Coll, Jr.
                                            John Ansbro
                                            Alvin Lee
                                            51 West 52nd Street
                                            New York, New York 10019
                                            Telephone: (212) 506-5000
                                            Facsimile:  (212) 506-5151
                                            pcoll@orrick.com
                                            jansbro@orrick.com
                                            alee@orrick.com

                                        BRAUN, KENDRICK, FINKBEINER, PLC
                                            Craig W. Horn (P34281)
                                            4301 Fashion Square Boulevard
                                            Saginaw, Michigan 48603
                                            Telephone: (989) 498-2100
                                            crahor@BraunKendrick.com

                                        *Attorneys for Plaintiffs Hemlock Semiconductor*
                                        *Corporation and Hemlock Semiconductor, LLC*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 17, 2016, I electronically filed the foregoing Plaintiffs' Memorandum Of Law In Opposition to Defendant's Kyocera Corporation's Motion to Compel Discovery with the Clerk of the Court using the ECF System, which will send notification of such filing to all attorneys of record.

By:  /s/ Alvin Lee