# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

HEMLOCK SEMICONDUCTOR CORPORATION, *et al.,*

    Plaintiffs,

v.

KYOCERA CORPORATION,

    Defendant.

KYOCERA CORPORATION,

    Counterclaimant,

v.

HEMLOCK SEMICONDUCTOR CORPORATION, *et al.,*

    Counterdefendants.

Case No. 1:15-cv-11236 -TLL-PTM

Honorable Thomas L. Ludington
Honorable Patricia T. Morris

## KYOCERA CORPORATION'S REPLY IN SUPPORT OF
## <u>MOTION TO COMPEL DISCOVERY</u>

## I. INTRODUCTION

Hemlock seeks damages for Kyocera's alleged breach of supply agreements in 2015. Kyocera's motion seeks discovery into Hemlock's current costs for producing polysilicon, which are relevant to determining of breach-of-contract damages. That discovery should be a basic part of any breach of contract claim.

In its opposition, Hemlock urges the Court to make substantive rulings about key issues relevant to how damages should ultimately be determined at trial. But not only are those issues inappropriate for determining the scope of discovery, Hemlock's arguments are wrong because Hemlock's current costs and lost profits are relevant to (1) calculating damages under Michigan law, and (2) enforceability of the liquidated damages provision.

## II. ARGUMENT

### A. Hemlock's Costs Are Relevant to Determining Hemlock's Actual Contract Damages.

Hemlock claims it should be excused from producing documents about its production costs on the theory that a seller's actual damages are invariably the difference between the contract price and the market price. This is incorrect. Market-price damages do not apply when they would result in a windfall that would put the seller in a *better* position than he would have been in had the contract been fully performed. *Union Carbide Corp. v. Consumers Power Co.*, 636 F. Supp. 1498, 1501-03 (E.D. Mich. 1986).

The Michigan UCC provides that damages should *not* be measured by the difference between contract price and market price where that would be "inadequate to put the seller in as good a position as performance would have done." Mich. Comp. Law § 440.2708(2).  Interpreting this provision, *Union Carbide* held that "inadequate" does not mean "insufficient," but rather means "inadequate to accomplish the stated purpose of the UCC remedies of compensating the aggrieved person but not overcompensating that person or specially punishing the other person."  636 F. Supp. at 1501.  Thus, the court held that where market-price damages "would overcompensate the seller," damages should be measured by lost profits because those would put the seller in a position "as good as" (but not better) than the one it would have been in had the contract been performed.  *Id.*; *accord Nobs Chemical, USA, Inc. v. Koppers Co., Inc.*, 616 F.2d 212 (5th Cir. 1980).  As Hemlock acknowledges, the purpose of the UCC provision is "to give the seller the benefit of the bargain."  (Opp. 17.)

The only way to determine whether Hemlock would receive a windfall by recovering the difference between the contract and market price is to assess what Hemlock's profits would have been had the contract been fully performed, which obviously requires information about Hemlock's costs.  For example, if Hemlock's costs *exceeded* the current market price, then its lost profits would be *less than* the difference between the contract and market price.  In that

2

circumstance, Hemlock could seek only the difference between the contract price and its production costs. *Id.* Again, none of this can be determined without discovery into Hemlock's costs.

This reading of the UCC is not in tension with Hemlock's argument that costs should not be double-counted in the damages analysis. They should not be. But they should be counted once, rather than ignored. Hemlock's view that manufacturing and production costs are not "expenses saved in consequence of the buyer's breach" and should not be subtracted from the seller's damages under Mich. Comp. Law § 440.2708(2) (Opp. 15-17), may be right in some circumstances, but it is incorrect in others such as where the manufacturer did not actually produce the goods. Awarding the difference between contract price and market price to a seller who has not incurred any cost at all will give that seller all of the revenue he would have gained had the contract been performed, without any of the costs—in other words, a windfall.

None of this is to say that the Court must determine the measure of damages to be used at trial. Once information about costs has been produced, Hemlock will be free to argue that the difference between contract and market price would not be a windfall, [1] and Kyocera will be free to argue that it would. What Hemlock is

---

[1] Hemlock may argue that a windfall would not in fact be overcompensation because Hemlock and Kyocera each assumed the risk of a change in market price.
(Footnote continues on next page.)

3

attempting to do, however, is obtain a ruling effectively resolving that issue in its favor before Kyocera can obtain the discovery needed to show that Hemlock stands to receive a windfall. The law is clear that Kyocera is entitled to discovery to support its theory of the case. *Sentis Group, Inc. v. Shell Oil Co.*, 763 F.3d 919, 926 (8th Cir. 2014) (party cannot, "by [its] sole insistence, declare evidence undiscoverable and irrelevant merely because it does not fit into their own theory of the case"). That includes discovery into Hemlock's costs.

Similarly, depending on the measure of damages, it is possible that Hemlock's duty to mitigate damages under the Michigan UCC will be at issue. *TCP Industries, Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 550 (6th Cir. 1981). If it is, Hemlock's costs will also be relevant to determining whether it could have further mitigated its damages. For example, if Hemlock did not produce some or all of the polysilicon Kyocera contracted to order, but Hemlock's production costs are lower than the spot market price, the duty to mitigate would require Hemlock to recoup some of its losses by producing and selling that additional quantity of polysilicon. Hemlock's argument that mitigation is irrelevant because the agreements specify the amount of liquidated damages only highlights that mitigation is a disputed issue on which Hemlock cannot refuse to produce documents. As discussed

---

(Footnote continued from previous page.)

*See Union Carbide*, 636 F. Supp. at 1503-04. It is premature to address that argument now; it does not determine whether information about costs are discoverable.

