UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

HEMLOCK SEMICONDUCTOR
CORPORATION, and
HEMLOCK SEMICONDUCTOR, LLC,    CASE NO. 1:15-CV-11236

    *Plaintiffs*, *and*                DISTRICT JUDGE THOMAS L. LUDINGTON
    *Counter-Defendants,*          MAGISTRATE JUDGE PATRICIA T. MORRIS

v.

KYOCERA CORPORATION,

    *Defendant, and*
    *Counter-Plaintiff*.
_____/

## ORDER DENYING DEFENDANT KYOCERA'S MOTION TO COMPEL (Doc. 104)

### I.   INTRODUCTION

The present case centers around four long-term supply agreements entered into between the parties. Pursuant to the agreements, Plaintiff Hemlock Semiconductor Corporation ("Plaintiff," "Hemlock," or "HSC") was to manufacture polycrystalline silicon ("polysilicon") that was to be used by Defendant Kyocera Corporation ("Defendant" or "Kyocera") in Kyocera's production of solar panels. (Consol. Compl., Doc. 85 at ID 3946.) The agreements provided that Kyocera agreed to purchase certain quantities of polysilicon over a period of years (ranging from 2006 through 2020), pursuant to an annual schedule, at fixed prices. (*Id*. at 3947.) The agreements scheduled purchases totaling 60,300,000 kilograms of polysilicon at prices totaling approximately $2.5 billion dollars. (*Id.* at 3948.) Kyocera was able to abide by the contractual terms through most of 2014, but then notified Hemlock that it was unable to pay the fixed price any longer because the Chinese government had acted to inappropriately influence the market by favoring

Chinese producers of solar products. (*Id.* at ID 3952-53.) Hemlock contends that Kyocera breached the supply agreements by failing to abide by the agreements and by failing to pay amounts stated in the agreements' liquidated damages provisions, i.e., the "take-or-pay" clauses. Hemlock avers the following specific Counts: (1) breach of contract in respect of 2015 take-or-pay obligations; (2) breach of contract in respect to attorneys' fees; and (3) declaratory judgment that the supply agreements are not unconsionable. (Doc. 85 at ID 3958-64.) Hemlock seeks a declaration, money damages, fees and costs.

On June 2, 2016, United States District Judge Thomas L. Ludington referred the above motion to the undersigned. (Doc. 107.) Oral argument was held on June 29, 2016. The matter is fully briefed and argued.

Pursuant to the parties' joint list of unresolved issues, the following issues remain: (1) whether Hemlock should be compelled to provide Kyocera with discovery relating to Hemlock's actual damages; and (2) whether Hemlock should be compelled to provide Kyocera with documents to rebut Hemlock's arguments that the liquidated damages provisions are enforceable. (Doc. 114.)

At oral argument, the issues were narrowed. Hemlock confirmed that Kyocera had produced documents relating to the time the agreements were entered into (2008) but Kyocera also wants information from 2008 forward. Counsel for Kyocera acknowledged that Kyocera is most interested in information for the calendar year 2015 because there was an alleged breach by Kyocera in that year and a corresponding cure period. Kyocera seeks the following information from Hemlock for the above years: whether polysilicon was produced, and if so, the costs of production; and whether polysilicon was sold by Hemlock, and if so, the price at which the prod-

uct was sold. Kyocera also seeks financial information regarding Hemlock's costs in building a plant on a site in Tennessee and the price for which that site was sold.

For the reasons described below, the Court DENIES Defendant Kyocera's motion. (Doc. 104.)

## II. LAW and ANALYSIS

### A. Information relevant to enforceability of the liquidated damages provision

Because the parties raise substantive legal issues going to the merits, it is important to recall at the outset that the present motion seeks to compel discovery, not obtain a judgment. Federal Rule of Civil Procedure 26(b)(1) allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." The Rule further explains that "[i]nformation within the scope of discovery need not be admissible in evidence to be discoverable." *Id*.

The parties agree that the "take-or-pay" clauses are liquidated damages provisions.[1] Therefore, the first question for the district judge in this case will be whether the liquidated damages, i.e., the take-or-pay provision, is enforceable. If the liquidated damages clause is deemed enforceable, then that provision completely addresses Hemlock's damages. If the liquidated damages clause is not enforced, then the court would look to the UCC to answer the question of Hemlock's damages.

---

[1] But see, White, Summers, and Hilman, *Uniform Commercial Code,* Sections 8:32-33 (6th Ed. 2015), concluding that take-or-pay clauses should not be viewed as a liquidated damages remedy because it would award the seller more than its bargain.

