UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

HEMLOCK SEMICONDUCTOR
CORPORATION, et al.,

                Plaintiff,                          Case No. 15-cv-11236

v                                                        Honorable Thomas L. Ludington

KYOCERA CORPORATION,

                Defendant.
_____/

**ORDER GRANTING HEMLOCK'S MOTION TO DISMISS,
DISMISSING KYOCERA'S FIRST AND SECOND COUNTERCLAIMS,
AND OVERRULING KYOCERA'S OBJECTIONS**

The present dispute between Plaintiff Hemlock Semiconductor Corporation ("Hemlock Corp." or "Hemlock") and Defendant Kyocera Corporation arises from a series of contracts for the sale of quantities of industrial-grade polycrystalline silicon by Hemlock to Kyocera. Following changes in global solar market conditions, Kyocera sought to excuse its performance under a force majeure provision in the parties' contracts. In response, Hemlock sought adequate assurances that Kyocera would perform its obligations under the agreements. When Hemlock concluded that Kyocera had not provided adequate assurances that it would perform its contractual commitment, it initiated this suit on April 1, 2015. On March 8, 2016, the matter was consolidated with a related case between Hemlock Semiconductor, LLC ("Hemlock LLC") and Kyocera. *See* ECF No. 83.

On May 31, 2016 Kyocera filed a motion to compel discovery. *See* ECF No. 105. That motion was referred to Magistrate Judge Patricia T. Morris, who denied the motion on July 8, 2016. *See* ECF No. 116. On July 11, 2016 discovery was stayed in order to allow the parties

time to attempt to resolve the matter. *See* ECF No. 117. After the stay was lifted, on January 1, 2017, Kyocera filed objections to the magistrate judge's discovery order. *See* ECF No. 128. Then, on January 27, 2017 Hemlock Corp. and Hemlock LLC (together "Hemlock") filed a motion to dismiss Kyocera's two remaining counterclaims. *See* ECF No. 130. For the reasons stated below, Hemlock's motion to dismiss will be granted and Kyocera's objections will be overruled.

## I.

Beginning in 2005, in the face of a worldwide polysilicon shortage, Hemlock and Kyocera entered into four long-term polysilicon supply contracts. The first Long Term Supply Agreement ("Agreement I") is effective from August 30, 2005 to December 31, 2015. The second Long Term Supply Agreement ("Agreement II") is effective from July 21, 2006 to December 31, 2018. The third Long Term Supply Agreement ("Agreement III") is effective from July 18, 2007 to December 31, 2019. Finally, the fourth Long Term Supply Agreement ("Agreement IV") is effective from November 13, 2008 to December 31, 2020. The agreements require Kyocera to make significant initial payments to assist Hemlock's expansion of its existing polysilicon production facilities in the United States.

### A.

After the parties entered into the agreements, the global solar industry was affected by the Chinese government's intervention. Specifically, the Chinese government provided subsidies to Chinese solar-based companies and facilitated large-scale "dumping" of Chinese solar panels into the global market in order to increase Chinese market share in the solar industry. In response, in 2012 the United States government imposed anti-subsidy and anti-dumping import

tariffs of 24-36 percent on Chinese solar components. These state actions caused the prices of both polysilicon and solar panels to drop precipitously.

In response to the falling market prices, the parties agreed to short-term contract modifications in 2011 and 2012 that lowered the gross price and the advance payment for those years. These modifications did not affect any other contract terms or future pricing schedules. While the short-term price amendments came to an end, the Chinese market saturation and resulting trade war did not. From mid-2014 to early 2015, Kyocera proposed additional price modifications, all of which Hemlock rejected.