4

below, the enforceability of the liquidated damages provisions is a key issue to be resolved on the merits. Hemlock cannot deny Kyocera discovery relevant to its actual damages on the theory that it may ultimately prevail on its arguments about liquidated damages.

### B. Hemlock's Costs Are Relevant to Determining the Enforceability of the Liquidated Damages Provisions.

Information about Hemlock's costs is also critical to determining the threshold question of whether the liquidated damages provisions are enforceable. The Michigan UCC requires evaluating the amount of liquidated damages in comparison to "anticipated *or actual harm*." Mich. Comp. Law § 440.2718(1) (emphasis added).

Contrary to Hemlock's suggestion, no Michigan case holds that actual harm is irrelevant to the enforceability of a liquidated damages provision under the UCC. The cases Hemlock relies upon analyze liquidated damages outside of the UCC context and without reference to the plain text of the UCC provision. *Moore v. St. Clair Cnty.*, 328 N.W.2d 47, 49-50 (Mich. Ct. App. 1982), is not a UCC case, nor is *United States v. Swanson*, 618 F. Supp. 1231, 1243 (E.D. Mich. 1985), nor is the Supreme Court decision in *Priebe & Sons, Inc. v. United States*, 332 U.S. 407 (1947), on which it relies, nor is *Curran v. Williams*, 352 Mich. 278, 281 (1958). (*See* Opp. 12-13.) Hemlock also cites to *GET*, which is a UCC case, but that is an oral discovery ruling by a trial court that is not precedent. It also has no persuasive

value in interpreting the UCC because it relies on *Wilkinson v. Lanterman*, 22 N.W.2d 827 (Mich. 1946), which, like the cases Hemlock cites, is not a UCC case.

In light of the absence of any Michigan law on point, the Western District's analysis in *Northcentral Telecom, Inc. v. AT & T Servs., Inc.,* No. 2:10-CV-225, 2011 WL 2148572 (W.D. Mich. May 31, 2011), is the most pertinent authority. Under *Northcentral Telecom*, as explained in the Motion, courts should compare the amount of liquidated damages to *actual damages*. Hemlock seeks to dismiss *Northcentral Telecom* because it applies Texas law. But the Texas statutory provision at issue is *the same* as the Michigan provision, and *both are copied directly from the UCC*. Indeed, as a Michigan federal court held, in the absence of Michigan case law, "since the UCC is intended to be interpreted uniformly across the country, it is appropriate to look to the decisions of other courts in other states for guidance." *Union Carbide*, 636 F. Supp. at 1503.

But even if the Court is not convinced that *Northcentral Telecom* is correct and Hemlock is wrong, that is not a basis for denying discovery. Hemlock can attempt to persuade the Court in a motion *in limine* or other appropriate vehicle that Hemlock's actual damages are irrelevant, but Kyocera is entitled to discovery on Hemlock's actual damages—that is, its costs and lost profits—in case the Court rejects Hemlock's view. *Sentis Group*, 763 F.3d at 926. It is improper for Hemlock to ask the Court to decide that issue now on a discovery motion.

6

### C. Kyocera is Also Entitled to Documents Related to Hemlock's Capacity Expansion.

Hemlock's objection to producing documents related to its capacity expansion is unfounded. Hemlock has put capacity expansion at issue in defending the liquidated damages provision by asserting that its investment in expansion made damages difficult to ascertain at the time of contracting. Hemlock cannot make that argument and also refuse to produce documents relevant to it.

Hemlock's assertion that Kyocera is seeking only documents related to *actual* spending on capacity expansion is both wrong and irrelevant. First, Kyocera is seeking information about both anticipated and actual expenses. (Mot. 14-15.) Second, as explained above, the Michigan UCC expressly provides that actual costs are relevant to the enforceability of a liquidated damages provision. Once again, Hemlock will have an opportunity to persuade the Court its theory is the right one, but Kyocera is entitled to the discovery that will be relevant if the Court disagrees.

### III. CONCLUSION

Kyocera respectfully requests that Hemlock be ordered to produce all documents responsive to Kyocera's Requests for Production numbers 18 through 22, and 36 within 10 days of the Court's order.

Dated: June 24, 2016      Respectfully submitted,

       By:   */s/ Gregory P. Stone*
          Gregory P. Stone
          Daniel B. Levin
          Erin J. Cox
          Bryan H. Heckenlively
          Emily Curran-Huberty
          Munger, Tolles & Olson LLP
          355 South Grand Avenue
          Los Angeles, CA 90071
          Tel: (213) 683-9528
          gregory.stone@mto.com
          daniel.levin@mto.com
          erin.cox@mto.com
          bryan.heckenlively@mto.com
          emily.curran-huberty@mto.com

          David C. Doyle
          William V. O'Connor
          Christian G. Andreu-von Euw
          Morrison & Foerster LLP
          12531 High Bluff Drive
          San Diego, CA 92130-2040
          Tel: (858) 720-5100
          ddoyle@mofo.com
          woconnor@mofo.com
          christian@mofo.com

          Robert A. Hahn (P28193)
          Jungerheld, Hahn & Washburn, P.C.
          P.O. Box 6128
          Saginaw, MI 48608-6128
          Tel: (989) 790-0000
          r.hahn@ameritech.net

          Keefe A. Brooks (P31680)
          Brooks Wilkins Sharkey & Turco, PLLC
          401 S. Old Woodward, Suite 400
          Birmingham, MI 48009
          Tel: (248) 971-1800
          brooks@bwst-law.com

          *Attorneys for Defendant and*
          *Counterclaimant Kyocera Corporation*

## CERTIFICATE OF SERVICE

I certify that on June 24, 2016, I caused a copy of the foregoing to be filed electronically and that the document is available for viewing and downloading from the ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

By: */s/ Daniel B. Levin*