Under Michigan law, the question whether a liquidated damages provision is valid and enforceable is a matter of law for the court to decide. *St. Clair Med., P.C. v. Borgiel*, 270 Mich. App. 260, 270 (Mich. App. 2006). Michigan courts have noted that "[a] liquidated damages provision is simply an agreement by the parties fixing the amount of damages in case of a breach. . . . The courts are to sustain such provisions if the amount is 'reasonable with relation to the possible injury suffered' and not 'unconscionable or excessive.'" *UAW-GM Human Resource Ctr v. KSL Recreation Corp.*, 228 Mich. App. 486, 508 (Mich. App. 1998).

Courts note that liquidated damages provisions are appropriate when damages are difficult to estimate or ascertain. However, "[w]hether damages are ascertainable is not necessarily dispositive of a liquidated damages clause being enforceable; damages being difficult to ascertain only makes a liquidated damages clause more appropriate." *Owens-Brockway Glass Containers v. State Tax Comm'n*, No. 314190, 2014 WL 5358350, at *6 (Mich. App. Oct. 21, 2014) (citing *St. Clair Med.*, 270 Mich. App. at 271). "Whether or not the damages are reasonable can be determined by evaluating the magnitude of the sum compared to the subject matter of the agreement" or the "possible injury [to be] suffered." *Id*.

"Whether a liquidated damages clause is valid depends on conditions at the time the contract was signed, not at the time of the breach." *Shore Financial Servs., Inc. v. Lakeside Title and Escrow Agency*, No. 301143, 2013 WL 2223781, at *4 (Mich. App. May 21, 2013). A "liquidated damages provision is invalid if it is, in fact, a penalty." *Id*. "'Where, by the terms of a contract, a sum is mentioned as 'liquidated damages' for a nonperformance of several distinct stipulations of very different degrees of importance, and this sum is to be payable equally on a failure to perform the least, as to that to perform the most, important or whole of them together, it is in legal effect a penalty. . . .'" *Id*. (citations omitted).

4

> 'The contract quantity in a remote year will be as uncertain as the contract price; in a gas contract, it may be the function of both the seller's ability to deliver from a particular gas reservoir and the buyer's needs. Every one of these complications-market, price, quantity, discount-introduces uncertainty into the damage calculation on breach of a long term contract. [T]he more remote in time are the events to be measured, the more inherently uncertain is the calculation of damages.'

*Barrick Enters., Inc. v. 2257 Waterman Operating Co.*, No. 275038, 2008 WL 582551, at *4 (Mich. App. Mar. 4, 2008) (breach of long-term requirements contract by buyer) (citations omitted).

Kyocera argues that it needs to know the actual harm suffered by Hemlock to properly launch its argument that the liquidated damages provision is unenforceable and if Kyocera prevails in that argument, it needs the information to calculate actual damages. (Doc. 114 at ID 5312-15.)

Hemlock argues that its post-2008 financials are irrelevant because even if the district court finds the liquidated damages provision to be unenforceable, actual damages would be measured by a comparison between the parties' contract price and the prevailing market price. (Doc. 114 at ID 5316-17.) Therefore, Hemlock argues, even if Kyocera is completely successful, proof of its contract-to-market theory of damages would not require any information from Hemlock. (Doc. 114 at ID 5317-18.) Hemlock argues that its business activities, production data, and financial statements are irrelevant to the UCC contract to market damage calculation. Hemlock cites *Hemlock Semiconductor Corp. v. Green Energy Tech.*, No. 13-020593-CK-1 (Mich. Cir. Ct. Apr. 20, 2015) (Saginaw County; J. Fred Borchard) as binding precedent. Of course, a Michigan trial court, even one with as scholarly a judge as Judge Fred Borchard, does not bind this court. A Michigan trial court does not even bind any other Michigan trial courts. *See City of Detroit v. Qualls*, 434 Mich. 340, 360, n.35 (1990) (only Michigan Supreme Court decisions and published

5

Michigan Court of Appeals decisions are entitled to precedential effect); *Am. Fidelity & Cas. Co. v. Indem. Ins. Co. of N. Am.*, 308 F.2d 1962) ("[I]t would be incongruous indeed to hold a federal court bound by a decision which would not be binding on any state court."); Mich. Ct. R. 7.215(C)(1).