After failing to reach a modification agreement, Kyocera sent notice to Hemlock in February 2015 that it was exercising a force majeure provision of Agreement IV. Hemlock refused to recognize Kyocera's invocation of any force majeure rights, contending that the force majeure provision in Agreement IV did not excuse Kyocera from performance because of the changing solar-market conditions. Consequently, on February 13, 2015 Kyocera filed suit in Michigan State Court seeking a declaration that its contractual performance could be excused by Agreement IV's force majeure clause. On June 16, 2015, the Michigan State trial court granted Hemlock's motion for summary disposition, finding that the change in market conditions did not implicate Agreement IV's force majeure clause. On December 3, 2015, the Michigan Court of Appeals affirmed, explaining that Kyocera had assumed the market risks that gave rise to the alleged liability and that "the plain language of the force majeure clause at issue does not permit relief to plaintiff on the grounds that the market for polysilicon has shifted, regardless of the cause of that shift." *Kyocera Corp. v. Hemlock Semiconductor*, 15-025786-CK *2 (Mich. Ct. App. Dec. 3, 2015), ECF No. 58 Ex. A.

**B.**

On February 26, 2015 Hemlock sent Kyocera a demand for adequate assurances that it would perform under Agreements I-III pursuant to MCLA § 440.2609. Compl. ¶ 28. Kyocera sent Hemlock a response on March 26, 2015, arguing that Kyocera had no obligation to provide written assurances to Hemlock and that MCLA § 440.2609 did not apply to the supply agreements. *Id*. at ¶ 29. Hemlock then initiated the instant suit on April 1, 2015 alleging that Kyocera had failed to provide Hemlock with adequate assurances that it would make purchases under the supply agreements in 2015. Am. Compl. ¶ 28. On April 3, 2015, Kyocera filed a complaint against Hemlock in the Civil Division of Tokyo District Court in Japan, alleging that Hemlock violated Japanese antitrust law by abusing a superior position of bargaining power in entering into the supply agreements.

Hemlock filed an amended complaint on April 29, 2015, asserting that Kyocera had failed to provide adequate assurances of performances under MCLA § 440.2609 and had repudiated Supply Agreements I-III. ECF No. 4. Hemlock also sought a declaratory judgment that Agreements I-III were not unconscionable, and an anti-suit injunction to prevent Kyocera from prosecuting a related action in Tokyo. *Id.* Kyocera filed its answer together with six counterclaims on July 10, 2015. ECF No. 9. On January 6, 2016 the Court granted Hemlock's motion to dismiss Kyocera's counterclaims and granted Hemlock's motion to strike Kyocera's Japanese antitrust defense. ECF No. 61.

On March 11, 2016, this matter was consolidated with a related action between Hemlock LLC and Kyocera regarding the enforceability of Agreement IV, which was removed from Michigan state court. ECF No. 83. After consolidation, on March 18, 2016 Hemlock filed a second amended complaint asserting three claims against Kyocera: (1) Breach of contract arising out of a failure to perform 2015 take-or-pay obligations; (2) Breach of contract regarding

attorneys' fees; and (3) Claim for a declaratory judgment that the supply agreements are not unconscionable. *See* Am. Compl. II, ECF No. 85. On April 8, 2016 Kyocera filed an amended answer and six counterclaims. Am. Answer, ECF No. 89. Pursuant to a motion to strike filed by Hemlock, the Court issued an order striking four of the counterclaims as redundant under Federal Rule of Civil Procedure 12(f). *See* ECF No. 100. Kyocera has two counterclaims remaining: (1) Claim for a declaratory judgment that "Take or Pay" clauses in Agreements I-IV are unenforceable penalties; and (2) Claim for a declaratory judgment that "Acceleration" clauses in Agreements I-IV are unenforceable penalties.

Discovery was initially stayed on July 11, 2016 to provide the parties an opportunity to consensually resolve the case, and then stayed through the 2016 calendar year to allow Kyocera to perform on the 2015 contracts. *See* ECF Nos. 117, 121, 123. After Kyocera completed purchase of the polysilicon volume required for the 2015 year, on December 12, 2016 the parties stipulated to the dismissal of Hemlock's breach of contract claim related to Kyocera's 2015 obligations. *See* ECF No. 124.

## II.

Hemlock now moves to dismiss Kyocera's two remaining counterclaims pursuant to Federal Rule of Civil Procedure 12(c). Hemlock argues that Kyocera's first counterclaim – the challenge to the take-or-pay provisions – fails as a matter of law. Hemlock argues that Kyocera's second counterclaim – the challenge to the acceleration provisions – is not ripe for adjudication, and thus does not present a justiciable case or controversy. In response, Kyocera does not object to the dismissal of its second counterclaim on ripeness grounds. Kyocera's second counterclaim will therefore be dismissed without prejudice.