Hemlock is confident that the liquidated damages provision will be deemed enforceable as it has been in other proceedings. *Hemlock Semiconductor Corp. v. Global Sun, Ltd.*, No. 13-11881, 2014 WL 3440119, at *4-5 (E.D. Mich. July 15, 2014)("The terms of a take-or-pay clause are 'fully enforceable.'"); *Kyocera Corp. v. Hemlock Semiconductor, LLC*, No. 327974, 2015 WL 7779299 (Mich. Ct. App. Dec. 3, 2015). Hemlock's view is supported by White, Summers & Hilman who have opined:

> Particularly in cases among highly sophisticated and well-represented business entities such as these, we believe that courts should be respectful of such clauses if they are found to be liquidated-damages clauses. Because the parties can always negotiate to a more efficient outcome, there is no necessary waste in a liquidated payment. Why should the court substitute its view for the proper outcome of a dispute when well-represented and knowledgeable parties specify their own remedy? We doubt that the court should do that.

White, Summers, and Hilman, *Uniform Commercial Code,* Sections 8:33 (6th Ed. 2015).

In the instant case, the agreement is self-titled a "long-term" supply agreement, and it contains a provision that the buyer acknowledges that payments under the take-or-pay provision "do not constitute a penalty." (Doc. 85, Ex. D at ID 3998.) The agreement was entered into in November 2008 and continued through 2020. (Doc. 85 at ID 3948.) The agreement was entered into between two sophisticated and well-represented corporate entities. The take-or-pay clause does not attribute varying sums for the same conduct or the same sum for varying conduct such that the legal effect appears to be a penalty. In 2008, when the contract was entered into, it would be difficult to ascertain appropriate damages for a 2015 breach as 2015 is remote in time from

6

2008. Although the question of whether the liquidated damages clause is enforceable is properly left to the district court's discretion, I find that, under these circumstances, Kyocera cannot show sufficient likelihood that the provision will be deemed invalid as to make its suggested discovery relevant.[2] I further find that financial information regarding Hemlock's costs in building a plant on a site in Tennessee and the price for which that site was sold is completely irrelevant to the question whether the liquidated damages clause is enforceable. Since the enforceability of a liquidated damages clause may be addressed prior to the close of discovery, Kyocera's motion to compel regarding damages under the UCC is premature at this time. I will therefore deny Kyocera's motion to compel.

### B. Information relevant to calculating damages under the UCC

Since I cannot guarantee the district judge's view in this matter, and for sake of judicial economy, I will also address the breadth of relevant discovery should the district court find the liquidated damages provision is unenforceable.

The parties concur that if the liquidated damages provision is not enforceable, the instant contract and damages question is governed by the relevant provisions of the Uniform Commercial Code ("UCC"). The UCC provides for four alterative formulas to measure a seller's damages: (1) the resale measure of damages (Mich. Comp. Laws § 440.2706); (2) the difference between the contract price and market price (Mich. Comp. Laws § 440.2708(1); (3) lost-profit claims (Mich. Comp. Laws § 440.2708(2); or (4) the purchase price (Mich. Comp. Laws § 440.2709).

---

[2] I am not persuaded by *Northcentral Telecom, Inc. v. AT&T Services, Inc.*, No. 2:10-CV-225, 2011 WL 2148572, at *4 (W.D. Mich. May 31, 2011) because that case involved a service contract, its conclusion that further discovery was needed because the "extent of actual damages must be established before it can be determined whether they are disproportionate to liquidated damages" was based on citations to Texas case law.

Hemlock has not stipulated to employing or foregoing any of these choices. Therefore, at this juncture, all four are potentially relevant means of calculating damages. Although Hemlock is correct that unjust enrichment is not a proper defense, and that mitigation is not required under the UCC (Doc. 112, at ID 5263-64), whether Hemlock resold any product would be relevant to measuring damages under Mich. Comp. Laws § 440.2706.

Under Section 2-706, "the seller may resell the goods concerned or the undelivered balance thereof. Where the resale is made in good faith and in a commercially reasonable manner the seller may recover the difference between the resale price and the contract price together with any incidental damages allowed under the provision of this article (Section 2-710), but less expenses saved in consequence of the buyer's breach." Mich. Comp. Laws § 440.2706.  Under this provision, I would find that information regarding whether Hemlock resold any polysilicon that it had produced for Kyocera and if so, what price the polysilicon was sold for would be relevant to calculating damages. Whether any expenses were saved in consequence of the breach would also be relevant.

Section 2-708 provides:

(1)…the measure of damages for non-acceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in this Article (Section 2-710), but less expenses saved in consequence of the buyer's breach.

(2) if the measure of damages provided in subsection (1) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this Article (Section 2-710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale.

Mich. Comp. Laws § 440.2708. "Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the trans-

8

portation, care and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach." Mich. Comp. Laws § 440.2710.