This leaves the parties' dispute over the take-or-pay provisions. Hemlock argues that because the take-or-pay provisions are bargained-for contract provisions, they are presumptively enforceable. Kyocera argues that because the take-or-pay provisions do not present Kyocera with a real option, they are unenforceable penalty provisions. In *Kyocera Corp. v. Hemlock Semiconductor, LLC*, the Michigan Court of Appeals addressed the very take-or-pay provisions at issue in this case. N.W.2d 445 (Mich. Ct. App. 2015). That court addressed the question of whether a force majeure provision in Agreement IV excused Kyocera from performing its obligations under the take-or-pay provision. Kyocera did not directly challenge the enforceability of the take-or-pay provision. However, in dicta, the court explained as follows:

> The very essence of a take-or-pay contract is to allocate to the buyer the risk of falling market prices by virtue of fixed purchase obligations at a long-term fixed price and to thereby secure for the buyer a stable supply, while allocating to the seller the risk of increased market prices and, by virtue of the buyer's obligation to take or pay for a fixed quantity of product, removing from the seller the risk of producing product that may go unpurchased.

*Id*. at 447. Noting that a court's "main goal in the interpretation of contracts is to honor the intent of the parties", the court concluded that "applying the force-majeure clause to excuse plaintiff's obligation to pay pursuant to the contract's take-or-pay provision would nullify a central term of the contract … and relieve the plaintiff from the very risk it contracted to assume." *Id*. at 451, 453 (citations and quotations omitted). The court therefore assumed that the provision was enforceable.

In support of its argument that the take-or-pay provisions are unenforceable, Kyocera cites Michigan's adoption of the Uniform Commercial Code ("UCC"), Michigan Compiled Law § 440.2718(1). That provision provides as follows:

> Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or

> nonfeasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty.

*Id.* However, as explained by the Fifth Circuit Court of Appeals in interpreting an identical Texas provision in the context of oil and gas contracts, where a take-or-pay provision is a promise of performance and not intended to serve as a measure of damages, it is not an unenforceable penalty within the meaning of the UCC. *See Universal Res. Corp. v. Panhandle E. Pipe Line Co.*, 813 F.2d 77, 80 (5th Cir. 1987). In other words, take-or-pay provisions are more appropriately considered as the nature of the purchaser's performance obligation rather than as a form of agreed-upon remedy. *Id. See also Prenalta Corp. v. Interstate Gas Co.*, 944 F.2d 677, 688-89 (10th Cir. 1991) (observing that "take-or-pay" contracts are alternative performance contracts and distinguishing between "pay" alternative and liquidation of damages).

Even so, Kyocera argues that the take-or-pay provisions should be treated as liquidated damages provisions within the meaning of § 440.2718(1) because they do not offer any real performance option. To the contrary, there are circumstances in which a purchaser may desire to pay without taking product. It would not be unreasonable, for instance, for a purchaser to pay without taking delivery of a product in a year when the market price is low in order to avoid additional, consequential costs associated with transporting and storing product it will be unable to use. As explained in a companion case, a purchaser may "view[] the Supply Agreements as a long-term net positive and see[] a greater benefit to maintaining the agreement in the short term in order to maintain the benefit of the agreement in the long term, even if it means not taking polysilicon during the interim period." *See Hemlock Semiconductor Corp. v. Deutsche Solar GmbH*, No. 13-cv-11037, 2016 WL 374130 at *20 n.12 (E.D. Mich. July 13, 2016). Moreover, Kyorcera's argument that "no purchaser would ever rationally prefer to pay full price for polysilicon that it will never receive rather than pay the same amount and receive the product" is

belied by the fact that Kyocera – a sophisticated, multi-national corporation – agreed to the inclusion of the take-or-pay provisions in all four supply agreements. Kyocera's argument thus assumes that its own agents and representatives agreed to irrational contract provisions on four separate occasions. Particularly given the sophistication of the parties in this matter, this argument is untenable.