Under subsection 2, "[t]he alternative measure of damages, 'lost profits,' is generally only available to the 'lost-volume seller[.]'" *Detroit Radiant Products, Co. v. BSH Home Appliances Corp.*, 473 F.3d 623, 632 (6th Cir. 2007); § 440.2708(2). However, courts have noted that "this remedy also applies in other situations" when subsection 1 damages are inadequate. *Green Leaf Nursery, Inc. v. Kmart Corp.*, 485 F. Supp. 2d 815, 820 (E.D. Mich. 2007). "Under Michigan law, the question of whether the damages under subsection (1) are inadequate because a seller is a lost volume seller or the goods are specialty items without a reasonably accessible market, is a question for the finder of fact." *IDX Systems Corp. v. St. John Health System*, No. 00-CV-71631-DT, 2003 WL 25676069, at *19 (E.D. Mich. Mar. 28, 2003).

The definition of "inadequate" "should be interpreted to mean incapable or inadequate to accomplish the stated purpose of the UCC remedies of compensating the aggrieved person but not overcompensating that person or specially punishing the other person. The measure of damages provided in section 1 will be incapable of putting the seller in as good a position as performance whenever it does not fairly measure the damages suffered by the aggrieved party." *Union Carbide Corp. v. Consumers Power Co.*, 636 F. Supp. 1498, 1501 (E.D. Mich. 1986). The court noted that the UCC language "'as good as' does not include better than." *Id*. The court therefore rejected the plaintiff seller's argument that subsection 2 could not apply where subsection 1 damages were not inadequate. The court noted that perhaps the drafters did not consider the possibility that recovery under subsection 1 would be more than adequate or even overcompensate the seller or, the court mused, perhaps the drafters wanted subsection 1 to act as a liquidated damages clause available to a seller regardless of actual damages. *Id*. Ultimately, the court con-

9

cluded that awarding subsection 1 damages that overcompensate the seller "would be inconsistent with the code's basic philosophy[.]" *Id.* at 1503. In *Union Carbide*, the facts were that if the contract had been performed, plaintiff seller would have earned approximately $30 million, so $30 million was the seller's lost profits. Under the market price measure of damages under subsection 1, damages would have been approximately $120 million. Under these circumstances, the court found that plaintiff seller would be overcompensated under subsection 1 and thus, concluded that subsection 2 damages would be the proper measure of damages. *Id.*

The Union Carbide situation is an unusual one and its results were only possible because Union Carbide was a "middleman supplying oil, [such that] any increase in the market price would have been profited by the third-party supplier, not Union Carbide. Had Union Carbide been selling its own oil, the Court opined, then Union Carbide would no longer have been merely a middleman guaranteed a 'fixed profit' and would have instead been subject to market fluctuations. In that situation, market damages would not have overcompensated its loss." *Kolmar Americas, Inc. v. Koch Supply & Trading, LP*, No. 10Civ.7905(JSR), 2012 WL 676354, at *3 (S.D. N.Y. Feb. 29, 2012)(declining to apply *Union Carbide* where seller was not a middleman but sold its own product and where the seller did not claim to lose profits but in fact saved money because of buyer's breach).

On the other hand, where the seller sells its own product, "[i]t simply could not have escaped the parties that they were betting on which way [product] prices would move. [Seller] took the risk that the price would rise. [Buyer] took the risk that the price would fall. Under these circumstances, [the seller] should not be denied the benefit of its bargain, as reflected by the contract/market price differential." *Trans World Metals, Inc. v. Southwire Co.*, 769 F.2d 902, 908 (2nd Cir. 1985).

In the instant case, I would find that since Hemlock sold its own product, and has not argued that it is a lost volume seller, damages under § 2-708 would likely be limited to subsection 1, contract/market price calculation. The parties agreed, at oral argument, that costs of production would fall under subsection (2) of Section 2-708. Therefore, I would find that discovery pertaining to costs of production would not be relevant. I would further find that financial information regarding Hemlock's costs in building a plant on a site in Tennessee and the price for which that site was sold is completely irrelevant to the question of contract/market damages.

To sum, if the liquidated damages clause is deemed unenforceable, I would find the following information relevant and discoverable: information regarding whether Hemlock resold any polysilicon that it had produced for Kyocera and if so, what price the polysilicon was sold; and whether any expenses were saved in consequence of the breach. I would find the following information irrelevant and not discoverable: information pertaining to costs of production; and financial information regarding Hemlock's costs in building a plant on a site in Tennessee and the price for which that site was sold.

Review of this order is governed by 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72, and E.D. Mich. LR 72.1(d).

Date: July 8, 2016                              S/ PATRICIA T. MORRIS
                                                Patricia T. Morris
                                                United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: July 8, 2016                              By s/Kristen Krawczyk
                                                Case Manager