Kyocera also argues that the take-or-pay provisions do not present it with a real choice because the provisions do not include so-called "make-up rights", or a provision that would permit Kyocera to receive the product it paid for but did not take in a subsequent year. Kyocera emphasizes that a number of courts have declined to enforce take-or-pay provisions that do not contain such a condition. *See, e.g., Enpath Med. Inc. v. NeuroControl Corp.*, 2005 WL 1025368, at *4 (D. Minn. Apr. 28, 2005); *Superfos Investments Ltd. v. FirstMiss Fertilizer, Inc.*, 821 F. Supp. 432, 439 (S.D. Miss. 1993), *Am. Soil Processing, Inc. v. Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd.*, 586 N.W.2d 325, 334 (Iowa 1998).

The cases cited by Kyocera are not persuasive. Short of a legally valid contract defense, it is not the court's role to alter agreements crafted by private parties. That is particularly true in a case such as this, where the parties are sophisticated corporations that are presumed to exercise sound business judgment. The fact that Kyocera did not negotiate for and receive a "make-up rights" provision does not render the Agreements illegal or unconscionable. Nor does it render the agreements lacking in consideration, since under Michigan law "the continuation of the parties' business relationship" is a valid form of consideration. *See Adell Broad. V. Apex Media Sales*, 708 N.W.2d 778, 783 (Mich. Ct. App. 2005).

Through the take-or-pay provisions, Kyocera bargained for the right to decline to take product in one year while maintaining the benefit of the supply agreements in future years. If

Kyocera believed that "make-up rights" were necessary, it had the ability to bargain for those rights at the time it entered into the agreements. The take-or-pay provision simply represents the parties' bargained for allocation of risk regarding changes in the price of product over a number of years. Hemlock would be equally obligated to perform had the market moved in the opposite direction. Kyocera's challenge to the enforceability of the take-or-pay provisions will therefore be dismissed.

### III.

Also before the Court are Kyocera's objections to the magistrate judge's order denying its motion to compel discovery. The decision and order of a non-dispositive motion by a magistrate judge will be upheld unless it is clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993). A district judge shall consider such objections and may modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a). "The 'clearly erroneous' standard applies only to the magistrate judge's factual findings; legal conclusions are reviewed under the plenary 'contrary to law' standard . . . . Therefore, [the reviewing court] must exercise independent judgment with respect to the magistrate judge's conclusions of law." *Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289, 291 (W.D. Mich. 1995) (citing *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992)). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Ford Motor Co. v. United States*, 2009 WL 2922875, at *1 (E.D. Mich. Sept. 9, 2009)).

Through its objections, Kyocera argues that the magistrate judge erred in denying Kyocera discovery into Hemlock's production costs of polycrystalline silicon. Kyocera argues that the production costs are relevant to its counterclaim regarding the enforceability of the take-

or-pay provisions. However, because Kyocera's challenge to the take-or-pay is without merit for the reasons stated above, its objections to the discovery order are equally without merit.

Kyocera also argues that the parts of the magistrate judge's order related to discovery of damages information should be vacated as moot because the parties have agreed to the dismissal of Hemlock's breach of contract claim. At the time the magistrate judge issued her order the parties' 2015 contract dispute was still live. The fact that the parties' later resolved that issue is not grounds to vacate a previous court order. Kyocera's objections will therefore be overruled.

**IV.**

Accordingly, it is **ORDERED** that Hemlock's Motion to Dismiss, ECF No. 130, is **GRANTED**.

It is further **ORDERED** that Kyocera's second counterclaim (Declaratory Judgment that the "Acceleration" Clauses in Agreements I-IV Are Unenforceable Penalties), ECF No. 89, is **DISMISSED without prejudice.**

It is further **ORDERED** that Kyocera's first counterclaim (Declaratory Judgment that the "Take or Pay" Clauses in Agreements I-IV Are Unenforceable Penalties), ECF No. 89, is **DISMISSED with prejudice.**

It is further **ORDERED** that Kyocera's objections, ECF No. 128, are **OVERRULED**.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: May 2, 2017

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 2, 2017.

                                         s/Michael A. Sian
                                         MICHAEL A. SIAN, Case Manager